Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Austin J. Richardson (SBN 319807)
ajr@smlavvocati.com
SML AVVOCATI P.C.
888 Prospect Street, Suite 200
San Diego, CA 92037
Tel: 949.636.1391

Mark Berkowitz (*pro hac vice*)
mberkowitz@tarterkrinsky.com
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel: 212.216.8000

***Attorneys for Plaintiff***

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **GUANGZHOU YUCHENG TRADING CO., LTD.**, a foreign limited liability company,<br><br>    Plaintiff / Counterclaim Defendant,<br><br>    v.<br><br>**DBEST PRODUCTS, INC.**, a California corporation,<br><br>    Defendant / Counterclaim Plaintiff. | Case No. 2:21-cv-04758-JVS-JDE<br><br>**GUANGZHOU YUCHENG TRADING CO., LTD.'S OPENING CLAIM CONSTRUCTION BRIEF** |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................... 1

II.   FACTUAL BACKGROUND .................................................................. 5

  1.   The Parties ................................................................................. 5

  2.   Procedural History ..................................................................... 5

  3.   The '700 Patent ......................................................................... 5

III.  CLAIM CONSTRUCTION PRINCIPLES ............................................ 6

IV.   GYT'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED .......... 7

  1.   "a bottom horizontal section having a left side and a right side" ......... 7

  2.   "the bottom horizontal section respectively extending on the left side to a left arcuate section which extends to an elevated left horizontal section, and extending on the right side to a right arcuate section which extends to an elevated right horizontal section" ............ 9

  3.   "a protective sheath surrounding a portion of the horizontal section" ........................................................................................ 12

  4.   "toe plate which has a honeycomb pattern with a multiplicity of openings separated by horizontal solid sections and vertical solid sections" ..................................................................................... 12

  5.   "horizontal base member" ....................................................... 16

  6.   "a horizontal mounting bar retaining rotational affixation members to rotatably retain the toe plate" ............................................. 19

  7.   "the horizontal mounting bar further rotatably supporting the left bumper wheel and the right bumper wheel in a manner where one-half of the given diameter of the left bumper wheel is aligned with the toe plate and one-half of the given diameter of the right bumper wheel is aligned with the toe plate" ................................................ 22

V.    CONCLUSION ................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*,
   674 F.3d 1365 (Fed. Cir. 2012) ............................................................... 7

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*,
   813 F. App'x 522 (Fed. Cir. 2020) ...................................................... 17

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012) ............................................................. 17

*Haliburton Energy Services Inc. v. M -I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) ........................................................... 17

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ...................... 6

*Nautilus Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ........................................................................ 17

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ........................................................ 6, 7

*Shire Dev., LLC v. Watson Pharms., Inc.*,
   787 F.3d 1359 (Fed. Cir. 2015) ....................................................... 8, 11

*VirnetX Inc. v. Apple Inc.*,
   792 F. App'x 796 (Fed. Cir. 2019) ................................................... 8, 11

**Statutes**

35 U.S.C. § 112 ........................................................................... 17, 18

Pursuant to the Court's September 8, 2021 Scheduling Order (ECF No. 26), Plaintiff/Counterclaim Defendant GUANGZHOU YUCHENG TRADING CO., LTD. ("GYT") hereby submits its Opening Claim Construction Brief.

## I.    INTRODUCTION

This is a patent case concerning U.S. Patent No. 9,233,700 (Ex. 1,[1] "the '700 Patent"). The '700 Patent relates to carts (e.g., for carrying groceries). Defendant/Counterclaim Plaintiff DBEST PRODUCTS, INC. ("DBest") asserts that three of GYT's products infringe the '700 Patent. However, this infringement claim fails as a matter of law because the '700 Patent requires a cart with a specific structure that the accused products do not possess.

For example, Claim 3 requires "a cart comprising," *inter alia*:



a base section formed in ***a single piece of material*** including a bottom horizontal section having a left side and a right side, ***the bottom horizontal section*** respectively extending on the left side to a left arcuate section which extends to an ***elevated left horizontal section,*** and extending on the right side to a right arcuate section which extends to an ***elevated right horizontal section***; . . .

a ***toe plate which has a honeycomb pattern with a multiplicity of openings*** separated by horizontal solid sections and vertical solid sections, . . . [and]

a horizontal mounting bar retaining ***rotational affixation members to rotatably retain the toe plate*** . . . .

---

[1] All exhibits referenced herein are attached to the Declaration of Mark Berkowitz submitted herewith.



(Ex. 1, '700 Patent, Claim 3, Figs. 1, 3.)[2]

GYT's accused products do not include any of these elements:



As shown above, the accused products simply cannot infringe the '700 Patent because they do not include multiple required elements. Indeed, the accused products

---

[2] All figures herein are excerpted, and all annotations in blue text are added. In addition, all emphasis herein is added, and all internal quotations, citations, and modifications are omitted herein unless otherwise indicated.

are virtually identical to prior art products, e.g., that shown in China Utility Model No. CN202783272 (Ex. 2 at GYT000001–18):



While GYT's accused products include a removable platform, platforms were well known in the art, such as shown below in European Design No. 000287487-0001 (Ex. 3 at GYT000019–22):



Nonetheless, DBest ignores the fact that the accused products do not infringe the claims as they are written, and attempts to rewrite its patent claims under the guise of claim construction. For example, DBest is determined to wholly rewrite the claim element "a base section formed in ***a single piece of material*** including a ***bottom***

*horizontal* section" to cover the accused products, which use a ***two-piece*** construction. DBest's positions are frivolous.

In its Infringement Contentions (Ex. 4 at Appendix A, pp. 2–3), DBest argued that the piece of the cart's frame that supports the removable platform—which lays completely horizontal and in one plane when the cart is upright and open—somehow constituted ***both*** the "bottom" portion and the "elevated" portion:



**Purported "bottom horizontal section"**

**Purported "elevated left horizontal section"**

Now, in the context of claim construction, DBest continues to argue for a construction of claim term "a bottom horizontal section" that ignores the words of the claim, which require that the ***bottom*** section of "a single piece of material" connects on both sides to sections that "extend[] to . . . elevated . . . section[s]." DBest seeks to write out the "bottom" aspect of this claim, by seeking to construe the term as meaning "a section of the base [section] that is generally horizontal. . . ." If DBest succeeds in obtaining this construction, it will expand the scope of the claim far beyond what DBest and the patent examiner believed it to be at the time of the application, and far beyond what a person or ordinary skill in the art would understand the patent as covering.

DBest's other constructions, likewise, attempt to write limitations out of the claims entirely in order to broaden the scope of the '700 Patent enough to fabricate a claim against GYT. For these reasons, and those discussed below, GYT respectfully requests that the Court adopt its proposed constructions of the below-identified terms.

## II.    FACTUAL BACKGROUND

### 1.    The Parties

GYT sells a variety of products, including utility carts, storage carts, and shopping carts, on Amazon.com. DBest also sells portable carts and is the owner of the '700 Patent. (ECF No. 27, "Counterclaims", ¶¶ 2–5.)

### 2.    Procedural History

GYT filed this Action on June 10, 2021 seeking a declaratory judgment that certain shopping carts it sells do not infringe the '700 Patent and that the '700 Patent is invalid. (ECF No. 1.) DBest subsequently brought a single counterclaim alleging GYT's accused shopping carts directly infringe the '700 Patent. (ECF No. 15.) DBest has asserted independent Claim 3 (and its dependent Claims 4–7 and 10–11) of the '700 Patent (the "Asserted Claims") against GYT.

A Scheduling Order was entered in this Action on September 8, 2021. (ECF No. 26.) On March 7, 2022, the Parties submitted their Joint Claim Construction and Prehearing Statement. (ECF No. 31.)

### 3.    The '700 Patent

The '700 Patent issued on January 12, 2016 from an application filed on October 26, 2014, and does not claim priority to any earlier-filed application.

The '700 Patent is related to portable shopping carts, i.e., "a portable heavy wheeled flat based foldable transport cart with a shopping bag". (Ex. 1, '700 Patent, Abstract.) The specification of the '700 Patent admits that shopping carts of the kind disclosed are well-known in the prior art (*see, e.g.*, Ex. 1, '700 Patent, Col. 1:13–3:30), but purports to disclose improvements over that prior art in part because "(1) the toe plate 80 is elevated above the ground 2000; and (2) one-half of the diameter "D-1" of the large bumper wheels (beefy wheels) 122 and 132 is aligned with the toe plate 80" (Ex. 1, '700 Patent, Col. 9:19–22).

Specifically, independent Claim 3 of the '700 Patent requires, in relevant part:

A cart comprising:

a base section formed in a single piece of material including ***a bottom horizontal section having a left side and a right side, the bottom horizontal section respectively extending on the left side to a left arcuate section which extends to an elevated left horizontal section, and extending on the right side to a right arcuate section which extends to an elevated right horizontal section***; . . .

a first lower handle section which is formed in one piece having . . . ***a protective sheath surrounding a portion of the horizontal section***; . . . ,

a ***toe plate which has a honeycomb pattern with a multiplicity of openings separated by horizontal solid sections and vertical solid sections***, the toe plate rests on and is affixed to the elevated horizontal sections of the base member so that the toe plate is elevated above ***the horizontal base member***, the toe plate rotatably retained to the elevated horizontal sections of the base member;

a left bumper wheel including a rubber tire . . . and an oppositely disposed right bumper wheel including a rubber tire . . . ***a horizontal mounting bar retaining rotational affixation members to rotatably retain the toe plate*** . . . the horizontal mounting bar further rotatably supporting the left bumper wheel and the right bumper wheel in a manner where one-half the diameter of the left bumper wheel is aligned with the toe plate and one-half the diameter of the right bumper wheel is aligned with the toe plate; . . .

the toe plate rests on the elevated left and right horizontal sections of the base member when the cart is in the erect condition.

(Ex. 1, '700 Patent, Claim 3.)

## III.  CLAIM CONSTRUCTION PRINCIPLES

Claim construction is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Claim terms "are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc). To determine this meaning, "the court starts the decisionmaking process by reviewing the same resources as would that person, viz., the patent specification and prosecution history." *See id.* at 1313.

The patent specification "is always highly relevant to the claim construction

analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315. A court "should also consider the patent's prosecution history," which consists of the "complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* at 1317. The prosecution history "provides evidence of how the PTO and the inventor understood the patent." *Id.*

Finally, courts may rely on dictionary definitions when construing claim terms, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1373 (Fed. Cir. 2012). Such extrinsic evidence is "less significant" and "less reliable" than the intrinsic record in determining the meaning of claim language. *Phillips*, 415 F.3d at 1317–18. Thus, while extrinsic evidence may be useful to the court, "it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

## IV.   GYT'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED

The following terms appear in independent Claim 3 of the '700 Patent and are, thus, required by each of the Asserted Claims in this Action.

### 1.   "a bottom horizontal section having a left side and a right side"

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "a lowermost horizontal section of a base section having a left side and a right side" | ordinary meaning *or* "a section of the base that is generally horizontal when the cart is in a fully erect standing position, the section having a left side and a right side" |

In relevant part, Claim 3 requires a cart that includes:

a base section formed in a single piece of material including ***a bottom horizontal section having a left side and a right side***, the bottom horizontal section respectively extending on the left side to a left arcuate section which extends to an elevated left horizontal section, and extending on the right side

1  to a right arcuate section which extends to an elevated right horizontal
   section;

2  (Ex 1, '700 Patent, Claim 3.)

3     Claim 3, itself, requires a base section, "formed in a single piece of material,"

4  that includes a "**bottom** horizontal section" that extends on either side to an "arcuate

5  section which extends to" respective "***elevated*** . . . horizontal section[s]" (Ex. 1, '700

6  Patent, Claim 3).

7     Similarly, the description in the '700 Patent's specification explains that:

8     The cart 10 includes **base section** 20 **made of one piece** including a **bottom**
9     horizontal section 22 respectively extending on both its left side and right
      side, the left side extending to arcuate section 24L which in turn extends to
10    ***elevated*** horizontal section 24HL and the right side extending to arcuate
11    section 24R which in turn extends to ***elevated*** horizontal section 24HR.

12 (Ex. 1, '700 Patent, Col. 7:2–8.)



FIG. 1

20     Accordingly, both Claim 3 and the specification supports the conclusion that

21 the term "a bottom horizontal section having a left side and a right side" is referring

22 to a horizontal section of a base section that is **lower** than the other components (i.e.,

23 the ***elevated*** right and left horizontal sections) of the **same** base section.

24     Dictionary definitions of the term "bottom" further support GYT's proposed

25 construction. *See, e.g., Shire Dev., LLC v. Watson Pharms., Inc.,* 787 F.3d 1359, 1365

26 (Fed. Cir. 2015) (finding that, where a phrase consists of an adjective that modifies a

27 noun, the noun "must exhibit the . . . characteristic" of the adjective); *VirnetX Inc. v.*

28 *Apple Inc.,* 792 F. App'x 796, 810 (Fed. Cir. 2019) ("The ordinary meaning of . . . a

phrase [consisting of a noun modified by an adjectival phrase] is that the noun is characterized by the adjectival phrase[.]"); (Ex. 5 at GYT000083 (defining "bottom" as "the ***lowest point*** or part of something"); Ex. 6 at GYT000088 (same)).

DBest's proposed construction leaves out an essential portion of the term "bottom horizontal section"—that it is a section at the ***bottom*** of the base section. Under DBest's proposed construction, the section need only be horizontal, which is not what is described by the claim language, the specification, or the prosecution history (i.e., the intrinsic evidence) nor the dictionary definition of "bottom" (i.e., extrinsic evidence).

> **2.** **"the bottom horizontal section respectively extending on the left side to a left arcuate section which extends to an elevated left horizontal section, and extending on the right side to a right arcuate section which extends to an elevated right horizontal section"[3]**

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "the lowermost horizontal section of the base section extending on the left side to a left arcuate section which extends upwards to a left horizontal section that is higher than the lowermost horizontal section, and extending on the right side to a right arcuate section which extends upwards to a right horizontal section that is higher than the lowermost horizontal section" | ordinary meaning ***or*** "a section of the base that is generally horizontal when the cart is in a fully erect standing position, the left side of the horizontal section transitions to a curved section that transitions to another section that is generally horizontal and elevated when the cart is in a fully erect standing position, the right side of the horizontal section transitions to a curved section that transitions to another section that is generally horizontal and elevated when the cart is in a fully erect standing position" |

In relevant part, Claim 3 requires a cart that includes:

---

[3] GYT believes that this term can be considered together with the first proposed term (*see* Section IV.1 *supra*) since this term provides additional description for the "bottom horizontal section" referred to in the first term.

a base section formed in a single piece of material including a bottom horizontal section having a left side and a right side, ***the bottom horizontal section respectively extending on the left side to a left arcuate section which extends to an elevated left horizontal section, and extending on the right side to a right arcuate section which extends to an elevated right horizontal section***;

(Ex 1, '700 Patent, Claim 3.)

The language of Claim 3, itself, requires that the "***bottom*** horizontal section" extends on the left side to a "left arcuate section which extends to an ***elevated*** left horizontal section" and on the right side to a "right arcuate section which extends to an ***elevated*** right horizontal section" (Ex. 1, '700 Patent, Claim 3). In view of this plain language, the referenced "***bottom*** horizontal section respectively extending on the left side to a left arcuate section which extends to an ***elevated*** left horizontal section, and extending on the right side to a right arcuate section which extends to an ***elevated*** right horizontal section" is meant to distinguish the ***bottom*** horizontal section from the ***elevated*** left and right horizontal sections. The deliberate choice of adjectives relating to the spatial relationship of different elements of the same base section confirms that GYT's proposed construction is proper.

Such construction is consistent with the language in the '700 Patent's specification, as well as the illustration in Figure 1, annotated below. The specification reiterates the claim language by describing that:

The cart 10 includes ***base section*** 20 ***made of one piece*** including a ***bottom*** horizontal section 22 respectively extending on both its left side and right side, the left side extending to arcuate section 24L which in turn extends to ***elevated*** horizontal section 24HL and the right side extending to arcuate section 24R which in turn extends to ***elevated*** horizontal section 24HR.

(Ex. 1, '700 Patent, Col. 7:2–8.)

The specification further describes that "one innovation . . . is that the toe plate 80 rests on and affixed to the ***elevated horizontal sections*** 24HL and 24RL of the bottom horizontal section 22 so that the toe plate 80 is ***elevated above the ground***." (Ex. 1, '700 Patent, Col. 7:60–64.)

Accordingly, the '700 Patent's specification supports the conclusion that "the bottom horizontal section respectively extending on the left side to a left arcuate section which extends to an elevated left horizontal section, and extending on the right side to a right arcuate section which extends to an elevated right horizontal section" refers to the **bottom** horizontal section **extending upwards** to **elevated** left and right horizontal sections such that the **bottom** horizontal section of a base section is **lower** than the **elevated** right and left horizontal sections of the **same** base section.

Dictionary definitions of the term "elevated" further support GYT's proposed construction. *See, e.g., Shire,* 787 F.3d at 1365; *VirnetX,* 792 F. App'x at 810; (Ex. 7 at GYT000091 (defining "elevated" as "situated or placed higher than the surrounding area"); Ex. 8 at GYT000094 (same)).

As discussed above (*see supra* § I), the motivation behind DBest's proposed construction is to attempt to get around the fact that all of the asserted claims of the '700 Patent require that the base section be formed "in a single piece of material," whereas the accused products use a **two-piece** construction. To do so, DBest ignores the claim language (and other intrinsic evidence) that requires that the base section be formed with a "bottom" horizontal section that transitions to "elevated" horizontal sections. DBest's attempt to write these limitations out of the claim should be rejected.

### 3.    "a protective sheath surrounding a portion of the horizontal section"

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "an integrated cover around the horizontal section" | "a protective cover surrounding a portion of the horizontal section" |

In relevant part, Claim 3 requires a cart that includes:

a first lower handle section which is formed in one piece having a horizontal section which extends from its left side to a lower vertical left leg member and which extends from its right side to a lower vertical right leg member, the lower vertical left leg member ends at a distal end and a first left transverse opening adjacent the horizontal section and a second left transverse opening adjacent its distal end, and lower vertical right leg member ends at a distal end and has a first right transverse opening adjacent its horizontal section and a second right transverse opening adjacent its distal end, *a protective sheath surrounding a portion of the horizontal section*;

(Ex 1, '700 Patent, Claim 3.)

The construction of the term "a protective sheath surrounding a portion of the horizontal section" can start and end with a reading of Claim 3, itself. Indeed, the language of Claim 3 requires that the "protective sheath" be included as part of (i.e., integrated with) the "first lower handle section *which is formed in one piece*." (Ex. 1, '700 Patent, Claim 3.) Accordingly, pursuant to the language of the claim, the lower handle section must incorporate each of a horizontal section, a lower vertical left leg member, a lower vertical right leg member, and a protective sheath in "*one piece*." Thus, the term "a protective sheath surrounding a portion of the horizontal section" should be construed to mean "an integrated cover around the horizontal section."

### 4.    "toe plate which has a honeycomb pattern with a multiplicity of openings separated by horizontal solid sections and vertical solid sections"

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "platform which has a pattern of spaced horizontal solid sections and vertical solid sections defining more | "a toe plate with a pattern of openings arranged in rows and columns with solid sections between the openings" |

| than one open space through which something may be passed" | |

In relevant part, Claim 3 requires a cart that includes:

> *a toe plate which has a honeycomb pattern with a multiplicity of openings separated by horizontal solid sections and vertical solid sections*, the toe plate rests on and is affixed to the elevated horizontal sections of the base member so that the toe plate is elevated above the horizontal base member, the toe plate rotatably retained to the elevated horizontal sections of the base member;

(Ex 1, '700 Patent, Claim 3.)

Reiterating the claim language, the specification of the '700 Patent states that "the toe plate 80 which has a *honeycomb pattern with a multiplicity of openings 82 separated by horizontal solid sections 84 and vertical solid sections 86*." (Ex. 1, '700 Patent, Col. 7:56–59.)



As shown in the annotated version of Figure 1 above—and as further supported by the '700 Patent's specification—the term "toe plate which has a honeycomb pattern with a multiplicity of openings separated by horizontal solid sections and vertical solid sections" should be construed to mean "platform which has a pattern of spaced horizontal solid sections and vertical solid sections defining more than one open space through which something may be passed."

This construction is further supported by Figures 8a and 8b (annotated below) and the specification's description of a "unique attachment clip" that "*enables the folded cart to be locked onto the honeycomb toe plate*" when the cart is in a folded

position. (Ex. 1, '700 Patent, Col. 3:41–43.) Specifically, when in a "locked/folded" condition, "***the tab 174***," part of locking tab 170, is "***locked in one of the transverse members 84 of the toe plate 80***." (Ex. 1, '700 Patent, Col. 3:41–43.)



FIG. 8b

Such description in the specification of the '700 Patent and the illustration in Figures 8a and 8b confirm that "tab 174" of the "attachment clip" (also referred to as "locking tab 170") must ***pass through*** the openings of the toe plate in order to lock onto the horizontal solid sections separating the openings, thereby locking the cart in a folded condition, supporting the conclusion that the term "toe plate which has a honeycomb pattern ***with a multiplicity of openings*** separated by horizontal solid sections and vertical solid sections" must be construed as "platform which has a pattern of spaced horizontal solid sections and vertical solid sections defining more than one open space through which something may be passed."

Furthermore, in the prosecution history of the '700 Patent, the Examiner noted that "the prior art made of record and not relied upon is considered pertinent to applicant's disclosure [including] U.S. Patent Publication No. 2012/0055122 issued to Beauchamp teach of a cart with a ***honeycomb (Figure 2) platform*** . . . U.S. Patent No. 6,626,634 issued to Hwang et al. teach of a hand truck with a ***honeycomb platform*** . . . U.S. Patent No. 4,887,837 issued to Bonewicz, Jr. teach of a cart with a

*honeycomb platform*." (Ex. 9 at GYT000185.)

The "honeycomb platforms" referred to in each of these cited references are illustrated as platforms with a pattern of open spaces through which an object may be passed—consistent with GYT's construction:



(Ex. 10 at GYT000261; Ex. 11 at GYT000274–276, 284; Ex. 12 at GYT000288–289.)

Thus, when considered alone and in view of Claim 3 and the specification of the '700 Patent, each of these cited references further support the construction of "toe plate which has a honeycomb pattern with a multiplicity of openings separated by horizontal solid sections and vertical solid sections" as a "platform which has a pattern of spaced horizontal solid sections and vertical solid sections defining more than one open space through which something may be passed."

DBest's construction seeks to rewrite its claim to write out the concept that the "honeycomb" pattern required for the toe plate of the cart include openings through which objects could pass through. In its Infringement Contentions, DBest pointed to

the support structure on the bottom of the accused products' removable platform to somehow argue that those define "openings separated by horizontal solid sections and vertical solid sections" (Ex. 4 at Appendix A, pp. 8–9):



Now, in the context of claim construction, DBest continues to ignore the "honeycomb" requirement. It seems to argue that the term "openings" refers to, not a pass-through opening, but the type of openings found in a jar (i.e., the entryway into an enclosed space). As discussed above, this contrived interpretation is not supported by the claim language, the figures, the rest of the specification or the prosecution history. Rather, the meaning of honeycomb pattern with a multiplicity of openings should be construed as it would have been by a person of skill in the art at that time of the invention, consistent with GYT's proposed construction.

5.    **"horizontal base member"**

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| Indefinite *or*, if not indefinite, "a lowermost horizontal section of a base section" | "the bottom horizontal section of the base section" |

In relevant part, Claim 3 requires a cart that includes:

a toe plate which has a honeycomb pattern with a multiplicity of openings separated by horizontal solid sections and vertical solid sections, the toe plate rests on and is affixed to the elevated horizontal sections of the base member so that the toe plate is elevated above ***the horizontal base member***, the toe plate rotatably retained to the elevated horizontal sections

of the base member;

(Ex 1, '700 Patent, Claim 3.)

The term "*horizontal base member*" does not appear in the specification of the '700 Patent, and appears for the first (and only) time in independent Claim 3 in the claim element repeated immediately above. However, Claim 3 talks about "*the*" horizontal base member, as if the reader should know what portion of the structure is being referenced. But because there is no earlier identification of "*the* horizontal base member," the reader has no way to know with reasonable certainty what portion of the claimed cart is being referred to by the term. In other words, the term has no "antecedent basis" and must be rendered indefinite.

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). A patent's claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). A claim term is invalid as indefinite if it fails to "particularly point[] out and distinctly claim[] the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b).

Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Nautilus*, 134 S. Ct. at 2130. Although not all failures to provide antecedent basis will trigger indefiniteness, where the lack of antecedent basis removes reasonable certainty about the meaning of the claim, that claim is indefinite. *See Haliburton Energy Services Inc. v. M -I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) ("[A] claim could be indefinite if a term does not have proper antecedent basis where such basis is not otherwise present by implication or the meaning is not reasonably ascertainable."); *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020) (affirming finding of indefiniteness where claim term "appear[ed] in the claim without antecedent basis" and neither the remainder of the claim nor the specification

did not clarify the term's meaning).

In view of these standards, the term "the horizontal base member" is indefinite under 35 U.S.C. § 112. A person of skill in the art would not be unable to understand what is meant by "*horizontal base member*" and whether this limitation is referring to the "bottom *horizontal* section," "elevated *horizontal* sections of the *base member*," or simply the "*base member*"—each referenced earlier in the claim—or to some other unknown section/member. Such uncertainty is heightened by the fact that the term "the horizontal base member" does not appear anywhere in the specification of the '700 Patent. Thus, even when viewed in light of the intrinsic evidence, a person of skill in the art would not be informed of the scope of the invention with reasonable certainty and could not determine whether the claim is infringed.

Nonetheless, in the alternative, GYT asks this Court to construe "horizontal base member" as "a lowermost horizontal section of a base section." Such construction is parallel to, and consistent with, that of "a bottom horizontal section having a left side and right side" set forth in Section IV.1 *supra*.

The portion of the claim that refers to "the horizontal base member" states that "the toe plate rests on and is affixed to the elevated horizontal sections of the base member so that the toe plate is *elevated above* the horizontal base member." Since the claim states that the toe plate must be *elevated above* "the horizontal base member," it should not be construed as equivalent to "the elevated horizontal sections of the base member" on which the toe plate is affixed. Additionally, the claim language seems to distinguish "the horizontal base member" from "the base member." Thus, the most reasonable interpretation of "the horizontal base member" is the "bottom horizontal section," construed in Section IV.1 *supra*.

Since the specification does not include any reference to "the horizontal base member," it does not provide any further guidance. It only confirms that the "toe plate 80 rests on and affixed to the *elevated horizontal sections*" such that "the toe plate 80

is ***elevated above the ground***." (Ex. 1, '700 Patent, 7:60–64.)    Accordingly, a
construction that equates "the horizontal base member" with "the bottom horizontal
section" of the base member, is more consistent with the specification than equating
it with the "elevated horizontal section[s]" since the claim requires the toe plate to be
***elevated above*** "the horizontal base member."



Therefore, if the Court does not determine that the term "the horizontal base
member" is indefinite, GYT respectfully requests this Court construe the term as
equivalent to "bottom horizontal section" discussed in Section IV.1 *supra*.

### 6.    "a horizontal mounting bar retaining rotational affixation members to rotatably retain the toe plate"

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "a horizontal mounting bar on which rotational affixation members, which connect to the toe plate in such a way as to allow the toe plate to rotate relative to the rotational affixation members, are attached" | ordinary meaning *or* "a bar that is generally horizontal when the cart is in a fully erect standing position wherein the bar is rotatably coupled to the toe plate with rotational affixation members" |

In relevant part, Claim 3 requires a cart that includes:

> ***a horizontal mounting bar retaining rotational affixation members
> to rotatably retain the toe plate***, the horizontal mounting bar extending
> through aligned openings in the lower vertical left leg member and lower
> vertical right leg member, the horizontal mounting bar further rotatably
> supporting the left bumper wheel and the right bumper wheel in a manner

where one-half of the given diameter of the left bumper wheel is aligned
with the toe plate and one-half of the given diameter of the right bumper
wheel is aligned with the toe plate;

(Ex 1, '700 Patent, Claim 3.)

The proper construction of the term "a horizontal mounting bar retaining
rotational affixation members to rotatably retain the toe plate" can be reached based
on the claim language, alone. The claim requires that in addition to extending through
aligned openings in the vertical left leg member and vertical right leg member, and
rotatably supporting the left and right bumper wheels, the **same** "horizontal mounting
bar"—identified in the annotated version of Figure 3, below—must also retain (i.e.,
hold) rotational affixation members. Put another way, the referenced "rotational
affixation members [that] rotatably retain the toe plate" must attach to the same
horizontal mounting bar that extends through aligned openings and supports both
bumper wheels.



Indeed, such understanding of the claim language is consistent with the
description of the "horizontal mounting bar" in the '700 Patent's specification:

> **A horizontal mounting bar 140 retains** left rotational tube 90LRT which in
> turn is connected by a left connecting member 90LCM to **left rotational
> affixation member 90LRM to further retained toe plate 80**, **extends
> through second transverse opening 38LL adjacent distal end 36 of lower
> vertical left leg member 34 and then extends into left bumper wheel (beefy
> wheel) 120.** Similarly, **horizontal mounting bar 140 retains** right rotational

tube 90RRT which in turn is connected by a right connecting member 90RCM to ***right rotational affixation member 90RRM to further retain toe plate 80, extends through second transverse opening 44RL adjacent distal end 42 of lower vertical right leg member 40 and then extends into right bumper wheel (beefy wheel) 130.***

(Ex. 1, '700 Patent, Col. 8:11–24.)

In addition, Claim 3 further requires that the rotational affixation members "rotatably retain the toe plate." The specification of the '700 Patent, in addition to Figure 3 (annotated below), make clear that the rotational affixation members retain the toe plate by channels on the underside of the toe plate:

The ***underside 88 of toe plate 80 has a left horizontal channel 90L*** into which elevated left horizontal section 24HL is inserted and ***rotatably retained by left rotational affixation member 90LRM*** extending through opening 24HLO in elevation left horizontal section 24HL. The ***underside 88 of toe plate 80 also has a right horizontal channel 90R*** into which elevated right horizontal section 24RL is inserted and ***rotatable retained by right rotational affixation member 90RRM*** extending through opening 24HRO in elevated right horizontal section 24HR.

(Ex. 1, '700 Patent, Col. 7:64–8:6.)

DBest's construction seeks to rewrite its claim so that the rotational affixation members do not have to be retained by the horizontal mounting bar, only to be rotatably coupled to it. In its Infringement Contentions (Ex. 4 at Appendix A, pp. 9–11), DBest pointed to support members on the accused products that are neither retained by the horizontal mounting bar nor the removable platform, as somehow satisfying this claim limitation:[4]

---

[4] DBest argued in the alternative that the limitation was met under the "doctrine of equivalents.



Now, in the context of claim construction, DBest continues to ignore the requirement that the rotational affixation members must be connected to the horizontal mounting bar and the toe plate, by arguing for a construction that they need only be "rotatably coupled." As discussed above, DBest's proposed interpretation is not supported by the claim language, the figures, or the rest of the specification. Rather, the meaning of this term should be construed as it would have been by a person of skill in the art, consistent with GYT's proposed construction.

7.   **"the horizontal mounting bar further rotatably supporting the left bumper wheel and the right bumper wheel in a manner where one-half of the given diameter of the left bumper wheel is aligned with the toe plate and one-half of the given diameter of the right bumper wheel is aligned with the toe plate"**

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "the horizontal mounting bar that further supports and permits the rotation of a single robust left wheel and a single robust right wheel in a way such that the center of the single robust left wheel is aligned with the back end of the toe plate, and the center of the single robust right wheel is aligned with the back end of the toe plate, no matter the angle at which the cart is rotated" | "the horizontal mounting bar further rotatably supports the left wheel and right wheel so that the center of each of the left wheel and the right wheel is aligned with the back of the toe plate" |

In relevant part, Claim 3 requires a cart that includes:

> a left bumper wheel including a rubber tire having a given diameter and an oppositely disposed right bumper wheel including a rubber tire having a diameter identical to the given diameter of the left bumper wheel with a rubber tire, . . . ***the horizontal mounting bar further rotatably supporting the left bumper wheel and the right bumper wheel in a manner where one-half of the given diameter of the left bumper wheel is aligned with the toe plate and one-half of the given diameter of the right bumper wheel is aligned with the toe plate***;

(Ex 1, '700 Patent, Claim 3.)

The language of Claim 3 is clear that the horizontal mounting bar supports the rotation of the left bumper wheel and the right bumper wheel. The specification further explains that "[a] horizontal mounting bar 140 . . . extends into left bumper wheel (beefy wheel) 120. Similarly, horizontal mounting bar 140 . . . extends into right bumper wheel (beefy wheel) 130." (Ex. 1, '700 Patent, Col. 8:11–28.)



As further required by the language of Claim 3, "one-half of the given diameter of the bumper wheel[s]" must be aligned with the toe plate. When discussing the innovative and unique features of the claimed shopping cart, the specification of the '700 Patent explains that, to facilitate a user pulling the cart when it has a heavy load, "***50% of the diameter*** of each wheel (or approximately 50% of the diameter of each wheel) [is] ***in line with*** the toe plate instead of the entire diameter of each wheel ***behind*** the toe plate as is found in most prior art carts." (Ex. 1, '700 Patent, Col. 4:2–

8.) The specification further notes that, as illustrated in Figure 9, while the angle of the cart relative to the surface can range from 10 degrees to 60 degrees, "***one-half of the diameter*** 'D-1' of the large bumper wheels (beefy wheels) 122 and 132 ***is aligned with the toe plate*** 80." (Ex. 1, '700 Patent, Fig. 9, Col. 8:11–28.)



Thus, a person of skill in the art reviewing Figures 1 and 9 (annotated above), and the specification of the '700 Patent would understand that, no matter the angle at which the cart is rotated, the center of each wheel is aligned with the back end of the toe plate (i.e., half of the diameter is aligned with the toe plate, as opposed to the entire diameter of the wheel being completely behind the toe plate).

Accordingly, in view of the plain language of the claim and the specification of the '700 Patent, the term "the horizontal mounting bar further rotatably supporting the left bumper wheel and the right bumper wheel in a manner where one-half of the given diameter of the left bumper wheel is aligned with the toe plate and one-half of the given diameter of the right bumper wheel is aligned with the toe plate" should be construed to mean that "the horizontal mounting bar that further supports and permits the rotation of a single robust left wheel and a single robust right wheel in a way such that the center of the single robust left wheel is aligned with the back end of the toe plate, and the center of the single robust right wheel is aligned with the back end of the toe plate, no matter the angle at which the cart is rotated."

Again, DBest's construction is simply an attempt to rewrite the claim to attempt to cover the accused products. For example, as shown below, one of the accused products is a "stair climber" cart—it includes three wheels instead of a single robust wheel on either side of the axel so that the user can more easily "roll" the cart up a flight of stairs. Given that the accused product does not have a single "right wheel" and "left wheel" on either side, in DBest's Infringement Contentions (Ex. 4 at Appendix A, pp. 9–11), DBest chose one of the three wheels on either side as being the wheel whose diameter was "aligned" with the back of the toe plate, as shown below. However, under DBest's theory, the accused cart still does not meet the claim requirement that the wheel be "rotatably support[ed]" by the horizontal mounting bar:



And, even if DBest tried to change its theory of infringement to argue that the entire three-wheel combination somehow constituted a "wheel," that triangularly shaped "wheel" could not have a "diameter" as required by the claim. Yet, DBest's proposed construction seeks to write out the "diameter" requirement from the claim and should be rejected.

## V.    CONCLUSION

For the foregoing reasons, GYT respectfully requests that the Court adopt its proposed claim constructions.

Respectfully submitted,

Dated: March 14, 2022

TARTER KRINSKY & DROGIN LLP

By: /s/ Mark Berkowitz
Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Austin J. Richardson (SBN 319807)
ajr@smlavvocati.com
SML AVVOCATI P.C.
888 Prospect Street, Suite 200
San Diego, CA 92037
Tel: 949.636.1391

Mark Berkowitz (*pro hac vice*)
mberkowitz@tarterkrinsky.com
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel: 212.216.8000

***Attorneys for Plaintiff***

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on March 14, 2022, I electronically filed the above

3

document(s) and attachments with the Clerk of Court using CM/ECF which will send

4

electronic notification of such filing(s) to all registered counsel.

5

6

*/s/ Mark Berkowitz*

7

Mark Berkowitz

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---