Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Austin J. Richardson (SBN 319807)
ajr@smlavvocati.com
SML AVVOCATI P.C.
888 Prospect Street, Suite 200
San Diego, CA 92037
Tel: 949.636.1391

Mark Berkowitz (*pro hac vice*)
mberkowitz@tarterkrinsky.com
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel: 212.216.8000

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| **GUANGZHOU YUCHENG TRADING CO., LTD.**, a foreign limited liability company,<br><br>Plaintiff / Counterclaim Defendant,<br><br>v.<br><br>**DBEST PRODUCTS, INC.**, a California corporation,<br><br>Defendant / Counterclaim Plaintiff. | Case No. 2:21-cv-04758-JVS-JDE<br><br>**GUANGZHOU YUCHENG TRADING CO., LTD.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**<br><br>Judge: James V. Selna<br>Hearing Date: April 25, 2022<br>Time: 3:00 p.m.<br>Courtroom: 10C |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **TABLE OF CONTENTS**

2   I.     INTRODUCTION ............................................................................. 1

3   II.    GYT'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED .......... 4

4          1.     "a bottom horizontal section having a left side and a right side" ......... 4

5          2.     "the bottom horizontal section respectively extending on the left

6                 side to a left arcuate section which extends to an elevated left

7                 horizontal section, and extending on the right side to a right arcuate

8                 section which extends to an elevated right horizontal section" ............ 7

9          3.     "a protective sheath surrounding a portion of the horizontal

10                section" .................................................................................. 9

11         4.     "toe plate which has a honeycomb pattern with a multiplicity of

12                openings separated by horizontal solid sections and vertical solid

13                sections" .............................................................................. 10

14         5.     "horizontal base member" .................................................... 15

15         6.     "a horizontal mounting bar retaining rotational affixation members

16                to rotatably retain the toe plate" .......................................... 17

17         7.     "the horizontal mounting bar further rotatably supporting the left

18                bumper wheel and the right bumper wheel in a manner where one-

19                half of the given diameter of the left bumper wheel is aligned with

20                the toe plate and one-half of the given diameter of the right bumper

21                wheel is aligned with the toe plate" ....................................... 20

22  III.   CONCLUSION ........................................................................ 23

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
  616 F.3d 1249 (Fed. Cir. 2010) ........................................................... 19

*Bond St., Ltd. v. United States*,
  33 C.I.T. 1247 (2009) ...................................................................... 11

*Nautilus Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ..................................................................... 15

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ..............................................*passim*

**Statutes**

35 U.S.C. § 112(b) ................................................................................ 15

Pursuant to the Court's September 8, 2021 Scheduling Order (ECF No. 26), Plaintiff/Counterclaim Defendant GUANGZHOU YUCHENG TRADING CO., LTD. ("GYT") hereby submits its Responsive Claim Construction Brief to Defendant/Counterclaim Plaintiff DBEST PRODUCTS, INC.'S ("DBest") Opening Brief (ECF No. 34, "DBest's Opening Br.").

## I.  INTRODUCTION

As discussed in GYT's Opening Claim Construction Brief (ECF No. 35, "GYT's Opening Br."), GYT's proposed constructions for the disputed claim terms are consistent with the claim language and the specification of U.S. Patent No. 9,233,700 (ECF No. 35-2, "the '700 Patent"). In sharp contrast, DBest's proposed constructions contradict the plain language of the claims and the description of the purported invention in the '700 Patent's specification.

DBest repeatedly argues that the disputed claim terms are "perfectly clear," but then applies these terms in a way that conflicts with those commonly understood meanings in an attempt to write out those claim limitations to fabricate a claim against GYT. For example, as discussed in GYT's Opening Brief, GYT's accused products do not include "a base section formed in *a single piece of material* including a bottom horizontal section having a left side and a right side, *the bottom horizontal section* respectively extending on the left side to a left arcuate section which extends to an *elevated left horizontal section*, and extending on the right side to a right arcuate section which extends to an *elevated right horizontal section*" (as relevant to Disputed Term Nos. 1 & 2):

1
2
3
4
5
6
7
8
9
10
11
12



13  (*See* '700 Patent, Claim 3, Fig. 1; *see also* ECF No. 35 at 2–4.)[1]

14          Although arguing that "the word 'bottom' is perfectly clear to one skilled in

15  the art" (ECF No. 34 at 8), DBest seeks to construe the term "a bottom horizontal

16  section . . ." in a way that completely eliminates the aspect of that claim requirement

17  that makes it a "bottom" horizontal section, i.e., the ***bottom*** (or lowermost) horizontal

18  section ***relative to*** the ***elevated*** horizontal sections.  Indeed, DBest's proposes that this

19  term be construed simply as "a section of the base [section] that is generally

20  horizontal. . . ."  This proposed construction improperly changes the scope of the

21  claims and should be rejected.

22          As another example, and as discussed in GYT's Opening Brief, GYT's accused

23  products do not include "a toe plate which has ***a honeycomb pattern with a***

24  ***multiplicity of openings*** separated by horizontal solid sections and vertical solid

25  ────────────────────

26  [1] All figures herein are excerpted, and all annotations in blue text are added.  In

27  addition, all emphasis herein is added, and all internal quotations, citations, and

28  modifications are omitted herein unless otherwise indicated.

sections" (as relevant to Disputed Term No. 4):



(*See* '700 Patent, Claim 3, Fig. 1; *see also* ECF No. 35 at 2–4.)

Instead of relying on the specification and prosecution history as it is required to do, DBest makes unsupported arguments about what a person of skill in the art would understand "honeycomb" to mean, and relies on alternative definitions of "opening" to argue that the openings need not "extend all the way through the toe plate." (ECF No. 34 at 15–16.) If there was any doubt that the commonly understood meaning of "honeycomb pattern with a multiplicity of openings" defines a pattern of open spaces through which something may be passed, the '700 Patent's specification expressly describes a locking tab that attaches to the toe plate using one of these openings. Again, DBest's proposed construction simply seeks to improperly change the scope of the claims and should be rejected.

For these reasons, and those discussed below and in GYT's Opening Claim Construction Brief, GYT respectfully requests that the Court reject DBest's proposed constructions and adopt GYT's proposed constructions of the disputed terms.

## II.   GYT'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED

The following terms appear in independent Claim 3 of the '700 Patent and are, thus, required by each of the asserted claims (i.e., independent Claim 3 and its dependent Claims 4–7 and 10–11) in this Action.

### 1.   "a bottom horizontal section having a left side and a right side"[2]

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "a lowermost horizontal section of a base section having a left side and a right side" | ordinary meaning *or* "a section of the base that is generally horizontal when the cart is in a fully erect standing position, the section having a left side and a right side" |

DBest repeatedly argues that the term "bottom" is "well understood," "perfectly clear," and does not need to be construed.  (ECF No. 24 at 7–8.)  DBest's only complaint with GYT's proposed construction is that "[t]he patentee chose to use the word 'bottom' and not 'lowermost' and . . . requests this Court to decline to substitute the term 'lowermost' for the term 'bottom.'"  (*Id.* at 8–9.)  However, the issue is that DBest's proposed construction leaves out the "bottom" aspect of the "horizontal section" altogether.  Thus, it is DBest's construction that impermissibly changes the scope of the claims.

As explained in GYT's Opening Brief, an analysis of the meaning of the term "a bottom horizontal section having a left side and a right side" is best understood when read in conjunction with the rest of the language of Claim 3, which requires "a base section formed in a single piece of material," that includes a "***bottom*** horizontal section" that extends on either side to an "arcuate section which extends to" respective

---

[2] The Parties agree that the phrase "having a left side and a right side" is clear and, thus, does not need to be construed. (*See* ECF No. 34 at 8.)

"*elevated* . . . horizontal section[s]" ('700 Patent, Claim 3).[3] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("the claims themselves provide substantial guidance as to the meaning of particular claim terms"); (*see also* ECF No. 35 at 7–8).



('700 Patent, Fig. 1.)

DBest argues that "to substitute 'lowermost' for 'bottom'. . . would only server [sic] to potentially change the meaning of the claims when they are already clear and understandable."  (ECF No. 34 at 8.)  However, in an effort to expand the scope of the claim itself, DBest's proposed construction completely leaves out an essential portion of the term "***bottom*** horizontal section"—that it is a section at the ***bottom*** of the base section. Under DBest's construction, the section ***need only be horizontal***,

---

[3] Indeed, GYT believes that this term can be considered together with the second proposed term (*see* Section II.2 *infra*) since that term provides additional description for the "bottom horizontal section" referred to in this term.

which is not what is described by the claim language, the specification, or the prosecution history.

In contrast, GYT's intention behind substituting the word "lowermost" for "bottom" is not to change the meaning of the claims (as alleged by DBest). Rather the use of this superlative adjective is simply intended to clarify the spatial relationship between the "bottom horizontal section" and "elevated horizontal section[s]," as supported by both the intrinsic and extrinsic evidence.

Indeed, both Claim 3 and the specification support the conclusion that the term "a bottom horizontal section" is referring to a horizontal section of a base section that is *lower* than the other components (i.e., the *elevated* right and left horizontal sections) of the *same* base section. The specification of the '700 Patent uses parallel language to Claim 3:



"The cart 10 includes base section 20 made of one piece including a **bottom horizontal section 22** respectively extending on both its left side and right side, the left side extending to **arcuate section 24L** which in turn extends to **elevated horizontal section 24HL** and the right side extending to arcuate section 24R which in turn extends to elevated horizontal section 24 HR."

('700 Patent, 7:2–8 & Fig. 3.)

2.     **"the bottom horizontal section respectively extending on the left side to a left arcuate section which extends to an elevated left horizontal section, and extending on the right side to a right arcuate section which extends to an elevated right horizontal section"**

| GYT's Proposed Construction | DBest's Proposed Construction |
| --- | --- |
| "the lowermost horizontal section of the base section extending on the left side to a left arcuate section which extends upwards to a left horizontal section that is higher than the lowermost horizontal section, and extending on the right side to a right arcuate section which extends upwards to a right horizontal section that is higher than the lowermost horizontal section" | ordinary meaning *or* "a section of the base that is generally horizontal when the cart is in a fully erect standing position, the left side of the horizontal section transitions to a curved section that transitions to another section that is generally horizontal and elevated when the cart is in a fully erect standing position, the right side of the horizontal section transitions to a curved section that transitions to another section that is generally horizontal and elevated when the cart is in a fully erect standing position" |

Although the Parties offer differing constructions for the above term, at least one thing is clear—the "elevated horizontal section[s]" are meant to be elevated above the ground.  (*See* '700 Patent, 7:60–64 ("one innovation . . . is that the toe plate 80 rests on and affixed to the ***elevated horizontal sections*** 24HL and 24RL of the bottom horizontal section 22 so that the toe plate 80 is ***elevated above the ground***.") (cited in ECF No. 35 at 10); *see also* ECF No. 34 at 11 ("To this end, the '700 Patent teaches the 'an elevated left horizontal section' and 'an elevated right horizontal section' should be elevated off the ground . . . .").

DBest's remaining argument in support of its proposed construction is focused on the assertion that "[t]here is no requirement in Claim 3 that the 'elevated left horizontal section' or 'elevated right horizontal section' be elevated with respect to any other portion of the apparatus" (ECF No. 34 at 10).  However, as discussed above in Section II.1, GYT's proposed construction is proper, as the claim language and specification (in addition to extrinsic evidence) support the conclusion that the term

"a bottom horizontal section" is referring to a horizontal section of a base section that is *lower* than the other components (i.e., the *elevated* right and left horizontal sections) of the *same* base section.



DBest cannot point to any evidence—neither intrinsic nor extrinsic—to the contrary. Other than blindly asserting that neither the claim language nor specification require the "elevated horizontal section[s]" to be "elevated with respect to another portion of the cart," the only alleged support from the specification which DBest provides is that, in reference to Figure 7, "when the cart is in the *folded position*, the 'elevated left horizontal section' and 'elevated right horizontal section' are not 'higher than the lowermost horizontal section' . . . ." (ECF No. 34 at 11–12.) However, DBest's proposed construction "makes clear [that] 'the cart is in a *fully erect standing position*'," such that the evidence DBest provides does not even directly support its own construction. (ECF No. 34 at 12.)

The motivation behind DBest's proposed construction is clear—DBest is attempting to get around the fact that all of the asserted claims of the '700 Patent require that the base section be formed "in a single piece of material," whereas the accused products use a *two-piece* construction. (*See* ECF No. 35 at 3–4.) To do so, DBest ignores the claim language (and other intrinsic evidence) that requires that the base section be formed with a "*bottom*" horizontal section that transitions to "*elevated*" horizontal sections. DBest's attempt to write these limitations out of the claim should be rejected.

3.   **"a protective sheath surrounding a portion of the horizontal section"**

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "an integrated cover around the horizontal section" | "a protective cover surrounding a portion of the horizontal section" |

Tellingly, other than asserting that it "stays true to the original meaning of the claim" (ECF No. 24 at 13), DBest again fails to address any part of the claim language or specification that supports its proposed construction.

DBest's allegations that "GYT tries to import limitations into the claims that are not consistent with claim language" is readily shown to be incorrect.   GYT's proposed construction is based on the surrounding claim language and seeks to clarify that language.

In relevant part, Claim 3 requires a cart that includes

*a first lower handle section which is formed in one piece having a horizontal section* which extends from its left side to *a lower vertical left leg member* and which extends from its right side to *a lower vertical right leg member* . . . *a protective sheath surrounding a portion of the horizontal section;*

('700 Patent, Claim 3.)

In view of this plain language, the "protective sheath" must be included as part of (i.e., integrated with) the "first lower handle section *which is formed in one piece*." (*Id.*)   Accordingly, pursuant to the language of the claim, the lower handle section must incorporate each of a horizontal section, a lower vertical left leg member, a lower vertical right leg member, and a protective sheath in "*one piece*."   Contrary to DBest's argument (*see* ECF No. 34 at 13), GYT respectfully submits that the term "cover" incorporates the "protective" language in the claim term, but nonetheless would not object to a construction of this term as "a protective, integrated cover around the horizontal section" rather than simply "an integrated cover around the horizontal

section."

**4.    "toe plate which has a honeycomb pattern with a multiplicity of openings separated by horizontal solid sections and vertical solid sections"**

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "platform which has a pattern of spaced horizontal solid sections and vertical solid sections defining more than one open space through which something may be passed" | "a toe plate with a pattern of openings arranged in rows and columns with solid sections between the openings" |

DBest first argues that "GYT attempts to limit the term 'a toe plate' to a 'platform'" and that "in [some] instances, toe plates have structures that would be difficult to be characterized as a 'platform.'"  (ECF No. 34 at 14.)  GYT agrees that the term "toe plate" is "a term of art" (*id.*); however, GYT proposed a construction for this aspect of the term because the '700 Patent's use of the term "toe plate" differs from that ordinary meaning.  *See Phillips*, 415 F.3d at 1316 ("[T]he specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs.").  As shown in DBest's own exhibits,[4] the term "toe plate" typically means a generally flat, metal ledge at the base (or toe) of a hand truck or cart, which lays flat against the floor when the hand-truck or cart is upright and can slide under a load for purposes of lifting and/or moving the load.

---

[4] DBest's inclusion of these exhibits was improper, since these exhibits were never disclosed by DBest during claim construction discovery.

(ECF Nos. 34-6–34-9; *see also* ECF Nos. 34-10–34-13); *see also, e.g.*, *Bond St., Ltd. v. United States*, 33 C.I.T. 1247, 1249 (2009) ("A . . . hand truck . . . consist[s] of . . . a horizontal projecting edge or edges, or toe plate, perpendicular or angled to the vertical frame, at or near the lower section of the vertical frame. The projecting edge or edges, or toe plate, slides under a load for purposes of lifting and/or moving the load.") (quoting 69 FR 70122-02) (emphasis omitted).  Since the "toe plate" required by Claim 3 "rests on and is affixed to the elevated horizontal sections of the base member so that the toe plate is elevated above the horizontal base member" (and thus is elevated above the ground when the cart is upright), a construction of the term as a "platform" clarifies that, unlike a traditional toe plate, it does not touch the ground and assist in lifting the load.

DBest offers no explanation of what it understands "toe plate" to mean.  Instead, it asserts, without any evidentiary support, that it "is readily understood by those skilled in the art."  (ECF No. 34 at 14.)  Since the goal of claim construction is to determine how a person of skill in the art would have interpreted the claim terms *in view of* the intrinsic and extrinsic evidence, DBest's deficient analysis should be disregarded.

Next, DBest argues that GYT's construction of "honeycomb pattern with a multiplicity of openings . . ." limits the term to its "preferred embodiment."  (ECF No. 34 at 15.)  Not so.  As explained in GYT's Opening Brief (*see* ECF No. 35 at 13–15), GYT's proposed construction stays true to language of the claim, the

---

specification, and the prosecution history (i.e., the more reliable intrinsic evidence).

DBest hopes to rely on "less reliable" dictionary definitions of the word "opening" to fabricate an infringement claim against GYT. *Phillips*, 415 F.3d at 1317–18.  And, even DBest's reference to the terms "an open-ended bag" and "the open end of the bag" in the '700 Patent's specification (*see* ECF No. 34 at 15) only highlight the fact the term "opening" can mean different things in different contexts in the English language.  Obviously, when the specification explains that "the bag 1400 can have a multiplicity of pockets as well as a large opening leading to chamber 1500 and closed by top flap 1460," the term "opening" means an entryway into an enclosed space.  ('700 Patent, 9:58–60 (cited by ECF No. 34 at 15).)

However, when referring to the "toe plate," the '700 Patent's reference to "openings" can only mean "open space[s] through which something may be passed." That unasserted Claim 1 of the '700 Patent states that each leg member "has transverse openings extending through it" does not mean that the '700 Patent is indicating that it will always explain "when an opening is required to go all the way through a structure."  (ECF No. 34 at 16 (quoting '700 Patent, 10:60–64).)  The leg members are shown to be hollow tubes, and thus extra clarification as to whether the openings lead to the hollow enclosed space or extend all the way through is helpful in that context.  Such clarification is unnecessary in the context of the "honeycomb" toe plate.

DBest argues, without ***any*** evidentiary support, that "honeycomb patterns often retain an end plate on one or more of the sides of the honeycomb structure."  (ECF No. 34 at 16.)  Thus, DBest argues, "while in some embodiments, honeycomb patterns may have full through holes, the claim language is not limited to this particular embodiment of a honeycomb structure."  (*Id.* at 16–17.)  While apparently basing its argument on what a person of skill in the art would have known about "strength to weight ratio[s]," DBest does not even identify who it considers a person of skill in the

art.  Moreover, the ***only*** embodiment contemplated by the '700 Patent is the one shown in the figures.  This is not a case of GYT seeking to limit the claim to one embodiment, but of DBest seeking to expand its claims after-the-fact.

GYT does not believe that it is necessary to determine the level of skill in the art.  Here, "the ordinary meaning of claim language as understood by a person of skill in the art [is] readily apparent even to lay [people], and claim construction . . . involves little more than the application of the widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314.

And, as explained in GYT's Opening Brief, the specification supports its proposed construction requiring openings "through which something may be passed."  The specification explains that when in a "locked/folded" condition, "***the tab 174***," part of locking tab 170, is "***locked <u>in</u> one of the transverse members 84 of the toe plate 80***."  ('700 Patent, 3:41–43.)



FIG. 8b

This textual description and illustration in Figure 8b confirm that "tab 174" of the "attachment clip" (also referred to as "locking tab 170") must ***pass through*** the ***openings*** of the toe plate in order to lock onto the horizontal solid sections separating the openings, thereby locking the cart in a folded condition.  Similarly, dependent Claim 8 requires "a locking tab" with "a locking member at one end which grips a

transverse member of the toe plate so that when the cart is in the folded condition, the locking tab serves to securely lock the cart in a folded condition for safe storage." DBest even touts this "unique attachment clip affixed to a crossbar [that] enables the folded cart to be locked" as a "benefit over the prior art" (ECF No. 34 at 2), but ignores its significance in the claim construction analysis.

DBest also ignores the '700 Patent's prosecution history where the Examiner noted certain "prior art . . . considered pertinent to applicant's disclosure" which included "honeycomb platform[s]" (ECF No. 35-10 at GYT000185):



(ECF No. 35-11 at GYT000261; ECF No. 35-12 at GYT000274–276, 284; ECF No. 35-13 at GYT000288–289.)

The "honeycomb platforms" referred to in each of these cited references are illustrated as platforms with a pattern of open spaces through which an object may be passed—consistent with GYT's construction and supporting the conclusion that the term "openings" was understood by the Examiner and DBest at the time of the application as "more than one open space through which something may be passed."

*See Phillips*, 415 F.3d at 1317 (Fed. Cir. 2005) (The prosecution history "provides evidence of how the PTO and the inventor understood the patent.).

DBest's motivation for its proposed construction is clear; it seeks to cover the Accused Products' *solid* removeable platform by arguing that the support structure on the bottom of the platform somehow includes "openings":



(ECF No. 35-5 at Appendix A, pp. 8–9.)

DBest's contrived argument is not supported by the claim language, the figures, the rest of the specification, the prosecution history, or common sense, and GYT's proposed construction should be adopted.

5.    **"horizontal base member"**

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| Indefinite *or*, if not indefinite, "a lowermost horizontal section of a base section" | "the bottom horizontal section of the base section" |

A patent's claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). A claim term is invalid as indefinite if it fails to "particularly point[] out and distinctly claim[] the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b).

As explained in GYT's Opening Brief at pages 16–19, the term "*horizontal*

*base member*" does not appear in the specification of the '700 Patent, and appears for the first (and only) time in independent Claim 3 in this instance.  However, Claim 3 talks about "*the*" horizontal base member, as if the reader should know what portion of the structure is being referenced.  But because there is no earlier identification of "*the* horizontal base member," the reader has no way to know with reasonable certainty what portion of the claimed cart is being referred to by the term.  In other words, the term has no "antecedent basis" and must be rendered indefinite.

DBest argues that the claim term is not indefinite and that "its [sic] clear from the context of the claim that 'horizontal base member' is referring to 'the bottom horizontal section.'"  (ECF No. 34 at 17.)  DBest does not provide any explanation as to how a person of ordinary skill would be able to make that determination with any certainty.  Instead, DBest argues that the term is the result of a mere typographical error where "the phrase 'horizontal base section' became 'horizontal base member.'" (ECF No. 34 at 18.)  DBest argues that "[a]n obvious typographic error such as a substitution of the term 'member' for 'section' does not render a claim indefinite when it is clear from the context of the claim and the prosecution history does not suggest a different interpretation." (*Id*.)  However, DBest's argument makes no sense, because the term "horizontal base section" (purportedly the correct term) does not appear in the claim or anywhere in the specification of the '700 Patent.[5]  If DBest does not even know what the term "horizontal base member" is referring to, a person of skill in the art would have no way to know with reasonable certainty.

DBest's argument with respect to this term also undermines its arguments with respect to Disputed Term Nos. 1 and 2.  If "horizontal base member" was meant to

---

[5] Elsewhere, DBest argues that "the term 'member' was clearly substituted for 'section' and 'the horizontal base member' is referring to 'the <u>bottom</u> horizontal base section.'"  Under this argument, again, the term "the bottom horizontal base section" does not appear in the claim or anywhere in the specification of the '700 Patent.

refer to the "bottom horizontal section," as DBest seems to argue, DBest is further contradicting its argument that "[t]here is no requirement in Claim 3 that the 'elevated left horizontal section' or 'elevated right horizontal section' be elevated with respect to any other portion of the apparatus." (ECF No. 34 at 10.) This claim term requires that "the toe plate rests on and is affixed to the elevated horizontal sections of the base member so that the toe plate is *elevated above the horizontal base member* . . . ." ('700 Patent, Claim 3). If the term "horizontal base member" is substituted with "bottom horizontal section," the claim makes clear that the "bottom horizontal section" must be *lower* than the other components of the claimed cart (i.e., the *elevated* right and left horizontal sections on which the toe plate is affixed).



Therefore, if the Court does not determine that the term "the horizontal base member" is indefinite, GYT respectfully requests this Court construe the term as equivalent to "bottom horizontal section" discussed in Section IV.1 *supra*.

### 6.     "a horizontal mounting bar retaining rotational affixation members to rotatably retain the toe plate"

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "a horizontal mounting bar on which rotational affixation members, which connect to the toe plate in such a way as to allow the toe plate to rotate | ordinary meaning *or* "a bar that is generally horizontal when the cart is in a fully erect standing position wherein the bar is rotatably coupled to the toe |

| relative to the rotational affixation members, are attached" | plate with rotational affixation members" |
|---|---|

DBest's argument centers on its assertion that the term "retain" does not mean "attached" (as proposed by GYT).  (*See* ECF No. 34 at 19–20.)  DBest again relies on faulty logic.  DBest points to the specification's explanation that "the cart may have 'a shopping bag with a deep central chamber to retain groceries and other objects'" and argues that "[a]s anyone can appreciate, the groceries and other objects are not 'attached' to the shopping bag." (*Id.* at 20.)  However, this argument is inapt, since groceries and other items also cannot be said to be "coupled" to the shopping bag, which is the language that DBest proposes in place of "retain."  Moreover, it is clear that the same words can have different meanings in different contexts, which is the case here.

As shown by the passage of the specification quoted by DBest, when referring to the horizontal mounting bar and rotational affixation members, the word "retain" refers to a direct connection.  (*See, e.g.*, '700 Patent, 8:18–21 ("horizontal mounting bar 140 retains right rotational tube 90RRT which in turn is connected by a right connecting member 90RCM to right rotational affixation member 90RRM to further retain toe plate").  Any other interpretation would make no sense, since all of the components of the cart are otherwise indirectly connected to each other.

DBest's proposed construction seeks to impermissibly broaden the scope of the claims so that the rotational affixation members do not have to be retained by the horizontal mounting bar, only "rotatably coupled" no matter how many intermediary pieces come in between.  DBest's motivation was made clear by its Infringement Contentions, where DBest pointed to support members on the accused products that are neither retained by the horizontal mounting bar nor the removable platform, as

somehow satisfying this claim limitation:[6]



(ECF No. 35-5 at Appendix A, pp. 9–11.)  But the Accused Product shown above cannot meet this claim limitation—the claim requires **both** that the "horizontal mounting bar retain[] rotational affixation members to rotatably retain the toe plate" **and** "extend[] through aligned openings in the lower vertical left leg member and lower vertical right leg member." ('700 Patent, Claim 3.)  If the Accused Product has a "horizontal mounting bar" that "extends through" the leg members, that same connection with the leg members cannot meet the requirement that the horizontal mounting bar also "retain[] rotational affixation members." *See Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, the clear implication of the claim language is that those elements are distinct components of the patented invention.")

Yet, DBest is arguing with its proposed construction that these components be "rotatably coupled."  Either way, the meaning of "rotatably coupled" is indefinite and unsupported by the intrinsic and extrinsic evidence.  Accordingly, DBest's proposed construction should be rejected.

---

[6] DBest argued in the alternative that the limitation was met under the "doctrine of equivalents."

7. **"the horizontal mounting bar further rotatably supporting the left bumper wheel and the right bumper wheel in a manner where one-half of the given diameter of the left bumper wheel is aligned with the toe plate and one-half of the given diameter of the right bumper wheel is aligned with the toe plate"**

| GYT's Proposed Construction | DBest's Proposed Construction |
|---|---|
| "the horizontal mounting bar that further supports and permits the rotation of a single robust left wheel and a single robust right wheel in a way such that the center of the single robust left wheel is aligned with the back end of the toe plate, and the center of the single robust right wheel is aligned with the back end of the toe plate, no matter the angle at which the cart is rotated" | "the horizontal mounting bar further rotatably supports the left wheel and right wheel so that the center of each of the left wheel and the right wheel is aligned with the back of the toe plate" |

DBest's argument primarily focuses on GYT's proposed construction of the left and right "bumper wheels." DBest argues that "there is no support in the claims or the specification" for GYT's construction of "bumper wheel" as "single robust wheel." (ECF No. 34 at 22.)

DBest first contends that GYT's proposed "robust" modifier replacing the term "bumper" is "inappropriate" because the term "(beefy wheel)" was specifically deleted during prosecution and that "it would be wholly inappropriate to propose a construction that added a limited back into the claims"[7]. (ECF No. 34 at 22.) However, DBest's prior inclusion of "beefy wheel" in the claim sheds light on its understanding of the "bumper wheel" that it was modifying. Further, the specification describes that the "*large* rubber bumper wheels *(beefy wheels)... enable the cart to*

---

[7] During the prosecution of the '700 Patent, the phrase "(beefy wheel)" was objected to, and subsequently removed, "as being colloquial expression that does not impart structural limitations." (ECF No. 35-10 at GYT000179.)

*be rolled over* sand, stairs, curbs, stones and other ***uneven surfaces***." ('700 Patent, 10:10–12; *see also id.*, 3:39–41 ("[L]arge heavy wheels enable the cart to carry one hundred sixty (160) pounds of load when the shopping bag is removed."); *see also* ECF No. 34 at 2 (pointing to the purported "advantages and benefits over prior art" including that "the large wheels with rubber tires enable the cart to be rolled over uneven surfaces").)  Accordingly, using the word "robust" more accurately describes the size of the wheel, and is consistent with the specification's purposeful use of the phrase "beefy wheels" as a more commonly-known expression to describe "bumper wheels."

Second, DBest opposes GYT's proposed constructions of "the left bumper wheel" as "a ***single*** robust left wheel."  (ECF No. 34 at 22–23.)  Nowhere in the specification is there any contemplation that the invention would include more than one wheel on either end of the horizontal mounting bar—rather, the specification makes clear that the disclosure contemplates only two wheels, one on either end of the horizontal mounting bar.  ('700 Patent, 8:7–10 ("Referring to FIGS. 1, 2, 3 and 4, the present invention cart 10 has a ***pair*** of oppositely disposed large bumper wheels (beefy wheels) 110 and 120 with large rubber tires 122 and 132."); *id.* at 8:57–59 ("***[B]oth*** of the large rubber bumper wheels (beefy wheels) 122 and 132 which are four (4) inches in diameter folded against the lower handle section 30 . . .").)

Moreover, the claim language itself refers to "***the*** left bumper ***wheel***" and "***the*** right bumper ***wheel***," which necessarily signifies a single left bumper wheel and a single right bumper wheel.  As discussed in GYT's Opening Brief (*see* ECF No 35 at 25), it appears necessary to clarify that this term refers to a single left and right wheel because DBest seeks to argue for a broader construction to support its infringement contentions.  The accused "stair climber" cart shown in GYT's Opening Brief does not have a single left and right wheel "rotatably support[ed]" by the horizontal mounting bar, nor does it have a single left and right wheel with "one-half of [their]

given diameter[s] . . . [are] aligned with the toe plate."  The three-wheel combinations connected on each side of the product's axle cannot be said to have a "diameter":



(ECF No. 35-5 at Appendix A, pp. 9–11)

DBest's objection to the phrase "no matter the angle at which the cart is rotated" (*see* ECF No. 34 at 23) is also motivated by DBest's attempt to expand the scope of its claims to cover the stair climber cart shown above.  DBest acknowledges the purported novelty of the cart, providing the advantage that "***half the wheel is aligned with the toe plate instead of each wheel being behind the toe plate***, thereby allowing the cart to be more easily ***pulled*** with a heavy load."  (ECF No. 34 at 2.)  This claim limitation seeks to put "one-half of the given diameter" of the wheels in line with the toe plate—in other words, the center of the wheels is aligned with the back end of the toe plate, in the horizontal direction, so that the wheels are not behind the toe plate.

Necessarily, when the cart is pulled, the cart is rotated at some angle.  However, "no matter the angle at which the cart is rotated," "one-half of the given diameter of the left bumper wheel is aligned with the toe plate and one-half of the given diameter of the right bumper wheel is aligned with the toe plate."  Such principle is apparent from the symmetrical nature of a wheel, and is illustrated by a comparison of Figures 1 and 9.  It is also supported by the specification's explanation that, while the angle of the cart relative to the surface can range from 10 degrees to 60 degrees, "***one-half***

1    *of the diameter* 'D-1' of the large bumper wheels (beefy wheels) 122 and 132 *is*

2    *aligned with the toe plate* 80." ('700 Patent, 8:11–28 & Fig. 9.)



15         Finally, just as the meaning of "rotatably coupled" is uncertain and unsupported

16   by the intrinsic and extrinsic evidence, the term "rotatably supported" is not used in

17   the specification and is unclear.  GYT believes that its proposed construction of "the

18   horizontal mounting bar that further supports and permits the rotation of a single

19   robust left wheel and a single robust right wheel" clarifies the term and is consistent

20   with the claim language and the specification.  (*See, e.g.*, '700 Patent, 8:11–24 ("A

21   horizontal mounting bar 140 . . . extends into left bumper wheel (beefy wheel) 120.

22   Similarly, horizontal mounting bar 140 . . . extends into right bumper wheel (beefy

23   wheel) 130.").)

24         Accordingly, DBest's proposed construction should be rejected.

25   **III.   CONCLUSION**

26         For the foregoing reasons, GYT respectfully requests that the Court adopt its

27   proposed claim constructions and reject DBest's proposed constructions.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: March 28, 2022

TARTER KRINSKY & DROGIN LLP

By:   */s/ Mark Berkowitz*
Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
Austin J. Richardson (SBN 319807)
ajr@smlavvocati.com
SML AVVOCATI P.C.
888 Prospect Street, Suite 200
San Diego, CA 92037
Tel: 949.636.1391

Mark Berkowitz (*pro hac vice*)
mberkowitz@tarterkrinsky.com
TARTER KRINSKY & DROGIN LLP
1350 Broadway
New York, NY 10018
Tel: 212.216.8000

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2022, I electronically filed the above document(s) and attachments with the Clerk of Court using CM/ECF which will send electronic notification of such filing(s) to all registered counsel.

/s/ Mark Berkowitz

Mark Berkowitz