Ehab M. Samuel (SBN 228296)
esamuel@hdmnlaw.com
David A. Randall (SBN 156722)
dave@hdmnlaw.com
Sepehr Daghighian (SBN 239349)
sd@hdmnlaw.com
**HACKLER DAGHIGHIAN MARTINO & NOVAK P.C**.
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.:  (310) 887-1333
Fax:  (310) 887-1334

Attorneys for Defendant and Counterclaimant,
DBEST PRODUCTS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| **GUANGZHOU YUCHENG TRADING CO., LTD.**, a foreign limited liability company,<br><br>    Plaintiff / Counterclaim Defendant,<br>v.<br><br>**DBEST PRODUCTS, INC.**, a California corporation,<br><br>    Defendant / Counterclaim Plaintiff. | Case No.: 2:21-cv-04758-JVS-JDE<br><br>**DEFENDANT REPLY ISO MOTION TO AMEND COUNTERCLAIM**<br><br><br>JUDGE:  JAMES V. SELNA<br>HEARING DATE:  April 18, 2022<br>TIME:  1:30 p.m.<br>COURTROOM:  10C |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  DPI HAS GOOD CAUSE TO AMEND BECAUSE GUANGZHOU HAS
SIGNIFICANTLY ESCALATED ITS INFRINGEMENT IN 2022 ......................... 2

    A.   DPI did not Allege Trademark Infringement in its Original
    Counterclaim Because Guangzhou had Ceased Using the Mark and Promised
    not to Resume ................................................................................................. 2

    B.   DPI has Demonstrated Diligence in Seeking to Amend its Patent
    Infringement Claim to Allege Infringement on Walmart.com, Including
    Indirect Infringement .................................................................................... 3

    1. DPI Promptly Sought to Amend its Patent Infringement Claim To Allege
Infringing Listings Of The Accused Products On Walmart.com Upon
Discovering Them On That Website in February 2022 ....................................... 3

    2. DPI Promptly Sought to Amend its Claim for Patent Infringement to Allege
Indirect Infringement Upon Discovering the Accused Products on Walmart.com
Offered By Fictitious Entities ............................................................................... 4

    3. DPI Promptly Sought to Amend its Claim for Patent Infringement to Allege
Patent Marking and that Guangzhou had Actual Notice of DPI's Patent Rights .. 5

    C.   DPI's Moving Papers Expressly Demonstrated Good Cause Under Rule
    16(B) as well as Rule 15(A)(2) ...................................................................... 6

    D.   DPI Has No Bad Faith or Dilatory Motive ............................................. 8

    E.   The Amendment is Not Futile .................................................................. 9

    1. The Proposed Trademark and Unfair Competition Counts State Claims on
Which Relief Could Be Granted ............................................................................ 9

    2. The Proposed Indirect Infringement Claims State Claims on Which Relief
Could be Granted ................................................................................................. 12

    3. DPI has Adequately Alleged That Guangzhou had Notice of DPI's '700 Patent
and That the Accused Product Infringes it .......................................................... 13

III. CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITY

*Altair Logic LLC v. Asus Computer Int'l.*,
    18-cv-04985-HSG, 2019 WL 1117535 (N.D. Cal. Mar. 11, 2019)...................................14

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ......................................................................... 10, 11, 12

*Applied Info. Scis. Corp. v. eBay, Inc.*,
    511 F.3d 966 (9th Cir. 2007) ........................................................................................9

*Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)................................................................................5, 14

*Brookfield Commc'ns v. West Coast Entm't Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ......................................................................................9

*C.F. v. Capistrano Unified School District*,
    647 F. Supp. 2d 1187 (C.D. Cal. 2009) .......................................................................8

*CAO Lighting, Inc. v. Feit Electric Co., Inc.*,
    Case No. CV-20-04926-AB (PJW), 2020 WL 7786580 (C.D. Cal. Oct. 22, 2020)...........15

*Century 21 Real Estate Corp. v. Sandin*,
    846 F.2d 1175 (9th Cir. 1988) ...................................................................................11

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S.Ct. 1920 (2015)................................................................................................12

*Dita, Inc. v. Mendez*,
    2010 WL 5140855 (C.D. Cal. 2010).............................................................................9

*DivX, LLC v. Hulu, LLC*,
    No. LACV 21-1615 PSG (DFM) 2021 WL 4459368 (C.D. Cal. June 11, 2021) ......... 14, 15

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
    314 F.2d 149 (9th Cir. 1963) .....................................................................................11

*Fortinet, Inc. v. Forescout Techs., Inc.*,
    543 F.Supp.3d 814 (N.D. Cal. 2021) ..........................................................................13

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)...................................................................................13

*Indio Prods., Inc. v. Brybraden, Inc.*,
    Case No. cv 16-05767-BRO, 2016 WL 11744980 (C.D. Cal. 2016) ................................. 10

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 2012) ........................................................................................ 7

*KP Permanent Make-Up v. Lasting Impression I*,
    408 F.3d 596 (9th Cir. 2005) ........................................................................................ 9

*Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*,
    998 F. Supp. 2d 890 (C.D. Cal. 2014) ......................................................................... 10

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ...................................................................................... 9

*Lucent Techs. v. Johnson*,
    2000 WL 1604055 (C.D. Cal. 2000)............................................................................. 9

*M/V American Queen v. San Diego Marine Constr. Corp.*,
    708 F.2d 1483 (9th Cir. 1983) ...................................................................................... 8

*MyMedicalRecords, Inc. v. Jardogs, LLC*,
    1 F.Supp.3d 1020 (C.D. Cal. 2014) ............................................................................ 12

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018)................................................................................... 12

*Nasser v. Julius Samann, Ltd.*, No. 17-CV-863-BTM-MDD, 2020 WL 10457002 (S.D. Cal. Aug.
    13, 2020)
    ........................................................................................................................................ 1
    2

*New West Corp. v. NYM Co. of California, Inc.*,
    595 F.2d 1194 (9th Cir. 1979) .................................................................................... 11

*Pavo Solutions LLC v. Kingston Tech. Co., Inc.*,
    No. 8:14-cv-01352-JLS-KES, 2019 WL 4390573 (C.D. Cal. 2019)............................ 14

*Rearden LLC v. Crystal Dynamics, Inc.*,
    286 F. Supp.3d 1076 (N.D. Cal. 2018) ....................................................................... 12

*Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*,
    400 F.3d 910 (Fed. Cir. 2005)..................................................................................... 15

*Siemens v. Seagate Tech.*,
    No. SACV 06-788-JVS, 2008 WL 9028522 (C.D. Cal. Sept. 23, 2008) ................... 7, 15

*Software Research, Inc., v. Dynatrace LLC*,
    316 F. Supp. 3d 1112 (N.D. Cal. 2018) ...................................................................... 13

*SRI Int'l, Inc. v. Advanced Tech Labs., Inc.*,
   127 F.3d 1462 (Fed. Cir. 1997)........................................................................ 15

*Sushi Nozawa, LLC v. HRB Experience, LLC*,
   No. 2:19-cv-07653-ODW (SSx), 2020 WL 1529379 (C.D. Cal. 2020) .............. 10

*Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*,
   2008 WL 4723603 (E.D. Cal. 2008) ................................................................. 9

**Statutes**

35 U.S.C. § 287 .......................................................................................................... 14

35 U.S.C. § 271(b) ...................................................................................................... 12

35 U.S.C. § 287(a) .......................................................................................... 5, 13, 14, 15

I.   **INTRODUCTION**

Guangzhou baselessly contends that DPI "desperately seeks to delay" Guangzhou's declaratory judgment claim, but there is no evidence for that accusation.  DPI seeks to amend to allege Guangzhou's escalation of its infringing sales by offering the Accused Products on Walmart.com and using DPI's trademark. Since discovering that escalation, DPI has been diligent in seeking leave to amend. Nor are the proposed amendments futile. The proposed first amended counterclaim alleges facts supporting a reasonable inference of likelihood of confusion. DPI's claim for active inducement also suffices, at the pleading stage, because DPI has alleged—and Guangzhou has admitted—that Guangzhou was aware of the '700 patent as early as November 2019.  DPI has further alleged that Guangzhou supplies others with infringing carts and marketing materials and induces them to market the infringing products. The same allegation supports a reasonable inference that the Accused Products Guangzhou supplies to others to market have no substantial non-infringing uses: the shopping carts themselves infringe the '700 patent, which suffices to plead contributory infringement.  Finally, Guangzhou's argument that DPI fails to plead compliance with the marking statute is legally and factually unsupported, and impermissibly relies on attorney argument, outside of the pleadings, to argue that DPI cannot prove its own allegations.  For all the foregoing reasons, and those set forth in DPI's motion and below, the proposed amendment should be permitted.

## II.   DPI HAS GOOD CAUSE TO AMEND BECAUSE GUANGZHOU HAS SIGNIFICANTLY ESCALATED ITS INFRINGEMENT IN 2022

### A. DPI did not Allege Trademark Infringement in its Original Counterclaim Because Guangzhou had Ceased Using the Mark and Promised not to Resume

Guangzhou contends that DPI's trademark and unfair competition claims were ripe in 2018, when DPI complained to Amazon about Guangzhou's use of the TROLLEY DOLLY mark, but DPI "never pursued them." Opp. at 1:22-26 and 6:18-21. This argument ignores critical facts in DPI's motion papers. Specifically, when Amazon notified Guangzhou of DPI's 2018 allegations, Guangzhou sent a contrite email to DPI's Emanuel Gonzales admitting its infringement, apologizing, and promising never to use "TROLLEY DOLLY" in its product listings again. Declaration of Ehab M. Samuel, Dkt. 37-1, ¶ 7 and Ex. 4. Guangzhou claimed "we feel very sorry and we hope you can accept our apologies." It claimed ignorance of DPI's trademark rights when it used the mark: "We don't know this words will make any infringements before, and now we learn lessons from it." Going forward, it promised "we will strictly comply with the rules of the Amazon." *Id.* Guangzhou even claimed to take remedial measures: "We set up a new product info audit department, which it is regularly to check our products to make sure if there is an infringement of packaging, design, appearance text and etc." *Id*. In addition, Amazon had removed the infringing listings that prompted DPI's complaint. Under these circumstances, DPI's decision not to pursue trademark and related claims in its original counterclaim for patent infringement was reasonable because Guangzhou ceased its infringing activity at the time. However, that changed in February 2022, when DPI discovered the Accused Products on Walmart.com, offered for sale by

"Winkeep," with descriptions once again incorporating the TROLLEY DOLLY trademark. Samuel Decl., ¶¶ 10-12. Guangzhou cannot plausibly claim that DPI was not diligent between 2018 and fall of 2021, when Guangzhou appeared to have ceased its infringing use of DPI's trademark.

### B. DPI has Demonstrated Diligence in Seeking to Amend its Patent Infringement Claim to Allege Infringement on Walmart.com, Including Indirect Infringement

### 1. DPI Promptly Sought to Amend its Patent Infringement Claim To Allege Infringing Listings Of The Accused Products On Walmart.com Upon Discovering Them On That Website in February 2022

Guangzhou complains that DPI "only discusses its purported diligence in connection with its trademark claim." Opp. at 4:20-21. This is demonstrably untrue. DPI's opening brief states that "DPI first learned that the Accused Products were being sold on Walmart's website on or about February 15, 2022." Mot. at 9:6-7. The "Accused Products" are the subject of Guangzhou's Complaint for Declaratory Judgment and DPI's operative counterclaim for patent infringement. Complaint, ¶ 10; Counterclaim, ¶ 12. The proposed first amended counterclaim expands the patent infringement claim to include offers to sell the same Accused Products via Walmart (for which Guangzhou refuses to produce responsive documents by limiting its responses to its activities on Amazon) and to allege indirect infringement. DPI could not have moved by November 8, 2021, to amend its claims to allege offers to sell on Walmart.com because it first discovered the Accused Products on Walmart.com in February 2022.

## 2. DPI Promptly Sought to Amend its Claim for Patent Infringement to Allege Indirect Infringement Upon Discovering the Accused Products on Walmart.com Offered By Fictitious Entities

Guangzhou also complains that DPI has not explained how it was diligent in pursuing its new allegations of contributory and inducing infringement or why these new claims could not have been raised earlier. Opp. at 5:16-22. DPI could not have raised these claims earlier because it did not discover the Accused Products on Walmart.com until February 2022. The proposed amended counterclaim includes allegations that "Infringers such as Guangzhou typically operate under multiple seller storefront and payment accounts so that they can continue operation in spite of DPI's enforcement efforts" and that "On information and belief, Guangzhou is selling, directly or indirectly, its Accused Products under the fictitious storefront names ROYI, WINIBEST, WILBEST, LENBEST, BOVN, FLYFUN, TEEHON, WALM-EWAVINC and TOMSER." Samuel Decl., Ex. 1 at ¶¶ 31-32. When counsel for both parties met and conferred on this motion on March 7, 2022, Guangzhou's counsel represented that Guangzhou was not the entity offering the Accused Products for sale on the Walmart.com website. Samuel Decl. at ¶ 14. Within days of sending the draft amended counterclaim to Guangzhou's counsel, however, the listings for the Accused Products on Walmart.com were changed. *Id.* at ¶ 15 and Ex. 6. The words "TROLLEY DOLLY" no longer appeared and the Winkeep brand name had been changed to a different brand name, "Popolic." *Id.* The manufacturer's product numbers on the listings, however, are the same product numbers that appear on the listings found in February with the Winkeep brand name and unauthorized use of "TROLLEY DOLLY." Because it appears that Guangzhou

denies affiliation with these fictitious names and/or may be selling the Accused

Products to third parties, who then offer the Accused Products for sale on

Walmart.com (among others), DPI seeks to add the allegations of indirect

infringement to its counterclaim. These allegations were in the draft Amended

Complaint that DPI's counsel provided to Guangzhou's counsel on March 8, 2022,

so Guangzhou should have learned of them over a week before the motion was filed

on March 18.  Samuel Decl., ¶ 14 and Ex. 5.  Thus, there was no undue delay and

DPI has demonstrated diligence in seeking to amend its counterclaim.

### 3. DPI Promptly Sought to Amend its Claim for Patent Infringement to Allege Patent Marking and that Guangzhou had Actual Notice of DPI's Patent Rights

Under 35 U.S.C. § 287(a), a patentee who makes or sells a patented article

must mark his articles or notify infringers of the patent in order to recover damages.

*See, e.g., Arctic Cat, Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350,

1365-66 (Fed. Cir. 2017).  DPI seeks to add allegations that it complies with patent

marking requirements and gave Guangzhou actual notice of infringement on

November 14, 2019.  Dkt. No. 37-2, ¶ 6.  As explained in the moving papers,

"Guangzhou also raised the issue of notice of infringement during discovery, so the

proposed first amended counterclaim alleges patent marking to affirmatively address

this issue."  Samuel Decl., Dkt. No. 37-1 at ¶ 21. On March 1, 2022, Guangzhou

supplemented its responses to certain interrogatories in DPI's First Set of

Interrogatories.  Supplemental Declaration of Ehab Samuel ("Supp. Samuel Decl."),

¶ 3 and Ex. 7  Interrogatory No. 4 asks:  "Identify when Plaintiff first became aware

of the '700 Patent, including the circumstances surrounding such awareness and the

Persons involved." *Id.* Guangzhou's initial response was that it first learned of the '700 Patent "no earlier than April 15, 2021" after GYT received a notice from Amazon" and identified the circumstances and persons involved. *Id.* The March 1, 2022, supplemental response, however, moved that date back about 16 months. "Subject to and without waiving the foregoing General and Specific Objections, GYT responds that GYT first learned of the '700 Patent about November 14, 2019, after GYT received a notice from Amazon stating that certain products were accused of infringement of the '700 Patent. (See GYT 000420)." *Id.* This March 1, 2022 supplemental response prompted DPI to add a paragraph to the proposed first amended counterclaim concerning notice, including both its compliance with the marking provision and the date Guangzhou has now admitted it first learned of the '700 patent and that it was accused of infringement. Thus, there was no undue delay. Equally important, Guangzhou overlooks that the patent marking is also applicable to the newly raised claims of indirect patent infringement. Finally, based on these facts, Guangzhou does not and cannot dispute that it suffers any prejudice from such amendment.

### C. DPI's Moving Papers Expressly Demonstrated Good Cause Under Rule 16(B) as well as Rule 15(A)(2)

Tellingly, Guangzhou's opposition leads with a technicality: that the Court should deny DPI's motion for leave to amend, for failure to explicitly request to modify the scheduling order. Opp. at 4:4-15. This argument should be rejected. First, DPI's motion for leave to amend is a *de facto* request to modify the date provided in the scheduling order for amendments. The motion states that "a request

1    for leave after the entry of a Rule 16 scheduling order is governed primarily by Rule

2    16(b)" and argues that there is good cause for the proposed amendment under Rule

3    16(b). Mot. at 7:6-21 (citing Rule 16(b) and *Johnson*). For the avoidance of doubt,

4    DPI requests that the Court modify the scheduling order with respect to the last day

5    to amend the pleadings and a last day to file infringement contentions for the alleged

6    indirect infringement. Second, the discussion of the Rule 16 in *Johnson* is dicta,

7    because the result would have been the same if *Johnson*'s motion "were treated as a

8    de facto motion to amend the scheduling order" rather than to join a party. *Johnson*

9    *v. Mammoth Recreations, Inc.*, 975 F.2d 604 609 (9th Cir. 2012).  Indeed, the

10   discussion in *Johnson* begins "[t]his case turns on a single, narrow question:  when

11   and under what circumstances may a party join an additional defendant once the

12   district court has entered an order limiting the time for joinder." *Id.* at 608.  In

13   contrast, DPI seeks to add new allegations against the party, Guangzhou, that filed

14   this suit. More importantly, the *Johnson* court affirmed the district court's denial of

15   leave because "[i]n short, Johnson failed to establish "good cause" for modifying the

16   pretrial scheduling order.") *Id.* at 610.  Johnson was on notice that he had sued the

17   wrong entity and the defendant had even offered to stipulate to substitution of the

18   "proper defendant." *Id.* at 609.  This Court has recognized that "when modification

19   would cause no substantial injury to the opponent and no more than slight

20   inconvenience to the court, modification should typically be allowed." *Siemens v.*

21   *Seagate Tech.*, No. SACV 06-788-JVS, 2008 WL 9028522, at * 17 (C.D. Cal. Sept.

22   23, 2008). And in this Court's *Capistrano* decision, citing *Johnson*'s "strict

23   requirement," the Court also stated that the defendants failed to "address Federal

24

Rule of Civil Procedure 16(b)," yet the Court still denied the motion *without prejudice*. *C.F. v. Capistrano Unified School District*,  647 F. Supp. 2d 1187, 1191 (C.D. Cal. 2009) (denying a defendants' motion to amend after the Court had already granted summary judgment regarding liability on the merits).

### D. DPI Has No Bad Faith or Dilatory Motive

Guangzhou contends that DPI seeks to delay this action because if Guangzhou obtains a declaratory judgment, Amazon will reinstate its product listings and may take "remedial action" against DPI.  Opp. at 7:3-9.  This is purely speculation.  Indeed, Guangzhou provoked this motion when it decided to sell the Accused Products on Walmart.com after they were delisted on Amazon.

 Because DPI is not adding new Accused Products or asserting different patent claims, it is not seeking to delay the claim construction process or trial.  DPI has already served preliminary infringement contentions that compare the asserted patent claims, element by element, to the Accused Products—the same Accused Products that are now being offered for sale on Walmart.com.  Supp. Samuel Decl., ¶ 3.  All DPI needs to do, if the Court grants leave to amend, is amend these contentions to add the bases for indirect infringement.

Nor are the trademark and related claims likely to delay the proceedings.  The proposed first amended counterclaim contains allegations about new listings of the Accused Products on Walmart.com.  The Accused Products are alleged to infringe the '700 patent for the same reasons disclosed in DPI's preliminary infringement contentions for Guangzhou's infringement on Amazon.  The same new listings on Walmart.com also used DPI's TROLLEY DOLLY mark, which is the basis for the trademark and related claims. These common allegations distinguish this motion from that denied in *M/V American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983).

Guangzhou asserts that discovery on the trademark issues could not realistically be completed in less than three months, but it does not explain what discovery it plans to take that could not be completed. DPI has attached the registration certificates for its trademarks to the proposed FAC.  Guangzhou already admitted in 2018 that DPI owns trademark registrations for  TROLLEY DOLLY and that using the mark to describe the Accused Products infringes those rights. DPI sees no reason discovery cannot be completed as provided in the Scheduling Order.

### E.  The Amendment is Not Futile

#### 1.  The Proposed Trademark and Unfair Competition Counts State Claims on Which Relief Could Be Granted

To prove a claim of trademark infringement requires (1) ownership of a valid, protectable trademark, and (2) that the alleged infringer's use of the mark is likely to cause confusion. *Brookfield Commc'ns v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999); *KP Permanent Make-Up v. Lasting Impression I*, 408 F.3d 596, 602 (9th Cir. 2005). Registration constitutes prima facie evidence of the registrant's exclusive right to use the mark on the goods and services specified in the registration.  *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007).  Likelihood of confusion is primarily a factual determination. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir. 1985).  Many courts have held that the likelihood of confusion is not appropriate to determine at the motion to dismiss stage.  *See*, *e.g.*, *Lucent Techs. v. Johnson*, 2000 WL 1604055, at *2 (C.D. Cal. 2000) ("inquiry is a fact-intensive evaluation ill-suited for disposition on a motion to dismiss); *Dita, Inc. v. Mendez*, 2010 WL 5140855, at *5 (C.D. Cal. 2010); *Visual Changes Skin Care Int'l, Inc. v. Neways, Inc.*, 2008 WL 4723603, at *4 (E.D. Cal. 2008).

Likelihood of confusion in this circuit turns on the *Sleekcraft* test, but a party does not need to allege facts on each of the eight factors in order to state a claim.

*See Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 898 (C.D. Cal. 2014) (plaintiff alleged likelihood of confusion by alleging that the parties' marks were similar, used on the same kinds of goods and services, and marketed and advertised in the same channels); *Indio Prods., Inc. v. Brybraden, Inc.*, Case No. cv 16-05767-BRO, 2016 WL 11744980, * 7 and n.4 (C.D. Cal. 2016) (complaint identified the products defendant was allegedly infringing using versions of plaintiff's trademarks); *Sushi Nozawa, LLC v. HRB Experience, LLC*, No. 2:19-cv-07653-ODW (SSx), 2020 WL 1529379, * 4  (C.D. Cal. 2020) ("as the allegedly infringing use occurs in the same channels of trade and geographic location and appears to be relatively similar, Sushi Nozawa has adequately pled that the use is likely to cause customer confusion").

Here, DPI's proposed first amended counterclaim alleges that DPI owns common law rights and trademark registrations for the TROLLEY DOLLY trademark, has used it for portable carts in commerce since at least June 14, 2014, that the mark has become incontestable, and that DPI has spent a substantial amount of time and money building up, advertising and promoting its TROLLEY DOLLY brand and goodwill. Dkt. No. 37-2, ¶¶ 7-9, 33, 43 and Exs. B and C.  These allegations go to factor one: strength of the mark.  *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979).  It alleges that the Accused Products are, like DPI's products, shopping carts.  Dkt. No. 37-2, ¶¶ 17, 23, 24.  This allegation supports factor two: proximity of the goods; factor six:  type of goods and the degree of care likely to be exercised by the purchaser; and factor 8: likelihood of expansion.  *See Sleekcraft*, 599 F.2d at 350 (proximity), 353 (type of goods and purchaser care), 354 (likelihood of expansion, because "when goods are closely related, any expansion is likely to result in direct competition").  It alleges that the Accused Products were sold under Guangzhou's "Winkeep" brand on Walmart.com and that the descriptions of the Accused Products incorporated the Trolley Dolly trademark.

Dkt. No. 37-2, at ¶¶ 23, 24  This supports factor three: similarity of the marks, because the marks are identical in sight, sound, and meaning. *See Sleekcraft*, 599 F.2d at 350-52.  It also supports an inference that Guangzhou copied the mark from DPI's descriptions of its own shopping carts, which is relevant to factor seven: the accused infringer's intent in selecting the mark. *Id.* at 354 ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose:  that is, that the public will be deceived.") (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157-58 (9th Cir. 1963)). It alleges that the Accused Products are promoted in the same marketing channels as DPI's products.  Dkt. 37-2, ¶ 18. This allegation supports factor five: marketing channels.  *See Sleekcraft*, 599 F.2d at 353 ("Convergent marketing channels increase the likelihood of confusion.").  It includes images of the product listings showing the use of the Trolley Dolly marks.  Dkt. No. 37-2, at ¶¶ 23, 24.  Thus, DPI's allegations are more than sufficient under Ninth Circuit law to support an inference of likelihood of confusion and state a claim for trademark infringement.

For the same reasons, the proposed pleadings state claims on which relief could be granted for unfair competition under state and federal law. "The Courts have uniformly held that common law and statutory trade-mark infringement claims are merely specific aspects of unfair competition." *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194, 1201 (9th Cir. 1979).  "The 'ultimate test' for unfair competition is exactly the same as for trademark infringement:  whether the public is likely to deceived or confused by the similarity of the marks." *Century 21 Real Estate Corp. v. Sandin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

Guangzhou relies on a case in which a *pro se* plaintiff failed on his fourth attempt to plead trademark infringement because he failed to plead likelihood of confusion.  *Nasser v. Julius Samann, Ltd.*, No. 17-CV-863-BTM-MDD, 2020 WL

10457002, at *2 (S.D. Cal. Aug. 13, 2020). The court granted the final motion to dismiss because the fourth amended complaint still did not allege facts supporting *any* of the *Sleekcraft* factors, not because it failed to allege facts in support of *all eight* of them. Nothing in *Nasser* suggests that a pleading must allege facts that map to all eight *Sleekcraft* factors in order to plead likelihood of confusion. This argument lacks merit. The motion for leave should be granted.

### 2. The Proposed Indirect Infringement Claims State Claims on Which Relief Could be Granted

Under § 271(b) of the Patent Act, "[w]however actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Liability under Section 271(b) can only attach if the [infringer] knew of the patent and knew as well that the "induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926-28 (2015). The Federal Circuit has found it enough to assert that an infringer, among other things, "provid[ed] instructions, support, and technical assistance" to another in committing infringement. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018); *see also Rearden LLC v. Crystal Dynamics, Inc.*, 286 F. Supp.3d 1076, 1080-81 (N.D. Cal. 2018) (allegations that infringer had performed a due diligence on patentee's intellectual property and then "assisted or directed" in infringement were sufficient to state a claim for active inducement). Here, the proposed FAC includes the allegation that Guangzhou had actual knowledge of the patent as early as November 14, 2019. This allegation is based on Guangzhou's own admission in its supplemental interrogatory response, which stated that "GYT first learned of the '700 Patent about November 14, 2019, after GYT received a notice from Amazon stating that certain products were accused of infringement of the '700 Patent." Knowledge of an asserted patent may be established based on a previous complaint. *MyMedicalRecords, Inc. v. Jardogs, LLC,* 1 F.Supp.3d 1020, 1022, 1025 (C.D. Cal. 2014). And DPI's proposed first amended counterclaim alleges inducement: "On information and belief, Guangzhou

operates under multiple fictitious storefront names, often using the same product images of the Accused Products, marketing materials, and advertising tactics and/or *supplies others with infringing carts and marketing materials and induces them to market the infringing products*." Dkt. No. 37-2, at ¶ 25 (emphasis supplied).

"In order to state a claim for contributory infringement, a complaint must further plead (in addition to knowledge) that the accused product "has no substantial non-infringing uses, and is known … to be especially made or especially adapted for use in an infringement of the patents-in-suit." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).  But a plaintiff need not prove that the accused products have no substantial non-infringing uses at the pleading stage. *Id.* at 1342.  Here, DPI's theory is that Guangzhou, if it is not directly responsible for the listings of the Accused Products on Amazon and/or Walmart, it sells the Accused Products to a third party that sells them on Amazon and/or Walmart.  DPI does not allege sale of a component because it is the shopping cart *itself* that is sold by the direct infringer, if the direct infringer selling on these online retailers is not Guangzhou.  District courts in this Circuit have denied a motion to dismiss under Rule 12(b)(6) where the patentee alleges that the product "when used in its normal and intended usage" infringes the asserted patent. *See Software Research, Inc., v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1136 (N.D. Cal. 2018) ("The FAC sufficiently suggests that there are no other substantial uses" of the infringing product "that do not infringe."); *Fortinet, Inc. v. Forescout Techs., Inc.*, 543 F.Supp.3d 814, 840 (N.D. Cal. 2021) ("the allegations that Forescout's products are "programmed… to infringe"… are sufficient "to allow an inference that the components… have no substantial non-infringing uses."  In sum, DPI has stated a claim for contributory infringement.

### 3. DPI has Adequately Alleged That Guangzhou had Notice of DPI's '700 Patent and That the Accused Product Infringes it

DPI agrees that it must plead compliance with 35 U.S.C. § 287(a) to properly

plead pre-suit damages for patent infringement. DPI seeks leave to amend its counterclaim to allege: "At all relevant times hereto, DPI has complied with the patent marking requirements of 35 U.S.C. § 287 by marking products sold under the patent with 'US Patent No. 9,233,700' or other marking identifying the '700 Patent. In addition, DPI complied with the requirements of 35 U.S.C. § 287 by giving Guangzhou actual notice of infringement on or about November 14, 2019." Dkt. No. 37-2 at ¶ 6. Guangzhou argues that "discovery has shown that dbest has licensed the '700 patent but there is no evidence that the licensed carts are marked with the patent number as required by § 287(a)." Opp. at 12:6-7. But it cites no rule or case that requires the patentee to allege, at the pleading stage, that its licensees mark their licensed products. On the contrary, another district court denied a similar motion, concluding that while the patentee's allegations relating to marking were "rather conclusory," that did not make the pleading deficient as a matter of law, where there was nothing in the complaint to suggest that a licensee practiced the asserted patent. *Altair Logic LLC v. Asus Computer Int'l.*, No. 18-cv-04985-HSG, 2019 WL 1117535, at * 3 (N.D. Cal. Mar. 11, 2019). "[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat*, 876 F.3d at 1368; *see also Pavo Solutions LLC v. Kingston Tech. Co., Inc.*, No. 8:14-cv-01352-JLS-KES, 2019 WL 4390573, at *2-3 (C.D. Cal. 2019) (denying defendant's motion for summary judgment that the patentee failed to mark products practicing the patent). The *DivX* case on which Guangzhou relies does not require a patentee to plead that its licensees mark their licensed products. Guangzhou quotes the court's recitation of the moving party's argument, not the court's holding, which does not address licensees at all. *DivX, LLC v. Hulu, LLC*, No. LACV 21-1615 PSG (DFM) 2021 WL 4459368, at *5 (C.D. Cal. June 11, 2021) ("and thus DivX is required to plead compliance with § 287(a)…DivX has not done so and does not

attempt to plead otherwise). And the court granted DivX leave to amend, exactly the relief that DPI seeks in this motion, "because DivX may be able to cure the identified pleading deficiencies with respect to §287(a)…". *Id.*, 2021 WL 4459368, at *6.

Guangzhou's argues that the proposed pleading "provides no allegations as to the form or content of the notice." Again, it cites no authority for the suggestion that a patentee must do so. "The actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement." *SRI Int'l, Inc. v. Advanced Tech Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *see also CAO Lighting, Inc. v. Feit Electric Co., Inc.*, Case No. CV-20-04926-AB (PJW), 2020 WL 7786580, at * 4 (C.D. Cal. Oct. 22, 2020) (denying defendant's motion to dismiss patentee's allegation of compliance with § 287).

Finally, the Federal Circuit and this Court have concluded that pleading that infringement has been willful and with full knowledge of the asserted patent is sufficient to plead compliance with the marking statute. *Sentry Protection Prods., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 918 (Fed. Cir. 2005); *Siemens v. Seagate*, 2008 WL 9028552, at * 16. Here, the proposed amended counterclaim pleads that infringement was willful and with knowledge of the patent. Dkt. No. 37-2 at ¶ 37. The proposed amendment to allege compliance with § 287(a) is not futile and should be permitted.

## III.   CONCLUSION

For the reasons discussed above, DPI respectfully requests that its motion for leave to amend its counterclaim be granted and that the scheduling order be modified to change the last day to amend the pleadings to one week after the Court rules on this motion.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

DATED:  April 4, 2022

HACKLER DAGHIGHIAN MARTINO & NOVAK, P.C.

By:  /s/ David A. Randall
Ehab M. Samuel (CA SBN 228296)
David A. Randall (CA SBN 156722)

*Attorneys for Defendant and Counterclaimant*
DBEST PRODUCTS, INC.