Ehab M. Samuel (SBN 228296)
esamuel@hdmnlaw.com
David A. Randall (SBN 156722)
dave@hdmnlaw.com
Sepehr Daghighian (SBN 239349)
sd@hdmnlaw.com
**HACKLER DAGHIGHIAN MARTINO & NOVAK P.C**.
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.:  (310) 887-1333
Fax:  (310) 887-1334

Attorneys for Defendant and Counterclaimant,
DBEST PRODUCTS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **GUANGZHOU YUCHENG TRADING CO., LTD.**, a foreign limited liability company,<br><br>        Plaintiff / Counterclaim Defendant,<br>v.<br><br>**DBEST PRODUCTS, INC.**, a California corporation,<br><br>        Defendant / Counterclaim Plaintiff. | Case No.: 2:21-cv-04758-JVS-JDE<br><br>**DEFENDANT DBEST PRODUCTS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO REQUIRE PLAINTIFF TO POST A SECURITY BOND PURSUANT TO CALIFORNIA CODE SECTION 1030**<br><br>JUDGE:  JAMES V. SELNA<br>HEARING DATE: January 9, 2023<br>TIME:  1:30 p.m.<br>COURTROOM:  10C |

## I. INTRODUCTION

GYT's opposition does nothing to reassure dbest or the Court that GYT will voluntarily pay any attorneys' fees or other judgment awarded to dbest after the trial. Dkt. 143. GYT does not deny that this Court has the authority to impose a bond requirement under California Code of Civil Procedure Section 1030. Instead, it ignores the standards found in Section 1030 and the cases applying it to argue that dbest has not shown a basis for its request. First, GYT contends that dbest has failed to prove GYT's claims were frivolous. Second, GYT contends dbest has failed to show any real risk that it will be able to recover costs and attorney's fees because dbest has not shown that GYT has no attachable assets. Third, GYT asserts that dbest has failed to prove its entitlement to attorney's fees, before the case has even been tried. Fourth, GYT argues that dbest has failed to prove the amount of its attorney's fees and costs, and as such, dbest has not proven the amount of the bond sought is reasonable.

Contrary to GYT's contentions, dbest is not required to prove any of these facts to warrant a bond. dbest has shown that GYT is an out-of-state plaintiff or foreign corporation, that dbest has more than a reasonable likelihood of success on the merits, and that attorney's fees and costs are available under the Patent Act. It has also shown the GYT has ignored the Court's rules and orders throughout the litigation and that this case may, therefore, be found exceptional, warranting an award of fees and costs. Thus, when balancing these relevant factors, dbest submits that GYT should be ordered to post a bond.

## II.     ARGUMENT

### A.     dbest Need Not Establish That GYT's Clams are Frivolous to Show a Reasonable Probability of Obtaining a Judgment in its Favor

GYT argues that dbest's motion should be denied because it failed to show that GYT's claims were frivolous. Dkt. 143 at 3. While frivolousness and vexatiousness are factors that bear on the Court's analysis, there is no requirement that dbest must demonstrate frivolousness as a prerequisite to a cost bond. *Ahmad Hamad Algosaibi & Bros. Co. v. Stewart*, No. CV-02596 JGB (Ex), 2013 WL 12122305, at *8 (C.D. Cal. Apr. 30, 2013). Indeed, even GYT's own case law emphasizes that frivolousness and vexatiousness are not required for imposition of a bond in a patent case. *Gabriel Techs. Corp. v. Qualcomm, Inc.*, No. 08 CV 1992 MMA (POR), 2010 WL 3718848, *5 at n. 5 (S.D. Cal. Sept. 20, 2010).

The plain language of Section 1030 states that a defendant moving to impose a cost bond must only show that it has a "reasonable possibility" of obtaining a judgment in its favor. Cal. Civ. Proc. Code § 1030(b); *Gabriel Techs.*, 2010 WL 3718848, *2; *AF Holdings LLC v. Navasca,* No. C-12-2396 EMC, 2013 WL 450383, *1 (N.D. Cal. Feb. 5, 2013) ("§ 1030 requires only a 'reasonable possibility' that the defendant will prevail" and this "standard is relatively low").

Here, dbest has shown more than a "reasonable possibility" of obtaining a judgment in its favor because the Court has already ruled in dbest's favor by finding Claim 3 of the '700 Patent infringed and not invalid. Dkt. 133. As dbest explained in the [proposed] final pretrial conference order, to streamline the case for trial and in view of the Court's finding of infringement, dbest has elected to only pursue damages for direct patent infringement of Claim 3, including those associated with willful infringement of the '700 Patent. Dkt. 134-1 at 7. Thus, the issue that remains

for trial is not whether dbest can obtain a judgment in its favor because the Court has already made that determination. Rather, it is the amount of damages that GYT owes dbest. Yet, GYT has no damages expert or report to rebut dbest's damages expert, who opined that dbest is entitled to $463,000 in patent damages. Dkt. 132-1, ¶ 4. Based on these facts, dbest has more than satisfied the "reasonable possibility" standard to impose a security bond. At best, all that GYT can hope to accomplish is (1) try and limit the damages the jury awards, (2) try and mitigate the likelihood the court will increase the damages awarded up to three times under 35 U.S.C. § 284, and (3) try and prevent an award of attorneys' fees under 35 U.S.C. § 285.

Even if a determination of GYT's frivolousness were required, which it is not, GYT does not deny its failures to comply with the Court's rules and orders or its frivolous arguments in recent filings all weigh in favor of requiring a bond. *Ahmad*, 2013 WL 12122305, at *8. GYT's argument that dbest's counterclaims for infringement somehow show that its claims are not frivolous simply does not make sense.  Even if GYT believed, in good faith, when it filed this action, that its infringing products did not infringe the '700 Patent, it was unreasonable to maintain its noninfringement positions after the Court issued its claim construction order, particularly given that GYT had its expert adopt GYT's claim construction positions that the Court rejected during the claim construction phase, and which conflicted with the Court's claim construction positions.  GYT also had its expert advance invalidity positions that were never disclosed in its invalidity contentions and refused to drop an anticipation defense when it had not advanced any anticipatory reference.  All of these tactics were frivolous and needlessly wasted the Court's and dbest's time and resources.

GYT continues to make frivolous arguments to this Court, most recently

asking the Court to permit testimony by a Chinese citizen in China by contemporaneous transmission to the courtroom. Dkt. 140. GYT knows that Chinese law forbids testimony by a Chinese citizen in China for United States litigation because it relied on that Chinese law to delay producing Alley Ye for deposition after designating her as its 30(b)(6) witness.  Dkt. 144-1, ¶¶ 4-7 and Ex. A. Despite taking advantage of the prohibition in China only five months ago, it did not disclose this material information to the Court in its motion, asking the Court to allow contemporaneous testimony by Alley Ye in China, which would be illegal in China without China's express permission. *Id.* at 9.

Finally, GYT's argument that dbest must establish that the case is "exceptional" for an imposition of a bond to secure an award of cost and attorney's fees in a patent case is without merit. In *Gabriel Techs,*, a patent case cited in GYT's opposition brief (Dkt. 143 at 2), the Court granted in part defendants' motion for bond, stating "[a]t this stage, the Court does not decide whether this case will ultimately be deemed 'exceptional' within the meaning of 35 U.S.C. § 285." 2010 WL 3718848, *14. Thus, while GYT has advanced (and continues to advance) frivolous positions before the Court that would ultimately support a determination that this case is exceptional, and that attorneys' fees are warranted at the conclusion of the litigation, dbest need not establish, at this stage, that the case is "exceptional" for the imposition of a bond.

### B.    dbest Need Not Prove GYT Lacks Assets to Pay an Award of Fees and Costs in Order to Show That a Bond is Warranted

GYT argues that the Court should deny dbest's motion because dbest has not made a particularized showing that there is any risk of being unable to recover reasonable attorney's fees and costs. Dkt. 143 at 5:1-17 (citing *Susilo v. Wells Fargo Bank, N.A,* CV 11-1814 CAS (PJWx), 2012 U.S. Dist. LEXIS 166638, at * 4

(C.D. Cal. Nov. 19, 2012)). The circumstances in *Susilo*, however, were different from those here in several material respects. First, in denying the motion to post an undertaking, the *Susilo* court found that there was no showing that the plaintiff lacked assets to pay the defendants' purported $225,000 in costs and attorney's fees because plaintiff had roughly $250,000 in a single Citibank account. *Susilo*, 2012 U.S. Dist. LEXIS 166638, *4. Furthermore, the *Susilo* court found that "plaintiff has a reasonable chance of succeeding on the merits."[1] *Id.* at *5.

Here, neither party has identified attachable assets that GYT has in California. GYT argues that dbest is fully aware that GYT has inventory stored in the United States, implying that dbest is somehow concealing attachable property from the Court. But dbest mentioned the inventory and its undisclosed location in the introduction of its opening brief. Dkt. 132 at 1:10-12. During discovery, GYT's Rule 30(b)(6) witness, Alley Ye, testified that about 5000 units of the accused shopping carts are stored at its logistics company's facility somewhere on the West Coast or in the Western United States. Supplemental Declaration of Ehab M. Samuel In Support of dbest's Motion for an Order Requiring GYT to Post a Security Bond ("Samuel Suppl. Decl."), ¶ 3 and Ex. 1.

dbest repeatedly asked GYT's counsel to provide the name and address of the location where this inventory is stored. *Id.*, ¶¶ 7-13 and Exs. 2 & 4. GYT's counsel finally identified the logistics company, Shenzhen Tongda International Logistics Agency Co., Ltd., but represented that "GYT has no knowledge of the specific

---

[1] Here, the total value of GYT's inventory is about $150,000 to about $250,000, which is much less than the $848,348.53 that dbest has asserted as its reasonable attorney's fees and costs. Samuel Decl., ¶ 6. And, unlike the plaintiff in *Susilo*, GYT lost on all the summary judgment motions and has no likelihood of success on the merits. Dkt. 133.

1  location of the inventory" and that GYT did not agree to "supplement with any other
2  documents or information." *Id.,* ¶ 9 & Ex. 3.  GYT's position that it does not know
3  the location of its inventory is not credible. GYT is withholding the information
4  from dbest to prevent the inventory from being attached.  In any case, taking GYT's
5  representation at face value, if it does not know if it has attachable assets in
6  California, then the purpose of Section 1030 remains relevant and weighs in dbest's
7  favor. *See Gabriel Techs.*, 2010 WL 3718848, *4 (purpose of section 1030 remained
8  relevant and weighed in defendant's favor where the plaintiff's CEO did not identify
   any assets in the forum).

      Finally, GYT apparently declines to submit evidence as to whether it has
sufficient attachable assets to pay an award, should it be required to pay attorney's
fees and costs.  Dkt. 143 at 5:18-19. Instead, it urges that dbest has the burden to
prove GYT lacks assets in the United States to pay an award.  GYT's position is
legally unsupported. "Courts in the Ninth Circuit have considered three factors in
striking a delicate balance 'to avoid depriving a plaintiff of access to the courts by a
security bond requirement.'" *Ahmad*, 2013 WL 12122305, at *8. But the Court's
balancing of the factors depends on evidence presented by the parties. And while
courts may also consider the absence of attachable assets within the district, like the
plaintiff in *Gabriel Techs.*, GYT has failed to identify any attachable assets in
California. The absence of any evidence that GYT has attachable assets in California
weighs in favor of requiring GYT to post a bond.

      Finally, courts may also consider the conduct of the parties.  *Ahmad*, 2013
WL 12122305, at *8. Here, GYT's demonstrated history of noncompliance with the
Court's rules and orders, combined with the lack of evidence of attachable assets
(and purported inability to disclose the location of its inventory), is sufficient to

show a real risk of dbest being unable to recover costs and attorney's fees to which it may be entitled. These facts favor granting the motion.

### C. dbest Need Only Demonstrate a Reasonable Probability of Judgment in its Favor to Show that a Bond is Warranted, Not Prove its Entitlement to Fees

GYT cites the "American Rule" that parties ordinarily must pay their own attorney's fees, but recognizes that a party can recover attorney's fees provided for by a statute. GYT seems to argue, however, that dbest must prove this case is exceptional under 35 U.S.C. § 284-285 or under 15 U.S.C. § 1117(a) now in order for the Court to require GYT to post security. Mot. at 6-7. But, as explained above, GYT's position lacks merit. dbest does not need to establish, at this stage, that the case is "exceptional" for the Court to impose a bond. *See supra* § A.

Indeed, while a court normally considers whether a patent case is exceptional after a trial, Section 1030 provides that a defendant may move the court for an order requiring a bond "at any time," but presumably before the conclusion of the action. Here, the parties contemplate a trial on the issues of damages and willfulness. As GYT admits, courts determine whether a case is exceptional "considering the totality of the circumstances." Dkt. 143 at 6:21-24. A court cannot know and consider the totality of the circumstances until the final stage of the case, typically after a trial and at any rate after all the other issues have been decided. *See Gabriel Techs.*, 2010 WL 3718848, *14 ("At this stage, the Court does not decide whether this case will ultimately be deemed "exceptional" within the meaning of 35 U.S.C. § 285."). GYT cannot point to any authority for its position that a defendant must prove its entitlement to attorney's fees before the Court can order the plaintiff to post security for a potential award.

GYT claims that "dbest is not entitled to attorney's fees" because it has failed to show this case is exceptional, but it offers no reason why this case is not likely to be found exceptional at the appropriate time, particularly given how many times GYT has ignored the Court's rules and orders and that it continues to take frivolous positions. *See Gabriel Techs.*, 2010 WL 37188348, at *14 (noting "strong likelihood" defendants would prove the case was exceptional and attorney's fees would be awarded given plaintiff's lack of evidence).

Finally, while noting the "American rule" on attorney fees, GYT ignores that as the prevailing party, dbest is presumptively entitled to costs under Federal Rule of Civil Procedure 54(d). *Id.* at *10 (with "respect to costs, Federal Rule of Civil Procedure 54 "creates a presumption" in favor of awarding costs to the prevailing party") citing *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003). Having established that Claim 3 of the '700 Patent is infringed and not invalid, dbest is presumptively entitled to costs. Fed. R. Civ. P. 54(d)(1). The costs already incurred are $42,770.33 and projected costs through trial will be an additional $40,000. Dkt. 132-1 at ¶¶ 5-6.

### D. GYT Offers No Position on the Reasonable Extent of the Security to be Posted from its Perspective

The Court is tasked to balance the factors, including the reasonable extent of the security to be posted from the defendant's perspective and from the plaintiff's perspective. *Ahmad*, 213 WL 12122305, *8. Here, however, the only perspective GYT offers is to challenge dbest's basis for the proposed bond in amount of $848,348.83 consisting of its current and estimated future attorney's fees and costs supported by its attorney's declaration. GYT offers no evidence or even argument as to why these amounts are unreasonable in light of the complexity of this action, multiplied by its own unreasonable positions. dbest will submit evidence of its fees

and costs incurred to date for the Court's *in camera* review. Samuel Suppl. Decl., ¶ 14. These fees and costs are reasonable given the needs of this case, including conducting reasonable discovery, briefing claim construction of disputed claim terms, hiring experts, and briefing dispositive motions and *Daubert* motions.

Notably, as of the filing date of dbest's motion for the security bond, dbest had incurred $415,578.20 in attorney's fees and $42,770.33 in costs. Dkt. 132-1 at ¶ 5. Further, dbest estimates that it will incur an additional $350,000 in attorney fees and $40,000 in costs through trial. *Id.* at ¶ 6. Courts routinely rely on the American Intellectual Property Law Association's (AIPLA) Report of the Economic Survey as evidence supporting reasonableness of attorney fees. *See, e.g., Gabriel Techs.*, 2010 WL 3718848, *15 at n.9 (citing AIPLA's 2009 report). dbest's fees and costs are reasonable when compared to the litigation cost data from the AIPLA Report of the Economic Survey (2021).

An annotated excerpt from the AIPLA Report of the Economic Survey is provided below:

**Litigation-Patent Infringement, All Varieties <$1M Inclusive of discovery, motions, and claim construction (000s) by Location (Q45Ab)**

| | Total | Boston CMSA | NYC CMSA | Phila CMSA | Wash, DC CMSA | Other East | Metro South-east | Other South-east | Chicago CMSA | Minne.-St. Paul PMSA | Other Central | Texas | L.A. CMSA | S.F. CMSA | Other West |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Number of Respondents | 45 | 2 | 5 | 1 | 3 | 3 | 6 | 2 | 1 | 1 | 8 | 4 | 3 | 2 | 4 |
| Mean (Average) | $369 | ISD | $520 | ISD | $542 | $317 | $283 | ISD | ISD | ISD | $344 | $250 | $400 | ISD | $413 |
| 10th Percentile 10% | $100 | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD |
| First Quartile 25% | $175 | ISD | $350 | ISD | ISD | ISD | $193 | ISD | ISD | ISD | $213 | $150 | ISD | ISD | $113 |
| Median (Midpoint) | $300 | ISD | $550 | ISD | $500 | $300 | $288 | ISD | ISD | ISD | $300 | $175 | $400 | ISD | $275 |
| Third Quartile 75% | $500 | ISD | $675 | ISD | ISD | ISD | $388 | ISD | ISD | ISD | $475 | $425 | ISD | ISD | $850 |
| 90th Percentile 90% | $690 | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD |

**Litigation-Patent Infringement, All Varieties <$1M Inclusive of pre-trial, trial, post-trial, and appeal (when applicable) (000s) by Location (Q45Ac)**

| | Total | Boston CMSA | NYC CMSA | Phila CMSA | Wash, DC CMSA | Other East | Metro South-east | Other South-east | Chicago CMSA | Minne.-St. Paul PMSA | Other Central | Texas | L.A. CMSA | S.F. CMSA | Other West |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Number of Respondents | 46 | 2 | 5 | 1 | 4 | 3 | 6 | 3 | 2 | 1 | 7 | 4 | 3 | 2 | 3 |
| Mean (Average) | $771 | ISD | $896 | ISD | $1,138 | $967 | $553 | $992 | ISD | ISD | $600 | $438 | $900 | ISD | $1,400 |
| 10th Percentile 10% | $193 | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD |
| First Quartile 25% | $338 | ISD | $565 | ISD | $250 | ISD | $380 | ISD | ISD | ISD | $350 | $200 | ISD | ISD | ISD |
| Median (Midpoint) | $675 | ISD | $850 | ISD | $725 | $750 | $650 | $300 | ISD | ISD | $700 | $275 | $900 | ISD | $900 |
| Third Quartile 75% | $900 | ISD | $1,250 | ISD | $2,438 | ISD | $750 | ISD | ISD | ISD | $750 | $838 | ISD | ISD | ISD |
| 90th Percentile 90% | $1,650 | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD | ISD |

Samuel Suppl. Decl., Ex. 5 at I-144.

As shown above, for patent infringement cases where less than a $1 million is at stake, the average cost inclusive of discovery, motions, and claim construction is $400,000 in Los Angeles, and $413,000 for other western regions. *Id.* For patent infringement cases where less than a $1 million is at stake, the average cost inclusive of pre-trial, trial, post-trial, and appeal is $900,000 in Los Angeles, and $1.4 million for other western regions.

Thus, dbest's incurred and projected fees are reasonable when compared to average cost of patent litigation in Los Angeles or other western regions. Under the circumstances of the case and based on the evidence presented, a bond for $848,348.53 would be reasonable. *See Kourtis v. Cameron*, 358 Fed. Appx. 863 (9th Cir. 2009) (affirming lower court's imposition of a bond because plaintiff is out of state, defendants showed "reasonable possibility" they would prevail, and the bond was reasonable).

### III. CONCLUSION

For the reasons discussed above, dbest has shown good cause for the Court to require GYT to post a security bond in the amount of $458,348.33 to ensure that dbest can enforce an award of attorney's fees and costs.

DATED:  December 26, 2022

HACKLER DAGHIGHIAN MARTINO & NOVAK, P.C.

By:  /s/ Ehab M. Samuel
Ehab M. Samuel (CA SBN 228296)
David A. Randall (CA SBN 156722)

*Attorneys for Defendant and Counterclaimant*
DBEST PRODUCTS, INC.