Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
David A. Randall (SBN 156722)
dave@orbitip.com
Sepehr Daghighian (SBN 239349)
sd@orbitip.com
**ORBIT IP, LLP**
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.: (310) 887-1333
Fax: (310) 887-1334

Attorneys for Defendant and Counterclaimant,
DBEST PRODUCTS, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DBEST PRODUCTS, INC.**, a California corporation,<br><br>        Plaintiff,<br><br>**v.**<br><br>**GUANGZHOU YUCHENG TRADING CO., LTD.**, a foreign limited liability company,<br><br>        Defendant. | Case No.: 2:21-cv-04758-JVS-JDE<br><br>**NOTICE OF MOTION AND MOTION FOR: (1) EXCEPTIONAL CASE FINDING AND ATTORNEY'S FEES, (2) AN AWARD OF TREBLE DAMAGES, (3) A PERMANENT INJUNCTION, AND (4) INTEREST AND COSTS**<br><br> JUDGE:  JAMES V. SELNA<br> DATE: April 17, 2023<br> TIME: 1:30 p.m.<br> COURTROOM: 10C |

**TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 17, 2023, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 10C of the Ronald Reagan United States Courthouse, located at 411 West Fourth Street, Santa Ana, California, plaintiff dBest products, Inc. ("dbest"), will and does move the Court for an order: (i) awarding treble damages under 35 U.S.C. § 284; (ii) finding this case exceptional and awarding reasonable attorneys' fees under 35 U.S.C. § 285; (iii) awarding costs and interest under 35 U.S.C. § 284; (iv) sanctioning GYT's attorneys for multiplying the litigation under 28 U.S.C. § 1927, Rule 11, and the Court's inherent power to impose sanctions for abusive litigation practices, and (v) imposing a permanent injunction under 35 U.S.C. § 283.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the declaration of Ehab M. Samuel, the evidence presented at trial, and the argument as may be presented to this Court.  Counsel for the parties have met and conferred as required by L.R. 7-3 on March 15, 2022, but were unable to reach a resolution eliminating the need for this motion.

DATED:  March 16, 2023

Respectfully submitted,

**ORBIT IP, LLP**

By:  /s/ Ehab M. Samuel
Ehab M. Samuel (CA SBN 228296)
David A. Randall (CA SBN 156722)

Attorneys for Defendant and
Counterclaimant
DBEST PRODUCTS INC.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT .................................................................................. 3

   A.   The Court Should Award Treble Damages Because, Considering the Totality of the Circumstances, GYT's Conduct was Egregious ........................... 3

      1.   Deliberate copying ........................................................... 4

      2.   Good faith belief patent was invalid or not infringed ................ 4

      3.   GYT's Behavior as a Party to the Litigation ......................... 5

      4.   GYT's Size and Financial Condition .................................... 7

      5.   Closeness of the Case ....................................................... 7

      6.   Duration of GYT's Conduct ............................................. 7

      7.   Remedial Action ............................................................ 8

      8.   GYT's Motivation for Harm ............................................ 8

      9.   Attempts to Conceal Misconduct ....................................... 9

      10.   Overall Weighing of the Factors ....................................... 9

   B.   The Court Should Award dbest Attorney's Fees Because the Case is Exceptional Based on GYT's Unreasonable Conduct ........................... 9

      1.   This Case is Exceptional Warranting Attorney's Fees ............... 9

      2.   The Attorney's Fees Are Reasonable Because the Hours Spent and Hourly Rates Are Reasonable ....................................... 12

      a)   dbest's Staffing And Hourly Rates Are Reasonable ............... 13

      b)   The Number of Hours Expended was Reasonable ................... 13

      c)   The Total Requested Fees Are Reasonable ......................... 14

   C.   The Court Should Award dbest Interest and Costs ....................... 14

   D.   The Court Should Hold GYT's Attorneys Liable for Attorney Fees and Costs Incurred As a Direct Result of Their Frivolous Positions ................ 15

1.  The Court Has the Authority to Require GYT's Attorneys To Pay A Portion of dbest's Attorney's Fees .................................................. 15

2.  GYT's Attorneys Should be Liable for dbest's Attorney's Fees Because They Raised Frivolous Arguments that Multiplied the Proceedings and Fees 16

E.  The Court Should Grant dbest's Request for a Permanent Injunction ........ 22

1.  dbest is Irreparably Harmed by GYT's Continuing Infringement ........... 23

2.  There is No Adequate Remedy at Law...................................................... 24

3.  The Balance of Hardships Favors a Permanent Injunction ..................... 25

4.  The Public Interest Favors Issuing a Permanent Injunction.................... 25

III. CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Andrx Pharmas., Inc.*, 452 Fed. Cir. 1331 (Fed. Cir. 2006)............. 25

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003 (Fed. Cir. 2012)........................................................................................................... 5

*Barnard v. Theobald*, 721 F.3d 1069 (9th Cir.2013)............................................... 15

*Blum v. Stetson*, 465 U.S. 886 (1984) .................................................................... 12

*Caudle v. Bristow Optical Co. Inc.*, 224 F.3d 1014 (9th Cir. 2000)......................... 12

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)...................................................... 16

*Deckers Outdoor Corp. v. Australian Leather Pty.*, No. 16 CV 3676, 2020 WL 4723980 (N.D.Ill. Jul. 13, 2020) .......................................................................... 4

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013) ..... 25

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ........................................... 23

*Estate of Blas v. Winkler,* 792 F.2d 858 (9th Cir. 1986).......................................... 16

*Estate of Blue v. County of Los Angeles*, 120 F.3d 982 (9th Cir. 1997)................... 15

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ......................................................... 16

*G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096 (9th Cir. 2003)............................ 16

*Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229 (Fed. Cir. 2017).......... 3

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016) ........................................ 3

*iLor, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011)........................................ 5

*In re Girardi,* 611 F.3d 1027 (9th Cir. 2010) .......................................................... 16

*In re Keegan Mgmt. Co*., 78 F.3d 431 (9th Cir. 1996) ............................................ 16

*Informatica Corp. v. Business Objects Data Integration, Inc.*, 489 F. Supp. 2d 1075 (N.D. Cal. 2007) ............................................................................................. 3

*Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed. Cir. 1996)............................................... 10

-iii-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES,
COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

*Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F.Supp.3d 1089 (C.D. Cal. 2016)........... 14

*Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006).................. 5

*Love v. Mail on Sunday*, No. CV05-7798 ABC(PJWX), 2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) ........................................................................................ 12

*Markman v. Westview Instr., Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ............................... 3

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996)..................................... 12

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008)................................ 14

*Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795 (Fed. Cir. 1988) .............. 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) ........... 10

*Quanex lg Sys. v. Panjin cll Insulating Glass Material Co.*, No. CV 15-07138 JVS (RAOx), U.S. Dist. LEXIS 204681 (C.D. Cal. April 7, 2016) ............................. 25

*Quesada v. Thomason*, 850 F.2d 537 (9th Cir. 1988).............................................. 12

*Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) ................................. 3, 5, 9

*Rite-Hite Corp. v. Kelley Corp., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995) ...................... 25

*Spitz Techs. Corp. v. Nobel Biocare United States LLC*, No. SACV 17-00660 JVS, 2018 U.S. Dist. LEXIS 225488 (C.D. Cal. June 7, 2018)................................... 11

*SRI Int'l. Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462 (Fed. Cir. 1997) .......... 4

*Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 741 (Fed. Cir. 1999).......................... 11

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958 (Fed. Cir. 2000) .... 10

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990) ................. 15

*Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1995)........................................................ 16

*Trustees of Boston Univ. v. Everlight Elecs. Co.*, Civ. A No. 12-11935-PBS, 2019 U.S. Dist. LEXIS 215555 (D. Mass. Dec. 16, 2019) ........................................ 12

*U.S. v. $1,026.781.61 in Funds from Florida Capital Bank*, CV 09-04381-MLG, 2013 WL 781926 (C.D. Cal. Mar. 1, 2013) ...................................................... 13

## STATUTES

28 U.S.C. § 1927 .................................................................................ii, 2, 15, 16

35 U.S.C. § 283 ............................................................................................ii, 22

35 U.S.C. § 284 ......................................................................................ii, 3, 14

## RULES

Rule 11 ....................................................................................................ii, 2, 15, 16

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES,
COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

–v–

## I.     INTRODUCTION

Following the Court's claim construction order, this case should have settled or, at a minimum, GYT should have taken judgement if it desired to appeal one or more of the Court's claim constructions. Given that the court rejected every one of GYT's proposed claim constructions, the Court admonished the parties to "have some discussions" and "take a serious look at this." Hr'g Tr. 4:10-14, Apr. 25, 2022. But instead, GYT and its counsel ignored the Court's claim construction order and again advanced its rejected claim construction positions in its expert reports and its summary judgment briefing on both infringement and invalidity issues. As a result, GYT burdened dbest and the Court with motions for summary judgment, *Daubert* motions, and oppositions to dbest's motions, that were replete with frivolous arguments. The Court admonished GYT a second time in its Order Regarding Motions for Summary Judgment and Related Motions. Dkt. 133 at 45. But undeterred, GYT and its counsel pushed forward to trial.

The jury awarded lost profits on both the Amazon.com sales and the Walmart.com sales (which GYT denied making) and found that GYT's infringement was willful. Dkt. 191. The Court has discretion to enhance the jury's damages award and should do so because the circumstances here are so egregious. Indeed, throughout the case, GYT has litigated untenable claims in an unreasonable manner. Not only did GYT advance rejected claim construction positions, but it also engaged in gamesmanship when it intentionally waited until dbest had filed its *Daubert* motion to serve its rebuttal report to deprive dbest of an opportunity to challenge the report. Dkt. 133 at 20-21. And after vexatiously pursing its untenable claims for

about two years, it abandoned those claims when it defied the Court's order to post a security bond, resulting in entry of judgment against GYT on its complaint. *See* Dkt. 183. GYT also never timely disclosed its intent to rely on an advice-of-counsel defense as the Patent Local Rules require, but even after the Court had excluded this defense, GYT's counsel referred to it in his opening statement and GYT's witness, Ms. Alley Ye, started to testify about it on direct examination. Dkt. 182 at 4-5; Trial Tr., 4:22-51, Feb. 28, 2023; Trial Tr., 46:17-48:4, Mar. 2, 2023. Based on these and other facts set forth below, the Court should treble the damages, find this case exceptional, and award dbest its reasonable attorney's fees. As the prevailing party, dbest is also entitled to its costs, as well as prejudgment and post-judgment interest. dbest also requests the Court to enter a permanent injunction to prevent future infringement of dbest's patent rights.

But as the Court has recognized, GYT waged a significant litigation against dbest, and dbest could be left with a judgment on which it cannot collect. Dkt. 171 at 6. dbest therefore requests the Court to hold GYT's attorneys liable because they were complicit and played an active role in multiplying the litigation. The Court has inherent authority under 28 U.S.C. § 1927, under Rule 11 of Civil Procedure, and/or under its inherent power to levy sanctions in response to abusive litigation practices. GYT's attorneys were responsible for GYT's litigation tactics in this action. It would be fundamentally unfair for dbest to incur attorney fees and costs resulting from GYT's attorneys' frivolous positions yet be unable to collect them from GYT or its attorneys. Holding GYT's attorneys liable for a portion of dbest's fees and

-2-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

costs would both compensate dbest for such expenses and deter similar conduct by attorneys practicing in this and other U.S. courts.

## II.    ARGUMENT

### A.    The Court Should Award Treble Damages Because, Considering the Totality of the Circumstances, GYT's Conduct was Egregious

The jury found that GYT willfully infringed dbest's '700 patent. Dkt. 191. When a claimant prevails on an infringement claim, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Section 284 "provid[es] that punitive or increased damages could be recovered in a case of willful or bad-faith infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 97 (2016) (internal quotations omitted). "An award of enhanced damages for infringement, as well as the extent of the enhancement, is committed to the discretion of the trial court." *Informatica Corp. v. Business Objects Data Integration, Inc.*, 489 F. Supp. 2d 1075, 1084 (N.D. Cal. 2007) (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992), abrogated on other grounds by *Markman v. Westview Instr., Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995) (*en banc*)).

After a finding of willfulness, the primary concern in determining whether and to what extent to increase damages is the egregiousness of the infringer's conduct based on the totality of the circumstances. *Read*, 970 F.2d at 826.  When deciding how much to award in enhanced damages, district courts often apply the non-exclusive factors articulated in *Read. Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1244 (Fed. Cir. 2017). The *Read* factors are: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of

the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether the defendant attempted to conceal its misconduct. *Id.* at 827-28. As set forth below, the *Read* factors weigh in favor of trebling damages.

### 1.      Deliberate copying

While GYT may have not participated in the manufacture or design of the shopping carts, it deliberately copied many of dbest's creative marketing presentation of the patented products. Mr. Richard Elden testified that GYT copied dbest's marketing messages, format, style, motto, and presentation. Trial Tr., 34:4-44:10, Mar. 1, 2023. At trial, he provided side-by-side examples demonstrating such blatant copying. *Id.* He also testified that GYT used dbest's TROLLEY DOLLY mark without his authorization. *Id.*, 48:11-50:7; *see also Deckers Outdoor Corp. v. Australian Leather Pty.*, No. 16 CV 3676, 2020 WL 4723980 (N.D.Ill. Jul. 13, 2020) (inferring willfulness of patent infringement from evidence that infringer also copied the patentee's trademark and labels). Thus, this factor weighs in favor of treble damages.

### 2.      Good faith belief patent was invalid or not infringed

Prudent behavior generally requires obtaining competent legal advice before commencing the infringing activity. *SRI Int'l. Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997) (affirming treble damages award). GYT offered no evidence that it obtained competent legal advice before it began selling its

-4-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

shopping carts.  Before trial, GYT attempted to rely on advice of counsel, based on a letter from David Silver, but, as the Court recognized, the "letter is not from GYT's lawyer to GYT but from GYT's lawyer to dbest.  And it does not indicate whether such advice was provided to GYT at the time GYT sought out legal advice on its patent infringement defense." Dkt. 182 at 5.  The second *Read* factor weighs in favor of trebling damages.

### 3.    GYT's Behavior as a Party to the Litigation

The Court should determine, "based on the record ultimately made in the infringement proceedings" whether a reasonable litigant could realistically expect its defenses to succeed." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 682 F.3d 1003, 1008 (Fed. Cir. 2012) (quoting *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011)). Here, GYT failed to apply the Court's claim constructions in its summary judgment briefs and instead adopted those that the Court has already rejected to support its noninfringement and invalidity positions. Dkt. 133 at 42. An expert opinion that is contrary to or ignores a court's claim construction is inadmissible.  *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict the court's construction to a jury."). No reasonable litigant could realistically have expected those noninfringement or invalidity arguments to succeed.

GYT also made invalidity arguments in its expert invalidity report and briefs that were not disclosed in its invalidity contentions under the Patent Local Rules. Dkt. 133 at 15-18. And those were not GYT's only meritless defenses. For its

invalidity defense based on lack of written description, GYT applied the wrong legal standard, comparing the specification to the infringing products rather than the claims. Dkt. 133 at 38. GYT argued that the asserted claims were invalid for indefiniteness and for lack of enablement, but it presented no evidence and relied only on unsupported attorney arguments. *Id.* at 39-40.

GYT's behavior was egregious when it intentionally waited until dbest had filed its *Daubert* motion to serve GYT's rebuttal expert report. Dkt. 133 at 20-21. Such gamesmanship deprived dbest of an opportunity to challenge the report under the Court's case schedule. *Id.* GYT's behavior was also egregious when it defied the Court's order for posting a security bond, resulting in dismissal of its complaint. Dkts. 171 and 183.

 Moreover, GYT's frivolous and untimely advice-of-counsel defense was untenable. GYT consulted a U.S. counsel, Mr. Silver, not to advise GYT of its rights and obligations with respect to the '700 Patent, but to persuade dbest to withdraw its infringement complaints to Amazon. The Court properly excluded Mr. Silver's letter and any testimony about the advice-of-counsel defense. Dkt. 182 at 5. Lastly, GYT maintained its limitation of damages affirmative defense based on 35 U.S.C. §§ 286, 287, and/or 288 for trial. But it presented no evidence in support of this defense at trial, and the Court properly granted dbest's oral motion for judgment as a matter of law on this defense.

In sum, based on the record, a reasonable litigant would realistically have expected GYT's defenses to fail (and not succeed). Thus, this factor weighs in favor of trebling damages.

### 4.     GYT's Size and Financial Condition

On January 19, 2023, Alley Ye contended that GYT has a balance of $18,204.52 in its account. Dkt. 157, ¶ 3. Yet, GYT has provided no explanation on how it continued to fund this litigation through trial with its purported limited resources. Nor does it explain how it continues to pay for its ongoing operations and employees. This factor is neutral or weighs against trebling damages.

### 5.     Closeness of the Case

This case was not close. The Court granted summary judgment against GYT on both infringement and validity, struck its untimely rebuttal expert report, excluded many of its expert opinions, and denied its motion for summary judgment and motion to exclude the testimony of dbest's experts. Dkt. 133. The Court also rejected all of GYT's proposed claim constructions. Dkt. 58. Finally, the jury only took about an hour and twenty minutes to deliberate, which further demonstrates that the damages and willfulness issues were not close. Accordingly, this factor weighs in favor of trebling damages.

### 6.     Duration of GYT's Conduct

GYT began offering its infringing products in August 2019 and was notified of infringing the '700 Patent in November 2019. Dkt. 175 at 31; Trial Tr., 10:20-11:4, Mar. 2, 2023. After its listings were removed from Amazon, GYT continued selling the infringing products on Walmart.com. Trial Tr., 14:6-8, Mar. 1, 2023. GYT then continued to display its infringing products throughout its flagship website to drive sales of its other products, but then removed all of the images of the infringing carts days before trial (Trial Tr., 69:20-73:17, Mar. 1, 2023) except one. During trial, GYT's witness, Ms. Alley Ye, had no credible explanation for why

-7-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

GYT was still displaying an infringing product on its home flagship website on Amazon despite stipulating to infringement in this case. Trial Tr., 24:4-27-9, Mar. 2, 2023. Such display of the infringing product constitutes an offer for sale. It has been two weeks since the jury's verdict of willful infringement and GYT has yet to take down the infringing product from its flagship store. *See* Declaration of Ehab M. Samuel submitted herewith ("Samuel Decl."), Ex. K at 9. Thus, infringement continued for over three years and is still ongoing. This factor weighs in favor of trebling damages.

### 7.     Remedial Action

This factor asks whether the infringer voluntarily ceased manufacturing or selling the infringing product during the litigation. 970 F.2d at 827. Here, there is no evidence that GYT ever voluntarily ceased selling the infringing carts out of respect for dbest's patent rights. GYT's failure to take any remedial action weighs in favor of trebling damages.

### 8.     GYT's Motivation for Harm

Mr. Elden testified that GYT deliberately copied many of dbest's creative marketing presentation of the patented products. Notably, he testified that GYT copied dbest's marketing messages, format, style, motto, and presentation. Trial Tr., 34:4-44:10, Mar. 1, 2023. GYT's copying demonstrates that GYT's motivation was to harm dbest by channeling sales away from dbest, and, as the jury ultimately found, to make dbest's profits its own. *Id.*, 40:13-16 & 86:4-14. Therefore, this factor weighs in favor of trebling damages.

### 9. Attempts to Conceal Misconduct

dbest presented evidence that GYT used fictitious storefront names on Amazon.com and on Walmart.com to hide its continuing sales of the Accused Products.  The jury awarded dbest lost profits of $463,136.00, the amount based on both GYT's sales on Amazon.com and the sales on Walmart.com that GYT denied making. Dkt. 191. Therefore, the jury found that GYT made all the sales of the infringing products reflected on the documents produced by Walmart, even though those sales were made under the names of seller accounts that did not correspond to Guangzhou Yucheng Trading Co., Ltd. When dbest's counsel sent GYT's prior counsel a draft first amended counterclaim, within days the Walmart.com listings were changed to remove the words "TROLLEY DOLLY," and change the brand name from "Winkeep" to "Popolic" to conceal its infringing activity.  Dkt. 50 at 5; Trial Tr., 50:2-56:7, Mar. 1, 2023. This factor weighs in favor of trebling damages.

### 10. Overall Weighing of the Factors

The *Read* factors weigh overwhelmingly in favor of trebling damages. Throughout the case, GYT has litigated untenable claims in an unreasonable and egregious manner, warranting an award of treble damages.

### B. The Court Should Award dbest Attorney's Fees Because the Case is Exceptional Based on GYT's Unreasonable Conduct

### 1. This Case is Exceptional Warranting Attorney's Fees

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." An exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or

-9-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* The moving party need only show its entitlement to fees by a preponderance of the evidence. *Id.* at 557-58. "Upon a finding of willful infringement, a trial court should provide reasons for not . . . finding a case exceptional for the purpose of awarding attorneys' fees." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 972 (Fed. Cir. 2000) (same).

This case is exceptional, justifying an award of attorney's fees, for multiple reasons.  First, dbest is the prevailing party because: (i) the Court granted summary judgment on the issues of infringement and validity (Dkt. 133); and (ii) the jury found that dbest proved lost profits and willful infringement (Dkt. 191).

Second, as discussed above, this case stands out from others, both with respect to the substantive strength of dbest's litigation position compared to GYT's and with respect to the unreasonable manner in which GYT litigated its case. *See supra* § II.A.3. For example, as discussed above, GYT failed to apply the Court's claim constructions in its summary judgment briefs, instead applying its rejected claim constructions. *Id*.

This Court addressed an almost identical issue on a litigant's attempt to revive its rejected claim construction and concluded that the case was exceptional under 35 U.S.C. § 285 because a party's infringement position "became objectively baseless following the court's claim construction order."  *Spitz Techs. Corp. v. Nobel Biocare*

*United States LLC*, No. SACV 17-00660 JVS, 2018 U.S. Dist. LEXIS 225488, at *16 (C.D. Cal. June 7, 2018).  In *Spitz*, as here, a party made an argument in the claim construction phase that was rejected, "but raised repeatedly in [its summary judgment] briefs and before the Court on the hearing." *Id.* at *13.  By advancing this argument, the party "conspicuously ignored the Court's claim construction" which underscored that its motion and opposition "not only lacked merit, but flouted the Court's construction." *Id.* In sum, the party's choice "to maintain its infringement position after claim construction and to disregard the Court's construction" was objectively baseless. *Id.* at *15. As a result, the other party was entitled to its attorneys' fees for work performed after the Court issued its claim construction order. *Id.*

The jury's finding of willful infringement and awarding lost profits also favors a finding of exceptionality. In particular, the jury award included lost profits on the sales of the infringing products on Walmart.com. These sales occurred after GYT's listings on Amazon were taken down and while the litigation was ongoing. GYT denied association with the various seller accounts on Walmart.com.  But the jury determined that GYT's denials were not credible and found that GYT continued to sell the infringing products on Walmart.com.

Finally, GYT willfully disregarded the Court's order to post a security bond, and is therefore, in contempt of Court. Failure to comply with a court's orders supports a finding of exceptionality. *See Stryker Corp. v. Davol, Inc.*, 75 F. Supp. 2d 741, 745-46 (Fed. Cir. 1999) (violation of permanent injunction justified an exceptional case finding); *Trustees of Boston Univ. v. Everlight Elecs. Co.*, Civ. A

-11-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

No. 12-11935-PBS, 2019 U.S. Dist. LEXIS 215555, at *3-4 (D. Mass. Dec. 16, 2019) (finding case exceptional after granting two motions to hold plaintiff's counsel in contempt).  For these reasons, dbest asks that the Court find this case exceptional and award dbest its reasonable attorney's fees.

### 2.   The Attorney's Fees Are Reasonable Because the Hours Spent and Hourly Rates Are Reasonable

To calculate an attorneys' fees award, the court must first calculate a "lodestar." *See Caudle v. Bristow Optical Co. Inc*., 224 F.3d 1014, 1028 (9th Cir. 2000). A court does so by "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id*. at 1028 (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)). The "lodestar" figure is "presumed reasonable unless some exceptional circumstance justifies deviation." *Love v. Mail on Sunday*, No. CV05-7798 ABC(PJWX), 2007 WL 2709975, at *2 (C.D. Cal. Sept. 7, 2007) (citing *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988)). If a fee applicant carries its "burden of showing that the claimed rate and number of hours are reasonable, the resulting product [i.e., the lodestar] is presumed to be the reasonable fee . . ." *Blum v. Stetson*, 465 U.S. 886, 897 (1984) (emphasis added).

Here, dbest requests an award of attorneys' fees in the amount of $692,461.40, the fees incurred by dbest. dbest previously submitted declarations and exhibits on attorneys' fees through December 2022 in support of its motion for a security bond, which the Court found sufficiently supported the basis for the attorneys' fees and costs sought. Dkt. 171 at 7. An updated declaration with exhibits

-12-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

1   is filed herewith and includes the attorney's fees incurred in 2023. *See* Samuel Decl.,

2   Exs. A & B.

3                    a)      **dbest's Staffing And Hourly Rates Are Reasonable**

4           As reflected in the time records, the staffing on the case was reasonable.

5   Mr. Ehab M. Samuel and Mr. David A. Randall were the primary attorneys handling

6   the case. Samuel Decl. ¶ 12. Many tasks were delegated to contract attorneys at a

7   lower hourly rate to provide dbest with overall cost-efficient representation. *Id.*,

8   ¶ 13.  The hourly rates sought are also reasonable when compared to those of

9   attorneys of similar experience in the community of this district. *See* Samuel Decl.,

10  ¶ 14 & Ex. A; Dkt. 154, ¶¶ 14-23; Dkt. 154-9 and 154-10; *U.S. v. $1,026.781.61 in*

11  *Funds from Florida Capital Bank*, CV 09-04381-MLG, 2013 WL 781926, at *2

12  (C.D. Cal. Mar. 1, 2013) (finding $600/hour for an attorney with twenty years of

13  experience reasonable and collecting cases on rates ranging from $450 to $650).

14                   b)      **The Number of Hours Expended was Reasonable**

15          Here, dbest presents detailed tables containing a breakdown of total hours

16  worked per counsel, a breakdown of the work done, and number of hours worked for

17  each specific task.  Samuel Decl., Exs. A & B. The hours billed were reasonable for

18  nearly two years of litigation, including a jury trial. *Id.*, ¶16. The hours expended

19  reflect the unreasonable manner in which GYT litigated the case, including its

20  untenable claims and defenses. *Id.*; *see supra* § II.A.3. dbest's counsels spent the

21  hours reasonably necessary to prosecute dbest's claims and respond to GYT's

22  arguments, including many frivolous ones. Thus, the nature and extent of work

23  performed was reasonably necessary to prevail. *Id.*, ¶17. The Ninth Circuit has

24

-13-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES,
COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

explained that, while the court has discretion, it should generally defer to the winning lawyer's professional judgment as to the hours winning the case required. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Further, as noted above, this case was managed efficiently and leanly staffed. Samuel Decl., ¶¶ 12-13. There was also little to no duplication of efforts. *Id.*, ¶ 18. dbest's counsel reviewed the bills and reduced or excluded any duplicative, unproductive, or excessive hours. *Id.*

### c)    The Total Requested Fees Are Reasonable

The total lodestar of $692,461.40 is well within the range normally required to litigate an intellectual property case through discovery, a jury trial, and post-trial motions. Samuel Decl., Ex. A. Indeed, it is on the low end of the spectrum. Dkt. 145-6 (AIPLA Report of the Economic Survey (2021)).

### C.    The Court Should Award dbest Interest and Costs

dbest, as the prevailing party, is entitled to recover "interest and costs as fixed by the court." 35 U.S.C. § 284.  Here, dbest's costs incurred are $70,047.07. Samuel Decl., Ex. C.

dbest is also entitled to prejudgment and post-judgment interest. Prejudgment interest generally "should be awarded from the date of infringement to the date of judgment." *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988). "[P]rejudgment interest on damages awarded for infringement of the [] patent shall be awarded at the prime rate, compounded annually, from the date of infringement until the date judgment is entered…." *Kaneka Corp. v. SKC Kolon PI, Inc.*, 198 F.Supp.3d 1089, 1126 (C.D. Cal. 2016). Meanwhile, post-judgment

-14-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

"interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. Post-judgment interest is mandatory. *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir.2013).

dbest's expert Dr. Matt Farber calculated the total prejudgment interest due on the jury's award of $463,163 in lost profits as being $38,995 as of March 16, 2023, and an additional $106.62 per day thereafter. *See* Samuel Decl., Ex. I, ¶¶ 5-11.

**D.     The Court Should Hold GYT's Attorneys Liable for Attorney Fees and Costs Incurred As a Direct Result of Their Frivolous Positions**

**1.     The Court Has the Authority to Require GYT's Attorneys To Pay A Portion of dbest's Attorney's Fees**

The Court has the authority to sanction GYT's counsel for multiplying the litigation, and briefing frivolous and unsupported legal positions throughout the case. Notably, the Court can sanction GYT's counsel under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Court also has discretion under Rule 11 to sanction GYT's attorneys and law firm "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997). Evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (*en banc*). "The standard

-15-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

governing both the 'improper purpose' and 'frivolous' inquiries is objective." *G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003). Rule 11 sanctions may include an award for "reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

Finally, the Court has inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotations omitted). The court's inherent power to impose sanctions for abusive litigation practices extends to a "broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994.

### 2. GYT's Attorneys Should be Liable for dbest's Attorney's Fees Because They Raised Frivolous Arguments that Multiplied the Proceedings and Fees

A "finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings is ... sufficient to impose sanctions under section 1927." *In re Girardi,* 611 F.3d 1027, 1061 (9th Cir. 2010). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument …" *In re Keegan Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir. 1996) (quoting *Estate of Blas v. Winkler,* 792 F.2d 858, 860 (9th Cir. 1986); *see also Trulis v. Barton*, 107 F.3d 685, 692 (9th Cir. 1995) (maintenance of a suit that was precluded by a release in bankruptcy court, of which counsel were "well aware" was reckless and vexatiously multiplied the proceedings in violation of section 1927). In *Trulis,* the

-16-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

Ninth Circuit stressed the importance of sanctions to the integrity of the legal system:

> Although the sanctions in this case are payable to the … defendants, the real cost of [the lawyer's] misconduct, and of most attorney misconduct, is borne by the clients and the legal profession as a whole.  At a time when public confidence in the legal profession has already been severely eroded, courts cannot further jeopardize that confidence by condoning such pervasive attorney misconduct.

107 F.3d at 696.  Here, the record shows that GYT's counsel repeatedly and recklessly raised frivolous arguments that multiplied the proceedings.

After the Court granted dbest's motion for leave to amend its first amended counterclaims (FACC) (Dkt. 50), which GYT had opposed (Dkt. 39), GYT's attorneys filed a motion to dismiss the FACC (Dkt. 60). GYT's motion to dismiss was frivolous, and essentially required dbest to brief the same issue twice. As a result, dbest incurred **$4,767.50** in attorneys' fees as a direct result of GYT's counsel's decision to brief the issue again. Samuel Decl., Ex. B at 2.

After the Court construed the claims, this case should have settled. GYT, as a small foreign company with no experience in U.S. litigation, was especially dependent on its counsel to evaluate its likelihood of success. It replaced its prior counsel with attorneys at Glacier Law after the parties briefed their claim construction positions. Dkts. 42-43. But rather than settling the case, its new counsel pressed forward with unreasonable and untenable claims. GYT's new counsel served expert reports in which its technical expert used GYT's rejected claim constructions, not the court's constructions, to analyze both infringement and invalidity, and then relied on those reports in its summary judgment phase briefs. A reasonable attorney

would have recognized that motions relying on rejected claim constructions were frivolous and would not succeed.

GYT's attorneys were also culpable in serving GYT's rebuttal expert report two days late, even though it was signed before the deadline.  Dkt. 133 at 20.  GYT's arguments that dbest's motion to strike the rebuttal report untimely were "frivolous."  *Id.* at 20.  As the Court emphasized, "[w]hether this was intentional gamesmanship or willful blindness, it should have been obvious to GYT that waiting until after dbest filed its motions would deprive dbest of an opportunity to challenge the rebuttal report on the same time table as the rest of the the MSJ-related motions."  *Id.* at 20-21.  Again, GYT's attorneys' decision to wait to file the already-signed rebuttal report until after dbest filed its motions multiplied the proceedings.  dbest had to file an additional motion to strike the late report and the Court had to continue all the motion hearings.  *Id.* at 21 (citing Dkt. 128).  The Court also concluded that "GYT's explanations for the delay are insufficient at best and frivolous at worst" and excluded the rebuttal report under Rule 37(c)(1).  *Id.*

GYT also relied on prior art references never disclosed in its invalidity contentions under the Patent Local Rules.  *Id.* at 17. GYT offered no arguments why these invalidity theories should not be excluded under Rule 37(c).  *Id.* at 18.  The Court concluded that introduction of new obviousness combinations in the Smith invalidity report was "neither substantially justified nor harmless" and granted dbest's motion to exclude them.  *Id.*  A reasonable attorney would have anticipated that expert opinions and arguments based on theories not timely disclosed under the Patent Local Rules would be excluded.

GYT also made borderline frivolous arguments in its motion to exclude dbest's expert witnesses. *Id.* at 23. For example, after refusing to produce samples of the infringing products in discovery, GYT argued that dbest's technical expert could not rely on photographs of the Accused Products to analyze infringement, though "it is well settled that experts may rely on photographs of products to conduct an infringement analysis." *Id.* For noninfringement, GYT relied on Smith's conclusory opinion that dbest had not shown that the tires on the Accused Products were rubber, but the Court explained that GYT's own documents stated that their carts' wheels are made of "sturdy rubber" which is substantial evidence of that fact. *Id.* at 31. The Court also found that GYT offered only Smith's "conclusory assertions," to argue that the Accused Products lacked the claimed horizontal mounting bar. *Id.* at 34. The Court spontaneously admonished GYT for making so many frivolous arguments in its summary judgment related briefs. *Id.* at 45. Because GYT moved for summary judgment, dbest had to respond to most of GYT's frivolous arguments twice.

As a direct result of the unreasonable and frivolous positions that GYT's attorneys advanced in summary judgment and related motions, dbest incurred **$168,249.40**[1] in attorneys' fees. Samuel Decl., Ex. B at 3. dbest also incurred costs for printing and delivery of courtesy copies to the Court in the amount of **$2,054.23**. Further, to rebut GYT's technical expert report based on rejected claim construction, dbest incurred **$4,800.00** in costs for the preparation of a rebuttal expert report. Samuel Decl., Ex. H (Invoice 65581).

---

[1] This amount reflects the total of the fees tabulated under "Daubert and Summary Judgment Motions" and "Motions to Strike" tables in Exhibit B.

After the Court granted all of dbest's motions and none of GYT's, this case should have been over, especially because GYT never retained its own damages expert. Yet, GYT and its counsel continued to unreasonably push forward for trial. GYT's counsel filed a motion for remote testimony of Ms. Alley Ye, seeking "live testimony from Guangzhou, China" (Dkt. 140 at 8:5), which is illegal and prohibited under Chinese Law. Dkt. 144. GYT's counsel's position was frivolous particularly since GYT's counsel knew about and relied on the Chinese law during the discovery period. *Id.* at 10. After the Court had denied GYT's motion, it filed a renewed motion seeking live testimony in Macau. Dkt. 152. As a direct result of the unreasonable and frivolous positions that GYT's attorneys advanced on the initial motion for remote testimony from Guangzhou, China, dbest incurred **$6,262.50** in attorneys' fees. Samuel Decl., Ex. B at 4.

Finally, while GYT voluntarily withdrew many of its affirmative defenses for trial, it refused to withdraw its limitation of damages defense.  Yet, at trial, GYT presented no evidence relevant to its limitation of damages defense, sought no jury instruction related to the defense, and the Court granted dbest's motion for judgment as a matter of law. Indeed, GYT's counsel tried the case with practically no evidence to support GYT's affirmative defenses (Dkt. 195 at 10) and no experts to rebut dbest's technical and damages experts. Moreover, GYT's counsel never disclosed GYT's intent to rely on advice-of-counsel defense. Yet, despite the Court precluding testimony on the advice-of-counsel defense (Dkt. 182 at 5), GYT's counsel improperly raised this defense in his opening statement:

**At the time when GYT filed this lawsuit, it asked for professional opinions regarding whether there is infringement or not.**

-20-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

Trial Tr., 4:22-51, Feb. 28, 2023 (emphasis added). dbest objected to GYT's counsel's argument and the Court instructed GYT's counsel to move on. *Id.*, 4:25-5:1. Undeterred, GYT's counsel attempted to elicit testimony on the advice-of-counsel defense from Ms. Ye:

> **"And then, the time rose to April 2021. This time around, Amazon notified us that there is this issue occurred, and our product was delisted this time. Upon that discovery, we find a U.S. based attorney immediately. The attorney's office made a comparison --"**

Trial Tr., 47:3-7, Mar. 2, 2023 (emphasis added). The Court again sustained dbest's objection. *Id.*, 47:8-48:3.

Based on these facts, a reasonable attorney would not have proceeded to trial, but instead would have taken judgment and sought to appeal any legitimately disputed claim constructions. By pushing forward with trial on untenable and unsupported claims, and advancing arguments and eliciting testimony on excluded subject matter, GYT and its counsel unreasonably multiplied the litigation and caused dbest to incur an additional **$166,621.00**[2] in fees and **$22,040.99**[3] in costs. Samuel Decl., Ex. B at 4-6 & Exs. C-H.

For all these reasons, GYT's attorneys vexatiously multiplied the litigation proceedings in bad faith by raising so many frivolous arguments and engaging in litigation misconduct. The Court concluded, when it granted dbest's bond motion, that "[w]ere the jury to award dbest $413,000 in damages, GYT does not appear to have sufficient assets in the United States for dbest to collect judgment,

---

[2] This amount reflects the total of the fees tabulated under "Pretrial and Trial Preparation," "Deposition Designations and Objections," "Jury Instructions," and "Trial and Additional Trial Preparation" tables in Exhibit B.

[3] This amount reflects the cost for the experts' time at trial and in preparation for trial, for trial exhibits, and for select daily trial transcripts.

-21-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

notwithstanding any potential award of attorneys' fees and costs." Dkt. 171 at 6. Now, the jury has awarded $463,136 in lost profits. But GYT will likely refuse to pay the award upon entry of judgement, leaving dbest in a fundamentally unfair position with significant attorneys' fees and costs incurred to counteract the unreasonable manner in which GYT's attorneys has litigated the case. Under these circumstances, it would serve the interest of justice to hold GYT's attorneys and their law firm, who were responsible for their frivolous arguments and litigation misconduct, liable for at least the above-identified pre-trial fees and costs, which amount to **$186,133.63**. dbest also requests that GYT's counsel be held responsible for a portion of the fees and costs incurred in connection with the trial, as the Court deems appropriate.

## E.     The Court Should Grant dbest's Request for a Permanent Injunction

Courts issue injunctions to prevent continuing infringement of a patent right. 35 U.S.C. § 283. dbest seeks the entry of a permanent injunction against GYT, its officers, agents, associates, affiliates, employees, attorneys, and all others acting in concert or participation with them, from, directly or indirectly: (i) making, using, selling, offering for sale, and/or importing the infringing shopping carts into the United States, including those sold on Amazon.com under the ASINs B07T63S2WP, B07B4XSW9L, B08CX9VXPT and B08JYB8MB4; and (ii) selling and offering for sale the infringing shopping carts on Amazon.com and Walmart.com through any and all seller accounts, including the seller accounts for WINKEEP, WINIBEST, WILBEST, LENBEST, POPOLIC, BOVN, AMOETES, and STARRYBB, ROYI, FLYFUN, TEEHON, CAPER BROS. and TOMSER.

-22-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION Case No. 2:21-cv-04758-JVS-JDE

To determine whether an injunction is appropriate in the context of a patent infringement action, courts analyze the following four factors: (1) whether the patent owner has suffered an irreparable injury; (2) whether remedies available at law are inadequate to compensate for that injury; (3) whether a remedy in equity is warranted considering the balance of hardships between the plaintiff and the defendant; and (4) whether the public interest would be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Here, due to GYT's pattern of using an ever-changing roster of fictitious names to sell the infringing products on online retail websites, dbest seeks an injunction broad enough to cover all of GYT's aliases, as well as those acting in concert with it, to prohibit all infringing acts.

### 1.     dbest is Irreparably Harmed by GYT's Continuing Infringement

Here, dbest would be irreparably injured by GYT continuing to infringe, as well as use images of infringing products to promote sales of other non-infringing products. As Mr. Richard Elden testified at trial, copycat infringing products harms dbest's reputation, the patented product, and the Trolley Dolly brand associated with the patented product. Trial Tr., 87:18-88:1, Mar. 1, 2023. He also testified that dbest is irreparably injured because GYT's continuing infringement undermines the "blood, sweat, and tears" invested in designing, developing, patenting, and marketing the patented product. *Id.*, 88:2-13. Moreover, evidence at trial demonstrated that, even after Amazon took down GYT's infringing listings, GYT simply listed the infringing products on Walmart.com. Trial Tr., 11:6-9 & 14:4-8, Mar. 1, 2023; *id.*, 50:2-20. Further, even after the jury's verdict of willful

infringement, GYT continues to use images of the infringing product on its flagship Amazon store to divert sales from dbest:



Samuel Decl., ¶¶23-26 & Ex. K at 9.

### 2. There is No Adequate Remedy at Law

dbest has no adequate remedy at law. First, GYT used multiple fictitious storefront names to sell its infringing products on Amazon.com and Walmart.com and attempted to evade damages by pretending that its seller accounts on Walmart were unassociated with GYT. Trial Tr., 50:2-56:7 & 69:20-74:8, Mar. 1, 2023. The jury determined that GYT's denials were not credible and awarded damages inclusive of lost profits from the sales on all seller accounts that sold the infringing product on Walmart. Dkt. 191. Second, monetary damages are inadequate if dbest cannot collect them. The Court recognized that "GYT does not appear to have sufficient assets in the United States for dbest to collect judgment, notwithstanding any potential award of attorneys' fees and costs." Dkt. 171 at 6.

-24-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

### 3.     The Balance of Hardships Favors a Permanent Injunction

Permitting GYT to continue to sell infringing products would cause dbest hardship. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) (direct competition from an infringer causes the patentee irreparable harm). Meanwhile, a permanent injunction would pose little hardship to GYT because it would simply require GYT to stop violating the law.  *See Quanex lg Sys. v. Panjin cll Insulating Glass Material Co.*, No. CV 15-07138 JVS (RAOx), U.S. Dist. LEXIS 204681, at *10 (C.D. Cal. April 7, 2016) (granting permanent injunction in a patent infringement case, finding little hardship to defendant where permanent injunction would simply require it to stop violating the law).

### 4.     The Public Interest Favors Issuing a Permanent Injunction

It is in the public interest to uphold patent rights. *Rite-Hite Corp. v. Kelley Corp., Inc.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995) (en banc); *Abbott Labs. v. Andrx Pharmas., Inc.*, 452 Fed. Cir. 1331, 1348 (Fed. Cir. 2006).

In sum, all four factors favor issuing a permanent injunction with appropriate breadth to address GYT's ever-changing roster of seller account names, as set forth in the proposed order.

## III.   CONCLUSION

For the reasons discussed above, dbest respectfully requests that the Court award treble damages for GYT's willful infringement, find this case exceptional, warranting attorney's fees, award dbest its reasonable fees and costs, hold GYT's attorneys liable for those fees incurred at the summary judgment stage, and enter a permanent injunction.

-25-

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES,
COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

Respectfully submitted,

DATED:  March 16, 2023          **ORBIT IP, LLP**

By: _/s/ Ehab M. Samuel_
Ehab M. Samuel (CA SBN 228296)
David A. Randall (CA SBN 156722)

*Attorneys for Defendant and Counterclaimant*
DBEST PRODUCTS, INC.

DBEST'S NOTICE OF M. AND M. FOR TREBLE DAMAGES, FEES, COSTS AND INTEREST, AND PERMANENT INJUNCTION
Case No. 2:21-cv-04758-JVS-JDE

-26-