1  Ehab M. Samuel (SBN 228296)
   esamuel@orbitip.com
2  David A. Randall (SBN 156722)
   dave@orbitip.com
3  **ORBIT IP, LLP**
   10900 Wilshire Blvd., Suite 300
4  Los Angeles, CA 90024
   Tel.:  (310) 887-1333
5  Fax:  (310) 887-1334

6  Attorneys for Defendant and Counterclaimant,
   DBEST PRODUCTS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DBEST PRODUCTS, INC.**, a California corporation,<br><br>    Plaintiff<br><br>v.<br><br>**GUANGZHOU YUCHENG TRADING CO., LTD.**, a foreign limited liability company,<br><br>    Defendant. | Case No.: 2:21-cv-04758-JVS-JDE<br><br>**DBEST PRODUCTS, INC.'S EX PARTE APPLICATION FOR AN ORDER HOLDING GYT AND ITS COUNSEL IN CONTEMPT**<br><br>JUDGE:  JAMES V. SELNA<br><br>COURTROOM:  10C |

## I. INTRODUCTION

The ink is barely dry on the Court's Order Regarding Motion for Treble Damages, Attorney's Fees, Permanent Injunction, and Costs ("Post-Trial Order, Dkt. 236), but GYT and its attorneys have already failed to comply with it. Instead, they continue to flout their contempt for this Court and its orders. Neither GYT nor its attorneys have provided the Court-ordered information about GYT's inventory of infringing shopping carts that would aid dbest in taking possession of it. Nor has GYT turned over any inventory, despite testimony in discovery that GYT had inventory in the United States and China. Because of the difficulty in enforcing the award against GYT in China, obtaining possession of its inventory and selling it may be the only way that dbest will ever recover any of its attorneys' fees and costs incurred, much less compensate it for the damages on GYT's willful infringement. Adding insult to injury, on May 10, 2023, GYT's counsel, Glacier Law, moved to withdraw as counsel without fully complying with the Court's Post-Trial Order.

dbest brings this application *ex parte* because time is of the essence and if GYT's counsel is permitted to withdraw, it will impede the administration of justice, significantly hamper dbest's efforts to obtain possession of the inventory and to collect on the judgment and would effectively allow GYT and its counsel to elude this Court's jurisdiction and the consequences of violating its Post-Trial Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In its Post-Trial Order, the Court ordered GYT, its officers, agents, associates, employees, attorneys, and all others acting in concert or participation with them, directly or indirectly, to:

-1-

DBEST'S EX PARTE APPLICATION FOR AN ORDER HOLDING
GYT IN CONTEMPT
Case No. 2:21-cv-04758-JVS-JDE

(i) immediately take steps to preserve the inventory of infringing products in its current location;
(ii) within seven days of this order, provide dbest and the Court with all necessary information about that inventory, in the United States or elsewhere in GYT's possession, custody or control, including the address[es] where that inventory is currently stored, and contact information and telephone number of the entity[ies] storing the inventory;
(iii) within seven days of the order, serve GYT's agent(s) for storage of the inventory with a copy of the order; and
(iv) promptly take all measures necessary to turn the inventory over to dbest and/or its attorneys or agents acting on behalf of dbest.

Dkt. 236 at 16.

On Friday, May 5, 2023, dbest's counsel sent an email to GYT's counsel with an excerpt from the Court's order on the obligations of GYT and its counsel regarding identification, preservation, and turnover of the inventory of infringing products in the United States and abroad. Declaration of Ehab M. Samuel ("Samuel Decl."), ¶ 3 & Ex. A. Despite the clarity of the Court's order, on Saturday, May 6, 2023, dbest's counsel, Mr. Samuel, received a response from GYT's counsel, Mickey Yao, stating: "We have mailed the Court's order to the warehouse and asked them to comply with the Court's Order and preserve the inventories. Please advise how Dbest would like to proceed." *Id.*, ¶ 4 & Ex. B. The Court's Post-Trial Order already provided Mr. Yao and GYT's other counsel specific instructions on how to proceed. Dkt. 246. Further, on Monday, May 8, 2023, Mr. Samuel responded to GYT's counsel, requesting again the name, phone number, and email of the warehouse/storage vendor, providing the delivery address to turnover the inventory; and inquiring on the anticipated delivery of the inventory. *Id.*, ¶ 5 & Ex. C. On Tuesday, May 9, 2023, Mr. Yao, responded with limited information about the

warehouse, identifying the warehouse individual as "Person in Charge: NIWO-80163" and a phone number (which no one answered, and which merely went to a full voicemail inbox). *Id.*, ¶ 6 & Ex. D.

On May 10, 2023, at 4:08 pm PST, Glacier Law attorneys sent an email indicating that they intended to file a motion to withdraw and inquiring about dbest's counsel's availability to meet and confer. *Id.*, ¶ 7 & Ex. L. On the same day, May 10, 2023, at 4:22pm PST, Mr. Samuel responded that he was available to meet and confer on May 11, 2023. *Id.*, ¶ 8 & Ex. M. Despite Mr. Samuel's prompt response on availability to meet and confer, on the same day, May 10, 2023, at 9:39 pm PST, Ms. Iris Ju filed the motion to withdraw as counsel, without ever having met and conferred. Dkt. 238 and L.R. 7-3.

On May 11, 2023, dbest's counsel met and conferred with GYT's counsel, Mickey Yao and Iris Ju, regarding dbest's proposed motion to hold GYT and its attorneys in contempt and a motion for reconsideration. He asked counsel about the inventory in New Jersey (roughly 4200 units per Ms. Ye's declaration [Dkt. 157] and China (roughly 3000 to 4000 units per Ms. Ye's deposition). Samuel Decl., ¶ 10 & Ex. K (Ye Dep. Tr. at 59:6-8). On the call, Mr. Yao and Ms. Ju represented that they were working with GYT to turn over the inventory in New Jersey and assured Mr. Samuel that dbest should not be concerned. *Id.*, ¶ 11. They also indicated that they would look into the inventory in China and revert back. *Id.* Mr. Samuel informed them that as a courtesy, if the inventory were timely turned over, dbest would not file a motion for reconsideration or *an ex parte* application to hold GYT and Glacier in contempt or oppose Glacier's motion to withdraw. *Id.* ¶ 11 & Ex. E.

1　　　　Having not heard back about what steps GYT had taken to turn over the
2　inventory, on Tuesday, May 16, 2023, Mr. Samuel followed up again with GYT's
3　counsel and reminded them that dbest's motion for reconsideration was due
4　Thursday per the local rules. *Id.*, ¶ 12 & Ex. F. Mr. Samuel also talked to Mr. Yao
5　on the phone, again emphasizing the need to turn over the inventory and inquiring
6　on status of the inventory in China. *Id.* On the same day, Mr. Samuel received a call
7　from David, assistant to the CEO of NIWO Partners (GYT's warehouse logistics
8　company). *Id.*, ¶ 13. David confirmed that NIWO Partners have the inventory in
9　their New Jersey warehouse but stated that GYT owes storage fees. He agreed to
10　determine the cost for delivering the infringing products to dbest and the total
11　amount that GYT owes for storage.  *Id.*, ¶ 13.

12　　　　On Wednesday, May 17, 2023, Mr. Samuel was copied on an email from
13　David to GYT's counsel, which provided that NIWO has about 4,200 pieces in their
14　inventory, the units are ready for outbound shipment, and NIWO is owed an
15　outstanding storage fee, amounting to $8,000, by GYT. *Id.* ¶ 14.  For delivery,
16　NIWO anticipates incurring trucking charges, including outbound fees, totaling
17　$18,000. *Id.* These expenses cover the transportation and logistics of delivering the
18　products to the designated destination. Therefore, the overall cost amounts to
19　$26,000.  *Id.*, ¶ 14 and Ex. G. In response, Mr. Samuel wrote to Iris Ju and Mickey
20　Yao: "Please make sure that GYT makes the wire transfer today (which is now
21　morning in China) and provide evidence by email of their wire transfer. That way
22　NIWO Partners can proceed with the shipping tomorrow morning (EST time) and
23　provide us with the shipping records before the end of the day." *Id.*, ¶15 & Ex. H.
24

On May 18, 2023, at about 2:00 pm PST, Mr. Samuel spoke with David at NIWO Partners. *Id.*, ¶ 16. After exchanging texts with his boss, David informed Mr. Samuel that although NIWO wants to comply with the Court's Post-Trial Order, NIWO will not ship the inventory until it receives the overdue storage payment and the delivery fees from GYT, because it cannot take the loss. *Id.* He also informed him that NIWO has also been in contact with GYT's attorneys urging them to have GYT pay the outstanding storage fee and delivery charge but without success so far. *Id.*, ¶ 16. On Thursday, May 18, 2023, at 4:37 pm PST, Mr. Samuel received an email from Mickey Yao, stating: "Given that we have not heard back from GYT, we have followed up with them again about the outstanding invoice and charges despite them already terminating us from representation. Thank you for your patience." *Id.*, ¶ 17 and Ex. I.

On May 20, 2023, Mr. Samuel again asked GYT's counsel on the "status of the inventory in China, identification of storage warehouse (including name, email and phone number), and arrange for the turnover of this inventory as well." *Id.*, ¶ 18 and Ex. J. Mr. Yao responded by admitting that Ms. Ju and he had agreed, on the May 11, 2023, meet and confer, to ask about GYT's inventory in China. *Id.*, ¶ 19 & Ex. N. But contended that dbest "indicated such information is useless [be]cause dbest has no point to have GYT ship these inventory all the way from China." *Id.* Of course, Mr. Yao's statement is contrary to dbest's proposed order that the Court adopted in its Post-Trial Order specifically requiring that GYT and its counsel disclose the whereabouts of GYT's inventory, serve the storage agent(s) with a copy of the Court's order, and take reasonable measures to turn over this inventory. Mr.

Samuel explained that no such statement was made and is inconsistent with dbest's experience in shipping its products from China. *Id.*, ¶ 20 & Ex. O. Further. Mr. Samuel emphasized that even Mr. Yao's response email said nothing about asking Ms. Ye on the China inventory. *Id.* While the parties may have different recounts on what was stated during the meet and confer on the alleged "usefulness" of the information, there can be no dispute that the Court's Post-Trial Order required it and, despite being reminded to inquire on the China inventory, Mr. Yao's series of emails are silent on asking Ms. Ye on the China inventory or the steps taken to turn over the inventory in China, as required by the Court's order. *Id.*, ¶ 21. Again, Glacier and GYT simply chose to ignore the Court's Post-Trial Order and its clear requirements of turning over the inventory of infringing products.

## III.  ARGUMENT

### A.  dbest Will be Irreparably Harmed if its Request Must be Brought as a Noticed Motion

Over two weeks have passed since the Court issued its permanent injunction but GYT and its counsel have yet to fully comply with the Court's Post-Trial order. GYT has not turned over a single unit of its inventory to dbest despite assurances from GYT's counsel. Samuel Decl., ¶ 22. Further, despite repeated requests, GYT and its attorneys have not disclosed the location of GYT's inventory in China, demonstrated that they have served the storage agent(s) with a copy of the Court's order, or taken any measures to turn over this inventory. *Id*. Instead, counsel has spent its time attempting to circumvent the Court's order, including: (i) negotiating an "agreement regarding the termination of [its] representation" (Dkt. 238-1, ¶6); and (ii) preparing and filing a motion to withdraw as counsel (Dkt. 238).

1       Given GYT's previous noncompliance with the Court's order on posting
2  bond, and evasiveness of its counsel when asked for any information about the
3  China inventory, dbest is concerned that GYT may now be liquidating its inventory
4  of infringing products in China rather than turning it over as the Court ordered. *Id.*,
5  ¶ 23. dbest seeks to hold GYT and its attorneys in contempt of Court for
6  noncompliance, to order them to turn over this inventory and/or for sanctions. If the
7  relief was sought through a regular motion proceeding, then there is a significant risk
8  that GYT will have liquidated the entire inventory. *Id.* Because of the difficulty in
9  enforcing the award and judgment against GYT in China, obtaining possession of
10 GYT's inventory and selling it may be the only way that dbest will ever receive to
11 recover its attorneys' fees and costs incurred, much less compensate it for the
12 damages on GYT's willful infringement. *Id.*, ¶ 25.

13      dbest and its counsel are also concerned that Glacier's motion to withdraw as
14 counsel of record and GYT's purported termination of its attorneys—at a time when
15 both are required to comply with the Court's order to turn over the inventory—is
16 simply an effort to evade the Court's Post-Trial Order and will make it even more
17 difficult to have the inventory turned over to dbest and to collect any of the
18 judgment owed to dbest from GYT. *Id.*, ¶ 24. Indeed, if the relief were sought
19 through a regular motion, then the earliest hearing date would be Monday, June 26,
20 2023—two weeks *after* the hearing scheduled on Glacier Law's Motion to
21 Withdraw. Dkt. 238. Thus, dbest will be irreparably harmed unless the Court grants
22 dbest's ex parte application to hold GYT and its counsel in contempt for failing to
23 timely turn over GYT's inventory to dbest.

24

### B. dbest is Without Fault in Creating the Need for Ex Parte Relief and Acted with Reasonable Diligence

The Court's Post-Trial Order gave GYT and its attorneys seven days to provide dbest with all necessary information about the inventory and to serve its agents for storage of the inventory with a copy of the order. Dkt. 236 at 16. As recounted above, dbest's counsel has diligently communicated with Ms. Ju and Mr. Yao to try to obtain GYT's cooperation. NIWO Partners has been served the Court's order, but NIWO will not ship the inventory to dbest until GYT pays the outstanding storage fees and delivery fees. Also, dbest's counsel has repeatedly requested GYT's counsel to provide information about and take measures to turn over the inventory in China. Samuel Decl., ¶¶ 10-21. But GYT and its counsel failed to do so. dbest brings this application promptly after those facts came to light.

### C. Contempt and Sanctions Are Appropriate Because GYT and Its Attorneys Have Failed to Take All Measures Necessary to Turn GYT's Inventory Over to dbest

District courts have the inherent power to enforce compliance with their orders through civil contempt. *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). Absent a stay, orders of a court must be complied with promptly. *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). Civil contempt consists of a "party's disobedience of a specific and definite court order to take all reasonable steps within the party's power to comply." *Dual Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). To establish liability for civil contempt, the moving party must show that the other party has violated a specific and definite order of the court. *FTC v. Affordable Media,* 179 F.3d 1228, 1239 (9th Cir. 1999). The burden then shifts to the contemnor to demonstrate why it was unable to comply. *Id.* The contemnor's

1  good faith or intent in attempting to comply with the order is immaterial. *Stone v.*
2  *City and County of San Francisco*, 968 F.2d 850, 856-57 (9th Cir. 1992).

3  Civil contempt sanctions are employed for two purposes: to coerce the
4  defendant into compliance with the court's order and to compensate the complainant
5  for losses sustained. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir.
6  1992). The district court has a broad range of civil contempt sanctions at its disposal,
7  including fines, imprisonment, receivership, and creative non-traditional sanctions.
8  *Mercedes-Benz Grp. AG v. A-Z Wheels LLC*, No. 16-CV-875 JLS, 2022 U.S. Dist.
9  LEXIS 111780, *7 (C.D. Cal. June 23, 2022).

10  Here, because GYT and its counsel have failed to comply with the Court's
11  Post-Trial Order, dbest respectfully requests that the Court to issue an order holding
12  GYT and its counsel in contempt and requiring them to turn over the inventory of
13  infringing products in the United States and China or sanctioning them for the value
14  of the inventory. Ms. Ye declared that the "total value" of GYT's inventory of 4,159
15  shopping carts in its New Jersey warehouse "at a price $69.99 per unit" is about
16  "$291,088.41 USD." Dkt. 157, ¶¶ 4-5. She also testified that GYT has 3000 to 4000
17  units in its China warehouse. Samuel Decl., ¶ 10 & Ex. K. Based on Ms. Ye's
18  declaration of GYT's price per unit of $69.99 and testimony on the number of units
19  in China, the value of the inventory in China ranges from $209,970.00 to
20  $279,960.00. Thus, the total potential value of the combined inventory in New Jersey
21  and China ranges from about $501,058.00 and $571,048.00.

22  While Glacier attorneys connected dbest to an individual purportedly at the
23  New Jersey warehouse, their efforts were superficial and insufficient. It only led to
24

the discovery that the warehouse will not ship the inventory until it is paid by GYT. In the backdrop, they spent five days self-dealing by negotiating a termination of their representation on what appears to be a partial payment of their fees. Dkt. 238-1, ¶¶4–6. If GYT has funds available, it should pay the damages the Court awarded to dbest or pay NIWO Partners so they will ship the New Jersey inventory to dbest, before paying Glacier Law. But neither GYT nor its attorneys arranged for the warehouse to release the New Jersey inventory because of the outstanding storage fees, which they want to stiff dbest to pay. Further, despite repeated inquires about the status of the China inventory, Glacier attorneys have not provided the information required by the Court's Post-Trial Order. Nor has GYT or its counsel connected dbest to GYT's China warehouse or made any attempts to turn over any inventory in China. Thus, GYT and Glacier have failed to fully comply with the Court's Order and should be held in contempt.

## IV. CONCLUSION

For the reasons discussed above, dbest respectfully requests that the Court issue an order holding GYT and its counsel in contempt and requiring them to turn over the inventory of infringing products in the U.S. and China. Alternatively, dbest requests the Court to issue an order holding GYT and its counsel in contempt and sanctioning them for the combined value of the inventory in the U.S. and China.

Respectfully submitted.

DATED: May 22, 2023

ORBIT IP, LLP

By: /s/ Ehab M. Samuel
Ehab M. Samuel (CA SBN 228296)
David A. Randall (CA SBN 156722)

*Attorneys for Defendant and Counterclaimant*
DBEST PRODUCTS, INC.