Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
David A. Randall (SBN 156722)
dave@orbitip.com
**ORBIT IP, LLP**
10900 Wilshire Blvd., Suite 300
Los Angeles, CA 90024
Tel.:  (310) 887-1333
Fax:  (310) 887-1334

Attorneys for Plaintiff,
DBEST PRODUCTS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DBEST PRODUCTS, INC.**, a California corporation,<br><br>    Plaintiff<br><br>v.<br><br>**GUANGZHOU YUCHENG TRADING CO., LTD.**, a foreign limited liability company,<br><br>    Defendant. | Case No.: 2:21-cv-04758-JVS-JDE<br><br>**DBEST PRODUCTS, INC.'S NOTICE OF MOTION AND MOTION FOR CONTEMPT AGAINST GYT AND ITS COUNSEL**<br><br>JUDGE:  JAMES V. SELNA<br>DATE: June 26, 2023<br>TIME: 1:30 p.m.<br>COURTROOM: 10C |

**TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 26, 2023, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 10C of the Ronald Reagan United States Courthouse, located at 411 West Fourth Street, Santa Ana, California, Counterclaim Plaintiff dbest products, Inc. ("dbest"), will and does move the Court, to hold defendant Guangzhou Yucheng Trading Co., Ltd. ("GYT") and its counsel in contempt of court and impose sanctions for failing to comply with the Court's Order Regarding Motion for Treble Damages, Attorney's Fees, Permanent Injunction, and Costs (Dkt. 236, "Post Trial Order").

Counsel for the parties have met and conferred as required by L.R. 7-3. While counsel engaged in a meaningful discussion, they were unable to reach a resolution eliminating the need for this motion. This motion is therefore made following the conference of counsel, which took place on May 11, 2023.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Ehab M. Samuel, the pleadings and papers on file in this matter, and the arguments of counsel at the hearing.

Respectfully submitted,

DATED:  May 29, 2023

ORBIT IP LLC

By:   /s/ Ehab M. Samuel
Ehab M. Samuel (CA SBN 228296)
David A. Randall (CA SBN 156722)

Attorneys for Plaintiff
DBEST PRODUCTS INC.

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................ 3

III.  LEGAL STANDARD .................................................. 7

IV.  ARGUMENT ................................................. 9

A.  GYT Should be Sanctioned for Contempt of the Post-Trial Order Because It Refuses to Disclose the Location of its Overseas Infringing Inventory And Failed to Turn Over Any Infringing Inventory ..................................... 9

B.  Glacier Should be Sanctioned for Contempt of the Post-Trial Order Because It Has Not Taken All Reasonable Steps to Comply With the Post-Trial Order .................................................... 10

C.  GYT and Glacier Should be Sanctioned, Jointly and Severally, for the Combined Value of the Infringing Inventory in the United States and China ..................................................... 15

V.  CONCLUSION ........................................ 16

# TABLE OF AUTHORITIES

CASES

*Donovan v. Mazzola*, 716 F.2d 1226 (9th Cir. 1983) ................................................. 7

*Dual Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693 (9th Cir. 1993) .... 7

*FTC v. Affordable Media*, 179 F.3d 1228 (9th Cir. 1999) .......................................... 8

*General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376 (9th Cir. 1986) ............... 8, 15

*Harcourt Brace Jovanovich Legal & Prof'l. Pubs., Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948 (9th Cir. 1994) .............................................................................. 8

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187  (1949) ......................................... 8

*NLRB v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612 (9th Cir. 1973) ............... 8

*Perry v. O'Donnell*, 759 F.2d 702 (9th Cir. 1985) .................................................... 8

*Shillitani v. U.S.*, 384 U.S. 364 (1966) ..................................................................... 7

Stone v. City and County of San Francisco, 968 F.2d 850 (9th Cir. 1992) ................ 8

*Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) .................................................... 7, 8, 9

*Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510 (9th Cir. 1992) ...................... 8, 15

# I.    INTRODUCTION

> "[GYT] does have attachable property i.e., inventory stored with GYT's logistic[s] company meaning there is no real risk of [dbest] being unable to recover costs and attorney's fees to which they are entitled."

Dkt. 143 at 1:17-21. That was Glacier's representation in opposing dbest's motion to require GYT to post a security bond. As this statement was made in a court filing, it is a certification that, after a reasonable inquiry, the factual contention has evidentiary support. Fed. R. Civ. P. 11(b)(3). But to date, GYT and Glacier have failed to turnover or disclose where there is sufficient attachable inventory to cover dbest's costs and attorneys' fees, much less comply with the terms of the permanent injunction included in the Court's Order Regarding Motion for Treble Damages, Attorney's Fees, Permanent Injunction, and Costs (Dkt. 236) (hereinafter "Post-Trial Order").

Although the Court ordered GYT and Glacier to disclose GYT's inventory in the United States and elsewhere, serve the storage agents, and take all measures necessary to turn over the inventory, they continue to flout their contempt for this Court and its orders. *See id.* at 16. Neither GYT nor Glacier have taken the Court-ordered actions necessary to turn over GYT's inventory of infringing carts. Nor have they turned over a single infringing product. GYT also has not paid dbest any of the damages, attorney's fees, costs, or interest awarded in the Post-Trial Order.

dbest anticipated that GYT and Glacier would engage in gamesmanship to evade the Court's Post-Trial Order—just as they have done so throughout this proceeding with respect to the Court's other orders. As such, in response to GYT's objections to binding both of them to the permanent injunction, dbest alerted the

1  Court that "[r]emoving GYT's attorneys from the proposed order would allow GYT
2  to defy the Court's order and evade paying the judgment against it." Dkt. 235 at
3  1:15-16. The Court adopted dbest's proposed language and ordered both GYT and
4  its attorneys to comply with the permanent injunction.

5      Having failed to remove themselves from the order on the permanent
6  injunction, Glacier now seeks to actively undermine the Court's Post-Trial Order by
7  attempting to remove themselves from the case. Rather than disclose and "promptly
8  take all measures necessary" to turnover the attachable inventory that Glacier had
9  certified would allow dbest to recover its costs and attorneys' fees, Glacier and GYT
10  instead spent their time negotiating the putative termination of Glacier's
11  representation. But this was nothing more than a deliberate end-run ploy by GYT
12  and Glacier to circumvent compliance with the Court's Post-Trial Order—including
13  its permanent injunction provisions—and leave dbest holding an empty bag and a
14  large bill for costs and attorneys' fees.

15      For example, Glacier's Mr. Mickey Yao recently divulged that GYT still owes
16  storage fees to its "oversea[s] warehouses." *See* Declaration of Ehab M. Samuel in
17  support of dbest products' Motion for Contempt ("Samuel Decl."), ¶ 28 & Ex. R.
18  But when Glacier was pressed on the location of the warehouses, Ms. Iris Ju hid
19  behind Glacier's purported termination, contending that they "have not been
20  provided the information as to inventory stored elsewhere yet, [as] GYT has
21  indicated their reluctance to discuss the turn-over and any information regarding this
22  case with [Glacier] because the termination of attorney-client relationship." *Id.*, ¶ 34
23  & Ex. X. However, unless the Glacier attorneys recklessly and frivolously

24

misrepresented GYT's attachable assets, they cannot now credibly claim that they do not have information on the attachable property for which they certified would cover dbest's costs and attorney's fees. Consequently, Glacier failed to comply with the Court's order.

Because GYT and Glacier have failed to comply with the Court's order and promptly take all measures necessary to turn over the inventory, dbest respectfully requests the Court to hold them jointly and severally liable for at least the value of the inventory in the U.S. and China.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

In its Post-Trial Order, the Court ordered GYT, its officers, agents, associates, employees, attorneys, and all others acting in concert or participation with them, directly or indirectly, to:

(i)    immediately take steps to preserve the inventory of infringing products in its current location;

(ii)   within seven days of this order, provide dbest and the Court with all necessary information about that inventory, in the United States or elsewhere in GYT's possession, custody or control, including the address[es] where that inventory is currently stored, and contact information and telephone number of the entity[ies] storing the inventory;

(iii)  within seven days of the order, serve GYT's agent(s) for storage of the inventory with a copy of the order; and

1        (iv)    promptly take all measures necessary to turn the inventory over to dbest

2               and/or its attorneys or agents acting on behalf of dbest.

3   Dkt. 236 at 16.

4        dbest learned of GYT's inventory of infringing shopping carts from Alley

5   Ye's 30(b)(6) deposition testimony. Samuel Decl., ¶¶ 2-3 and Ex. A. Glacier made

6   Ms. Ye available only after the close of fact discovery, and although Glacier failed

7   to prepare Ms. Ye to testify about 30(b)(6) topics in connection with GYT's vendors

8   and their location, it refused to disclose the whereabouts of GYT's inventory on the

9   basis that fact discovery had closed. *Id.*, ¶¶ 4-11 & Exs. B-F Ms. Ye testified that

10  there were "about 5000 units" in America and about 3000-4000 units in China, but

11  she did not know the location of the U.S. inventory. *Id.*, ¶ 3 & Ex. A at 59:6-8.

12  When dbest's counsel tried to learn the location of the U.S. inventory after the

13  deposition, Glacier identified Shenzhen Tongda International Logistics Agency as

14  the vendor storing the inventory but represented that GYT had no knowledge of

15  where the inventory was stored. *Id.*, ¶¶ 6-7 and Ex. C. Later, Glacier defended its

16  refusal to find out where U.S. inventory is stored on the grounds that discovery had

17  closed. *Id.*, ¶ 9 & Ex. E.

18        When dbest moved to require GYT to post a security bond, GYT's position

19  abruptly changed. GYT volunteered information that the U.S. inventory is stored in

20  Carteret, New Jersey. Dkt. 157 at  ¶ 4. And Glacier certified that GYT has attachable

21  inventory and that "there is no real risk of [dbest] being unable to recover costs and

22  attorney's fees to which they are entitled." Dkt. 143 at 1:17-21. At the time, dbest

23  was seeking a bond to cover $848,348.53, which included $415,578.20 in attorney's

24

fees and $42,700.33 in costs already incurred at the time as well as an estimated $390,000 in future fees and costs through trial. Dkt. 132 at 1:8 & 8:13-23. Ms. Ye also declared that the total value of GYT's U.S. inventory of 4,159 shopping carts "at a price $69.99 per unit" is about "$291,088.41 USD." Dkt. 157, ¶¶ 4-5. Based on the unit price in Ms. Ye's declaration, and her prior deposition testimony, the value of the infringing inventory in China ranges from $209,970.00 to $279,960.00.

dbest therefore asked the Court to include in the injunction that GYT turn over all its inventory in the United States and overseas to dbest. When dbest proposed the terms of the permanent injunction, GYT, through Glacier, objected to its attorneys being bound by the injunction. It complained that "ordering GYT's attorneys to take actions in the permanent injunction order is inappropriate." Dkt. 234 at 10:23-24. Anticipating that GYT and Glacier would try to elude the Court's order, dbest responded to GYT's objection by alerting the Court that: "[r]emoving GYT's attorneys … would allow GYT to defy the Court's order and evade paying the judgment against it." Dkt. 235 at 1:15-16.

On April 28, 2023, the Court issued its Post-Trial Order. Dkt. 236. Crediting Alley Ye's declaration accepting responsibility for certain litigation decisions, the Court changed its tentative ruling and did not make Glacier liable for any portion of the attorney's fees awarded to dbest. Concerning injunctive relief, however, the Court adopted the injunction dbest had proposed. In doing so, the Court found that GYT "does not have sufficient assets in the United States for dbest to collect judgment. *See* Dkt. No. 171 at 6." The Court also explained that: "[g]iven the troubling history of GYT's patent infringement and dbest's inability to collect on

monetary relief, the Court finds that injunctive relief adequately protects dbest's rights and interests." Dkt. 236 at 13, ¶ 2.

On May 4, 2023, the day Glacier sent GYT the final Post-Trial Order, GYT terminated, or requested to terminate, Glacier's representation. Dkt. 238 at 4:13-16. Without any specifics, Glacier represented that disagreements arose regarding GYT's obligation to pay its attorney's fees and regarding litigation strategy. *Id.* at 4:6-9. Five days later, GYT and Glacier reached an agreement to terminate the representation. Dkt. 238-1, ¶ 6. The agreement has not been provided. Ms. Ju's declaration states that "GYT failed to pay the full amount of its attorneys' fees." *Id.*, ¶ 4. Subsequently, on Friday, May 19, 2023, Mr. Mickey Yao advised dbest's counsel in an email that according to Alley Ye, "GYT is facing bankruptcy and still owed the storage fees in the oversea[s] warehouses and that GYT is letting its employees go." Samuel Decl., Ex. R. This was the first time that a Glacier attorney had divulged that GYT had more than one warehouse overseas. *Id.*, ¶ 28.

Since receiving the Court's Post-Trial Order, dbest's counsel has been trying to secure Glacier Law's cooperation to ensure that GYT complies with the injunction by turning over its inventory of infringing products to dbest. *Id.*, ¶¶ 13-16, 20-35 and Exs. G -J, M-Y. The New Jersey inventory is being stored by NIWO Partners. *Id.*, ¶ 23. NIWO is unwilling to ship the inventory to dbest until it is paid $26,000.00, which includes GYT's outstanding storage fees and the trucking charges and related fees to deliver the inventory to dbest in California. *Id.* at ¶¶ 24-26.

With respect to the inventory in China, Glacier agreed to ask GYT about the status and location of any inventory but has not provided dbest's counsel or the

Court with any information about its location or turned over the inventory. *Id.*, ¶¶ 20, 29-37. Mr. Mickey Yao divulged, however, that GYT still owes storage fees to its "overseas warehouses."  *Id.*, ¶ 28 and Ex. R. On May 22, 2023, Ms. Iris Ju stated that Glacier has not been provided information about inventory stored overseas and that GYT is reluctant to discuss turning over inventory with Glacier. *Id.*, ¶34 and Ex. X.

It has now been three weeks since the Court issued its Post-Trial Order, but GYT and Glacier have yet to disclose the locations of dbest's inventory overseas, demonstrated that they served storage agents overseas with the Post-Trial Order, or taken all measures necessary to turn over any inventory to dbest. *Id.*, ¶ 37. Not a single product has been shipped to dbest. *Id.*

## III.   LEGAL STANDARD

District courts have the inherent power to enforce compliance with their orders through civil contempt. *Shillitani v. U.S.*, 384 U.S. 364, 370 (1966). Absent a stay, orders of a court must be complied with promptly. *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). Civil contempt consists of a "party's disobedience of a specific and definite court order to take all reasonable steps within the party's power to comply." *Dual Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). To establish liability for civil contempt, a court must find, by clear and convincing evidence, that (1) the other party has violated a court order; (2) beyond substantial compliance; and (3) not based on a good faith and reasonable interpretation of the order. *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). The burden then shifts to the contemnor to demonstrate why it was unable to comply. *FTC v.*

1    *Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and*

2    *County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992))*.*

3          It is well-established that a party petitioning for an adjudication that another

4    party is in civil contempt does not have the burden of showing that the other party

5    has the capacity to comply with the court's order. *E.g., NLRB v. Trans Ocean Export*

6    *Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973). The contemnor's good faith or

7    intent in attempting to comply with the order is immaterial. *Stone*, 968 F.2d 850 at

8    856-57. As the purpose of civil contempt is remedial, willfulness is not a necessary

9    element for civil contempt. *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)

10   (citing, *e.g., McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, (1949)). A

11   "party's record of continuing and persistent violations and persistent contumacy

12   justifie[s] placing the burden of any uncertainty in the decree ... on [the] shoulders of

13   the party who violated the order." *Taggart*, 139 S. Ct. at 1802 (quotations omitted).

14         Civil contempt sanctions have two purposes: to coerce the defendant into

15   compliance with the court's order and to compensate the complainant for losses

16   sustained. *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379-90 (9th Cir.

17   1986); *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). An

18   award of attorney's fees for civil contempt is within the district court's discretion.

19   *General Signal*, 787 F.2d at 1380; *Harcourt Brace Jovanovich Legal & Prof'l.*

20   *Pubs., Inc. v. Multistate Legal Studies, Inc.*, 26 F.3d 948, 953 (9th Cir. 1994).

21

22

23

24

## IV.   ARGUMENT

### A.   GYT Should be Sanctioned for Contempt of the Post-Trial Order Because It Refuses to Disclose the Location of its Overseas Inventory And Failed to Turn Over Any Infringing Inventory

A party is liable for civil contempt if it has violated a court order, beyond substantial compliance and not based on a good faith and reasonable interpretation of the order. *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). Here, GYT has violated the Post-Trial Order beyond substantial compliance. Almost a month has passed but GYT has not taken all Court-ordered actions necessary to turn over GYT's inventory of infringing carts. Samuel Decl., ¶¶ 12 & 37. For example, GYT has refused to disclose the location of its infringing inventory in China or otherwise take all necessary steps to turn that inventory over to dbest. *Id.*, Ex. X. Further, GYT has failed to make the payments necessary for the warehouse in the United States to give dbest possession of the infringing inventory. *Id.*, ¶ 37. GYT's actions are directly at odds with Glacier and its representation to the Court that GYT has sufficient attachable property and that there is no real risk of dbest being unable to recover costs and attorney's fees to which they are entitled. And the Post-Trial Order is clear. There is no "good faith interpretation" that would excuse GYT from complying. The burden, therefore, shifts to GYT to demonstrate why it was unable to comply. *See Affordable Media*, 179 F.3d at 1239. Moreover, Glacier has offered no excuse for GYT's failure to comply with the Court's Post-Trial Order. Thus, GYT should be found liable for civil contempt for failure to substantially comply with the Post-Trial Order.

### B. Glacier Should be Sanctioned for Contempt of the Post-Trial Order Because It Has Not Taken All Reasonable Steps to Comply With the Post-Trial Order

Glacier has engaged in gamesmanship throughout this litigation on the issue of GYT's inventory. It made Ms. Ye available only after the close of fact discovery, and although Glacier failed to prepare Ms. Ye to testify on 30(b)(6) topics in connection with GYT's vendors and their location, it refused to disclose the whereabouts of GYT's inventory on the basis that fact discovery had closed. Samuel Decl., ¶¶ 2-9 and Exs. A-E. Ms. Ye testified that: "in America there were about 5,000 units and in China they were about 3- to 4,000 units." *Id.*, Ex. A at 59:6-8. Because Ms. Ye did not know the location of the U.S. inventory, dbest's counsel asked Glacier Law attorney Mickey Yao, if he could get the information later. *Id.*, ¶ 5. Mr. Yao responded: "Yes. I'll speak to my client and then we'll see what we can provide afterwards." *Id.*, Ex. A at 60:9-12. But after the deposition, Glacier refused to disclose the location and its dilatory tactics—in scheduling Ms. Ye's deposition after the close of fact discovery—foreclosed dbest from moving to compel. Samuel Decl., ¶¶ 6-11 and Exs. B-F.

Now, Glacier continues its gamesmanship and evasive maneuvering. The Court's Post-Trial Order requires Glacier to disclose within seven days the location of GYT's inventory in the United States and elsewhere, serve the storage agents, and take all measures necessary to turn over the inventory. Dkt. 236 at 16. In its motion to withdraw, Glacier contends that it fully complied with the Post-Trial Order. Dkt. 238 at 6:6-12. But that is far from the truth.

First, Glacier has not complied with the injunction's requirement to "provide dbest and the Court with all necessary information about" GYT's inventory in China

or "or elsewhere in GYT's possession, custody or control, including the address[es] where that inventory is currently stored, and contact information and telephone number of the entity[ies] storing the inventory."  Samuel Decl. at ¶ 37. Nor has it provided any evidence that it served the Post-Trial Order on the entities storing the inventory overseas or turned over the overseas inventory. *Id.*

Since receiving the Post-Trial Order, dbest's counsel has been trying to secure Glacier's cooperation to ensure that GYT complies with the injunction by turning over its inventory of infringing products to dbest. *Id.*, ¶¶ 13-16, 20-35 and Exs. G -J, and M-P. Initially, Glacier agreed to "certainly ask for you." *Id.*, ¶¶20-21, 30 & Exs. M & T. Then, on May 19, 2023, Mickey Yao stated that GYT "still owed the storage fees in the oversea[s] warehouses," which was the first indication that Glacier knew GYT had *multiple* warehouses overseas where it stored its inventory. *Id.*, ¶ 28 & Ex. B.

When pressed on the location of the China inventory, Glacier concocted a story that dbest's counsel purportedly stated during the parties' meet and confer that the "information is useless [be]cause dbest has no point to have GYT ship these inventory all the way from China." *Id.,* ¶ 30 & Ex. T. But Glacier's allegation is not credible; it directly conflicts with dbest's proposed order—which dbest had submitted and the Court adopted only days earlier—requiring GYT and its counsel to turn over the inventory in the "United States or *elsewhere*." Dkt. 210-1 at 7; Dkt. 236 at 16. But even if there was a misunderstanding about what dbest's counsel stated, dbest's counsel repeatedly asked the Glacier attorneys for the overseas locations in writing, but they stalled to avoid providing any responsive information. Samuel Decl., ¶¶ 31-

36 & Exs. U-Z. Finally, conveniently after Glacier had filed its motion to withdraw, Glacier claimed that they "have not been provided the information as to inventory stored elsewhere yet, [as] GYT has indicated their reluctance to discuss the turn-over and any information regarding this case with [Glacier] because the termination of attorney-client relationship." *Id.*, ¶ 34 & Ex. X. Thus, despite knowing that GYT has multiple warehouses overseas, Glacier failed to disclose them and take all measures to turn over this inventory.

Second, Glacier has not complied with the injunction's requirement to "promptly take all measures necessary" to turn the U.S. inventory over to dbest. Indeed, its actions are hardly more than the bare minimum that was necessary to keep GYT and its U.S. storage provider (NIWO Partners) advised of their legal obligations under the Post-Trial Order. In one of Ms. Ju's declarations, she suggests that "dbest can also reach out the warehouse to pick up the inventory." Dkt. 237, ¶ 8. While Glacier attorneys put dbest's counsel in touch with "David," an employee at NIWO Partners, that only led to the discovery that NIWO will <u>not</u> ship the inventory until GYT pays back storage fees and shipping costs. Samuel Decl., ¶ 26.

Meanwhile, Glacier spent five days—from May 4, 2023, to May 9, 2023—negotiating an "agreement regarding the termination of [its] representation" and preparing and filing a motion to withdraw as counsel. Dkt. 238 at 4:16-18 & Dkt. 238-1 at ¶¶ 5-6. As Glacier represents that one disagreement leading to termination was GYT's failure to pay the full amount of attorney's fees, this suggests that the negotiation centered on obtaining payment from GYT of Glacier's fees. But conspicuously absent from Ms. Ju's declaration is any information on how much

GYT has paid Glacier. While the Glacier attorneys worked to reward themselves for their frivolous, vexatious litigation tactics, they have actively worked to engage in subterfuge to leave dbest holding an empty bag and a large attorney's fee bill that was driven by their improper litigation tactics. Any funds GYT paid to Glacier should be used to pay the damages the Court awarded to dbest or pay NIWO Partners so they can transfer possession of the inventory to dbest.

Glacier paid lip service to the Court's Post-Trial Order but did not actually do anything to persuade its client to obey the order. Its hastiness in seeking withdrawal is a vain attempt to elude the consequences of violating the Court's Post Trial Order. Both Glacier and GYT must comply with the Court's order.

By failing to disclose the locations of the inventory in China and elsewhere, failing to serve storage agents in China and elsewhere, and failing to take all measures necessary to turn over the inventory in the United States and China, Glacier has *not* even substantially complied with and is in violation of the injunction in the Court's Post-Trial Order. There is no "good faith and reasonable interpretation" that would excuse Glacier from complying. Glacier is aware, from GYT, of multiple warehouses overseas but has refrained from disclosing the location of these warehouses as it did after Ms. Ye's deposition. Therefore, it has no excuse to withhold whatever information it has about these overseas warehouses.

In anticipation of dbest's motion for contempt, Glacier filed an *ex parte* application seeking clarification of whether Glacier is "liable for costs incurred in the storage and transportation for turn-over of the inventory." Dkt. 246 at 2:13-15 & 6:1. But the Court's Post-Trial Order is clear. GYT and Glacier are required to "promptly

take all measures necessary to turn the inventory over to dbest." Dkt. 236 at 16. Notably, when dbest proposed the terms of permanent injunction, GYT, through Glacier, did not suggest that the injunction's descriptions of the actions to be taken with respect to GYT's inventory of infringing carts—"all measures necessary"— was ambiguous or confusing.

Inventory is <u>not</u> turned over by merely forwarding the Court's order to the U.S. warehouse. In fact, it is a separate requirement under the Court's order to "serve GYT's agent(s) for storage of the inventory with a copy of this order." *Id.* GYT and Glacier must turn over the inventory by giving dbest possession of that inventory free and clear of all liens, claims, liabilities, interests, and other encumbrances. It should not come as a surprise to Glacier that it needs to pay vendors in furtherance of its obligations in litigation. Law firms cover many vendor expenses during litigation, such as expert costs, printing costs, deposition costs, courier and shipping costs, and subsequently seek reimbursement from their clients. Glacier should have done the same here by paying the outstanding storage fee of $8,000. It could have even accounted for these costs as part of its "negotiated" termination with GYT but did not do so, and as such, failed to turn over possession of the inventory to dbest.

Glacier's failure to take all reasonable steps to comply is significant. Because of the difficulty in enforcing the award against GYT in China, obtaining possession of its inventory and selling it may be the only way that dbest will ever recover any of its attorneys' fees and costs incurred, much less compensate it for the damages on GYT's willful infringement.

### C. GYT and Glacier Should be Sanctioned, Jointly and Severally, for the Combined Value of the Infringing Inventory in the United States and China

Civil contempt sanctions can be to coerce the defendant to comply with a court's order, to compensate the complainant for its losses sustained, or both. *General Signal*, 787 F.2d at 1379-90; *Whittaker Corp.*, 953 F.2d at 517. Compensatory sanctions are payable to the wronged party and based on the actual losses as a result of the contemptuous conduct. *General Signal*, 787 F.2d at 1380. Here, an appropriate sanction would be to hold GYT and Glacier jointly and severally liable for the combined value of GYT's inventory in the U.S. and China and for dbest's attorney's fees incurred in bringing this motion.

When dbest moved to require GYT to post a security bond, GYT and Glacier represented in GYT's opposition brief that "[GYT] does have attachable property i.e., inventory stored with GYT's logistic[s] company meaning there is no real risk of [dbest] being unable to recover costs and attorney's fees to which they are entitled." Dkt. 143 at 1:17-21 (emphasis added). Federal Rule of Civil Procedure makes clear that by presenting to the Court a pleading, written motion, or other paper, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). Glacier cannot now credibly claim that it does not have information on the attachable property for which it certified would cover costs and attorney's fees to which dbest is entitled.

In addition to Glacier's certification, Ms. Ye declared that the total value of GYT's inventory of 4,159 shopping carts in its New Jersey warehouse "at a price $69.99 per unit" is about "$291,088.41 USD." Dkt. 157, ¶¶ 4-5. She also testified that

GYT has 3000 to 4000 units in its China warehouse. Samuel Decl., ¶ 3 & Ex. A. Based on the unit price in Ms. Ye's declaration, the value of the inventory in China ranges from $209,970.00 to $279,960.00. Thus, the potential value of known infringing and attachable property in New Jersey and China ranges from about $501,058.00 and $571,048.00.

Based on Glacier's and GYT's representation, dbest asked the Court to include order GYT and Glacier to turn over all the inventory in the United States and overseas to dbest, which the Court did. Dkt. 236 at 16. But since Glacier and GYT failed to comply with the injunction, dbest respectfully requests that the Court hold them jointly and severally liable for the combined value of the inventory in the U.S. and China.

## V.   CONCLUSION

For the reasons discussed above, dbest respectfully requests that the Court find GYT and Glacier in contempt and award sanctions, and that the Court grant such other and further relief as it deems just and proper.

Respectfully submitted.

DATED:  May 29, 2023                     ORBIT IP, LLP

By:  _/s/ Ehab M. Samuel_____
Ehab M. Samuel (CA SBN 228296)
David A. Randall (CA SBN 156722)

*Attorneys for Plaintiff*
DBEST PRODUCTS, INC.

## <u>Certification of Compliance with C.D. Cal. L.R. 11-6.2</u>

The undersigned, counsel of record for dbest products, Inc. certifies that this brief contains 4,472 words, which complies with the word limit of L.R. 11-6.1.

DATED: May 29, 2023

*/s/ Ehab M. Samuel*
Ehab M. Samuel